# United States Bankruptcy Court
NORTHERN DISTRICT OF ILLINOIS
219 S. Dearborn Street
Chicago, IL 60604

08 C 50 175

Kapala

**Kenneth S. Gardner**, Bankruptcy Clerk

Date    **August 14, 2008**

Michael Dobbins, Clerk
United States District Court
Northern District of Illinois
219 S Dearborn Street
Chicago, IL 60604

FILED
AUG 1 4 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Case Number    **06 A 96116**

Case Name    **Gary A. Judd and Rhonda J. Judd**

Notice of Appeal Filed    **July 24, 2008**

Appellant    **Rockford Capital Leasing, Inc.**

Dear Sir:

Pursuant to **Bankruptcy Rule 8007** transmitted herewith is the Record on Appeal. The Record on Appeal consist of:

| | |
|---|---|
| ✓ Transmittal Letter and Civil Cover Sheet | ✓ Notice of Appeal |
| ✓ Designation and Statement of Issues | ✓ Copy of Documents Designated |
| ✓ Transcript of Proceeding | ✓ Exhibits |
| ☐ In Forma Pauperis | ☐ Expedited Notice of Appeal |

Additional Items Included

✓ **Certified Copy of Docket Sheets**

Transcript of April 4, 2008 and April 8, 2008

**3** Total Volumes Transmitted

The following items will be transmitted as a supplemental to the Record on Appeal

✓ **Adversary Complaint and Adversary Proceeding**

Previous D C Judge _____    Case Number _____

By Deputy Clerk    *Carol Bachman*

Revised 03/26/08 rj

Illinois Northern Bankruptcy System - Docket Report    Case 3:08-cv-50175    Document 1-2    Filed 08/14/2008    Page 1 of 58    Page 1 of 4

**APPEAL**

# U.S. Bankruptcy Court
## Northern District of Illinois (Rockford)
### Adversary Proceeding #: 06-96116
#### Internal Use Only

08 C 50 1 75

*Kapala*

*Assigned to:* Honorable Judge Manuel Barbosa          *Date Filed:* 10/30/06
*Related BK Case:* 06-71118
*Related BK Title:* Gary A Judd and Rhonda J Judd
*Related BK Chapter:* 7
*Demand:*
*Nature[s]*  67 Dischargeability - 523(a)(4), fraud
*of Suit:*        as fiduciary, embezzlement, larceny
              68 Dischargeability - 523(a)(6), willful
                  and malicious injury

This is to certify that the within and attached
document is a full, true and correct copy of the
original thereof as the same appears on file in the
office of the Clerk of the United States Bankruptcy
Court for Northern District of Illinois.

KENNETH S. GARDNER
CLERK OF COURT
By *Carol Buchman*
Deputy Clerk
Dated *August 14, 2008*

## Plaintiff
------------------------

**Rockford Capital Leasing, Inc.,**          represented by **Gregory A Biegel**
*Plaintiff*                                              Barrick, Switzer, Long, Balsley &
                                                         Van Ev
                                                         6833 Stalter Dr.
                                                         Rockford, IL 61108
                                                         815 962-6611
                                                         Fax : 815 962-0687
                                                         Email: gbiegel@bslbv.com
                                                         *LEAD ATTORNEY*

FILED
AUG 1 4 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT.

V.

## Defendant
------------------------

**Gary A Judd,** *Defendant*          represented by
5445 Silverthorn Court                               **David L Davitt**
Rockford, IL 61107                                   Schlueter Ecklund
SSN: 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                                     4023 Charles Street
                                                     Rockford, IL 61108

815 229-5333
Fax : 815 229-0733
Email: ddavitt@rockriverlaw.com

**Rhonda J Judd,** *Defendant*    represented by
5445 Silverthorn Court
Rockford, IL 61107
SSN: 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

**David L Davitt**
(See above for address)

| Filing Date | # | Docket Text |
|---|---|---|
| 05/02/2008 | ⊃24 | Notice of Motion and Motion to Extend Time for Filing Proposed Findings of Fact and Conclusions of Law Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc.. Hearing scheduled for 5/7/2008 at 09:30 AM at Federal Building, 211 South Court Street, Rm. 115, Rockford, Illinois 61101. (Attachments: # 1 Proposed Order) (Biegel, Gregory) (Entered: 05/02/2008) |
| 05/07/2008 | ⊃25 | Status and Decision Continued (RE: [23] Hearing (Adv Other) Continued). Status hearing to be held on 6/25/2008 at 11:00 AM at Federal Building, 211 South Court Street, Rm. 115, Rockford, Illinois 61101. (Brackett, Jana) (Entered: 05/07/2008) |
| 05/07/2008 | ⊃26 | Order Granting Motion to Extend Time (Related Doc # 24). Proposed Findings of Fact and Conclusions of Law by 5/28/2008. Signed on 5/7/2008. (Shores, Janice) (Entered: 05/08/2008) |
| 05/28/2008 | ⊃27 | Proposed Findings of Fact and Conclusions of Law Filed by David L Davitt on behalf of Gary A Judd, Rhonda J Judd. (Davitt, David) (Entered: 05/28/2008) |
| 05/28/2008 | ⊃28 | Brief Findings of Fact and Conclusions of Law re: Non-dischargeability Complaint Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc.. (Attachments: # 1 # (2) Main Document # (3) Supplement Case Law# (4)) (Biegel, Gregory) (Entered: 05/28/2008) |

| 06/25/2008 | 29 | Status and Decision Continued (RE: 1 Complaint, , ). Status hearing to be held on 7/16/2008 at 11:00 AM at Federal Building, 211 South Court Street, Rm. 115, Rockford, Illinois 61101. (Brackett, Jana) (Entered: 06/25/2008) |
| --- | --- | --- |
| 07/16/2008 | 30 | Order of Judgment in favor of defendants on all counts. Oral motion to amend the pleadings to the proofs is granted. Signed on 7/16/2008 (Smith, Loretta) (Entered: 07/16/2008) |
| 07/24/2008 | 31 | Notice of Appeal to District Court. Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc.. Fee Amount $255 (RE: 30 Order of Judgment). Appellant Designation due by 8/4/2008. Transmission of Record Due by 9/2/2008. (Biegel, Gregory) (Entered: 07/24/2008) |
| 07/24/2008 | 32 | Receipt of Notice of Appeal(06-96116) [appeal,ntcapl] ( 255.00) Filing Fee. Receipt number 9217203. Fee Amount $ 255.00 (U.S. Treasury) (Entered: 07/24/2008) |
| 07/24/2008 | 33 | Notice of Filing Notice of Appeal Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc. (RE: 31 Notice of Appeal, ). (Biegel, Gregory) (Entered: 07/24/2008) |
| 08/04/2008 | 34 | Appellant Designation of Contents For Inclusion in Record On Appeal Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc.. (RE: 31 Notice of Appeal, ). (Biegel, Gregory) (Entered: 08/04/2008) |
| 08/04/2008 | 35 | Notice of Filing Designation of Items to be Included in the Record on Appeal Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc. (RE: 34 Appellant Designation). (Biegel, Gregory) (Entered: 08/04/2008) |
| 08/04/2008 | 36 | Statement of Issues on Appeal Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc.. (RE: 31 Notice of Appeal, ). (Biegel, Gregory) (Entered: 08/04/2008) |
| 08/04/2008 | 37 | Notice of Filing Statement of Issues on Appeal Filed by Gregory A Biegel on behalf of Rockford Capital Leasing, Inc. (RE: 36 Statement of Issues on Appeal). (Biegel, Gregory) |

|            |      | (Entered: 08/04/2008)                                                                                                                                        |
|------------|------|--------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 08/04/2008 | ○38  | Notice of Filing to Bk Judge and Parties on Service List (RE: 31 Notice of Appeal, ). (Weatherford, Mary) (Entered: 08/04/2008)                               |

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | IN BANKRUPTCY |
| | ) | CHAPTER 7 |
| Debtors, | ) | |
| | ) | CASE NO. 06 B 71118 |
| | ) | |
| ROCKFORD CAPITAL LEASING, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY CASE NO. 06 A 96116 |
| vs. | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF APPEAL

ROCKFORD CAPITAL LEASING, INC., an Illinois corporation, Plaintiff in the above

entitled cause of action, appeals under 28 U.S.C. Section 158(a) from the Judgment Order of

the Court dated July 16, 2008 in favor of the Defendants, GARY A. JUDD and RHONDA J.

JUDD, and against the Plaintiff with respect to Plaintiff's four-count Adversary Complaint

brought pursuant to 11 U.S.C. Section 523(a)(4) and (6).

GARY A. JUDD and RHONDA J. JUDD,
5045 Silver Fox Trail
Rockford, Illinois 61114-7085
and
David L. Davitt
Schlueter Ecklund
4023 Charles Street
Rockford, IL 61108
and
William T. Neary, U.S. Trustee
Office of the U.S. Trustee, Region 11
780 Regent Street, Suite 304
Madison, WI 53715

DATED: July 23, 2008

ROCKFORD CAPITAL LEASING, INC.,
an Illinois corporation, Plaintiff

By    /s/ GREGORY A. BIEGEL
Attorney for Plaintiff

GREGORY A. BIEGEL
BARRICK, SWITZER, LONG,
BALSLEY & VAN EVERA
Attorneys At Law
6833 Stalter Drive, First Floor
Rockford, IL  61108
(815) 962-6611

2

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | IN BANKRUPTCY |
| | ) | CHAPTER 7 |
| Debtors, | ) | |
| | ) | CASE NO. 06 B 71118 |
| ——————————————— | ) | |
| | ) | |
| ROCKFORD CAPITAL LEASING, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY CASE NO. 06 A 96116 |
| vs. | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

TO:  Gary A. and Rhonda J. Judd        David L. Davitt            William T. Neary, U.S. Trustee
      5045 Silver Fox Trail              Schlueter Ecklund         Office of the U.S. Trustee, Reg. 11
      Rockford, IL  61114-7085         4023 Charles Street        780 Regent Street, Suite 304
                                              Rockford, IL  61108        Madison, WI  53715

I HEREBY CERTIFY that on the 23rd day of July, 2008, the undersigned electronically filed the attached Notice of Appeal with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, Western Division, using the CM/ECF system, and that I have served all CM/ECF Registered Participants as reflected on the Notice of Electronic Filing.

_____/s/ GREGORY A. BIEGEL_____
Attorney for Plaintiff

Gregory A. Biegel
**BARRICK, SWITZER, LONG,**
 **BALSLEY & VAN EVERA**
Attorneys at Law
6833 Stalter Drive
Rockford, Illinois  61108
(815) 962-6611

## PROOF OF SERVICE

The undersigned, being first duly sworn on oath deposes and states that the above-stated document was served upon each person addressed therein by mailing a true and correct copy thereof to the address stated herein on the 23rd day of July, 2008.

_____/s/ Julie A. Bombard_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | IN BANKRUPTCY |
| | ) | CHAPTER 7 |
| Debtors, | ) | |
| | ) | CASE NO. 06 B 71118 |
| | ) | |
| ROCKFORD CAPITAL LEASING, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY CASE NO. 06 A 96116 |
| vs. | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | |
| | ) | |
| Defendants. | ) | |

## STATEMENT OF ISSUES ON APPEAL

NOW COMES the Plaintiff/Appellant, ROCKFORD CAPITAL LEASING, INC., an Illinois corporation, by and through its attorneys, BARRICK, SWITZER, LONG, BALSLEY & VAN EVERA, and for their Statement of Issues on Appeal pursuant to Federal Rule of Bankruptcy Procedure 8006, respectfully states as follows:

Whether the Bankruptcy Court committed clear error in finding that the Defendants/Appellees' debts to Plaintiff/Appellant relating to retention of sales proceeds for vehicles sold as set forth in Counts I, II, III and IV of the Non-dischargeable Complaint filed pursuant to 11 U.S.C. § 523(a)(4) and (6) was dischargeable.

DATED: August 4, 2008

ROCKFORD CAPITAL LEASING, INC.,
an Illinois corporation, Plaintiff/Appellant

By___ /s/ GREGORY A. BIEGEL____
        Attorney for Plaintiff/Appellant

GREGORY A. BIEGEL
BARRICK, SWITZER, LONG,
   BALSLEY & VAN EVERA
Attorneys At Law
6833 Stalter Drive, First Floor
Rockford, IL  61108
(815) 962-6611

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | IN BANKRUPTCY |
| | ) | CHAPTER 7 |
| Debtors, | ) | |
| | ) | CASE NO. 06 B 71118 |
| _____ | ) | |
| | ) | |
| ROCKFORD CAPITAL LEASING, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | ADVERSARY CASE NO. 06 A 96116 |
| | ) | |
| vs. | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | |
| | ) | |
| Defendants. | ) | |

## DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL

NOW COMES the Plaintiff/Appellant, ROCKFORD CAPITAL LEASING, INC., an Illinois corporation, by and through its attorneys, BARRICK, SWITZER, LONG, BALSLEY & VAN EVERA, and for their designation of items to be included in the record on appeal, respectfully states as follows:

1.    Adversary Complaint and adversary proceeding filed in Case Number 06-96116 (Docket Entry Number 1).

2.    Answer to Adversary Complaint filed in Case Number 06-96116 (Docket Entry Number 5).

3.    Response to Answer and Affirmative Defenses in Case Number 06-96116 (Docket Entry Number 8).

4.    Transcript of the entire proceedings before the Honorable Judge Manuel Barbosa of April 4, 2008 and April 8, 2008 in Case Number 06-96116.

5.    All Plaintiff's and Defendants' original exhibits, as admitted at hearing on April 4, 2008 and April 8, 2008 (contained in the original Court file).

6.    Proposed Findings of Fact and Conclusion of Law of Judds in Case Number

06-96116 (Docket Entry Number 27).

      7.      Brief Findings of Fact and Conclusion of Law regarding non-dischargeability for

Rockford Capital Leasing in Case Number 06-96116 (Docket Entry Number 28).

      8.      Judgment Order entered after trial finding in favor of the Defendants against the

Plaintiff dated July 16, 2008 in Case Number 06-96116 (Docket Entry Number 30).

      9.      Notice of Appeal filed July 24, 2008 in Case Number 06-96116 (Docket Entry

Number 31).

DATED:  August 4, 2008

                            ROCKFORD CAPITAL LEASING, INC.,
                            an Illinois corporation, Plaintiff/Appellant

                            By   /s/ GREGORY A. BIEGEL
                                Attorney for Plaintiff/Appellant

GREGORY A. BIEGEL
BARRICK, SWITZER, LONG,
   BALSLEY & VAN EVERA
Attorneys At Law
6833 Stalter Drive, First Floor
Rockford, IL 61108
(815) 962-6611

2

## United States Bankruptcy Court, Northern District of Illinois

| Name of Assigned Judge | Manuel Barbosa | CASE NO. | 06 B 71118 |
|---|---|---|---|
| **DATE** | July 16, 2008 | **ADVERSARY NO.** | 06-96116 |
| **CASE TITLE** | Rockford Capital Leasing, Inc. v. Gary A Judd and Rhonda J. Judd | | |

**DOCKET ENTRY TEXT**

Oral motion to amend the pleadings to the proofs is granted. Judgment in favor of Defendants on all counts.

■[ For further details see text below.]

---

## STATEMENT

This matter was tried before the Court on April 3, 2008 on a four-count adversary complaint brought by the Plaintiff, Rockford Capital Leasing, Inc. (the "Plaintiff") against debtor-defendants, Gary A. Judd and Rhonda J. Judd (the "Defendants").

The Defendants operated and were the sole shareholders of a business known as Sandy Hollow Auto Center, Inc. ("Sandy Hollow") located in Rockford, Illinois. Sandy Hollow was in the business of selling used automobiles and trucks. The Defendants entered into a floor plan financing arrangement with the Plaintiff pursuant to a promissory note dated July 1, 2002 in the original principal amount of $300,000 (Pl. Ex. 1) and on the same date a Motor Vehicle Dealer Financing Agreement with Sandy Hollow (Ex 3). The Defendants executed another promissory note dated January 1, 2004 in the original principal amount of $300,000. (Ex. 2). The promissory notes were executed by the Defendants in their individual as well as their corporate capacity. (Answer par. 16.) The Motor Vehicle Dealer Financing Agreement provides at paragraph 3(h) that the sale proceeds of any inventory vehicle had to be tendered within 5 days of sale to the Plaintiff. (Pl. Ex. 3.) Rhonda Judd testified that she was aware that payment had to be made on the vehicles every Friday. Further, both Defendants acknowledged that no agreement nor communication provided for any other form or timing of the payments due under the agreement. The Plaintiff provided its financing by borrowing funds from Associated Bank, Riverside Bank and Stillman Valley Bank. The Defendants were aware of the aforesaid arrangement whereby Plaintiff provided funds to fund the floor plan financing. As part of the floor plan financing process, the Plaintiff would perform floor plan checks to verify that vehicles were present on Defendant's lot. The Plaintiff maintained checklists for results of its floor plan checks. If Riverside Bank

## STATEMENT

was involved in the financing, Riverside Bank would conduct its own floor plan check.

From October 1, 2005, through March 30, 2006, the Defendants sold 18 vehicles for which they failed to turn over the sale proceeds to the Plaintiff. On March 30, 2006, Gary Judd advised the Plaintiff that the vehicles had been sold and that Sandy Hollow and the Defendants failed to tender the sale proceeds to the Plaintiff. On March 31, 2006, the Plaintiff conducted a floor plan check at the Defendants' lot and identified the 18 vehicles that were missing and they are set forth, including the vehicle I.D. numbers on Plaintiff's Exhibit No. 39. Additionally, after March 30, 2006, the Defendant sold another 10 vehicles for which the sale proceeds were not tendered to the Plaintiff. (Pl. Exs. 10, 17, 20 - 35, and 37). Further, the Plaintiff provided for a floor planning of a 2002 Volkswagon Beetle in the amount of $9,925 on January 13, 2006. This vehicle was apparently returned to the auction center where it was obtained by the Defendant and Plaintiff was provided with a check which apparently bounced for lack of funds.

Additionally, on April 24, 2006, Ronda Judd, requested that the Plaintiff advance $32,000 for the purchase of 4 vehicles which were identified. The Plaintiff obtained the funds from Riverside Bank and provided them to the Defendant for the purchase of the aforesaid 4 vehicles. The Defendant tendered a NSF check to the auction center from which vehicles were purchased and utilized at least some of the funds for personal expenses. The Plaintiff was, thus, required to pay Riverside Bank $32,800 for the floor plan advance.

At the close of the evidence the Plaintiff presented an oral motion to amend the pleadings to conform to the proofs to include additional vehicles. The motion is well grounded and is granted.

### COUNT I - EMBEZZLEMENT

Embezzlement is the fraudulent appropriation of property by a person to whom such property was entrusted or into whose hands it has lawfully come. *In re Weber*, 892 F.2d 534 at 538 (7th Cir. 1989). To prove embezzlement, the plaintiff must show that the debtor appropriated the subject funds for his own benefit and that the debtor did so with fraudulent intent or deceit. Absent intent to defraud, the misappropriation of property does not constitute embezzlement. *In re Dobek*, 278 B.R. 496 (Bankr. N.D. Ill 2002). The showing of an actual fraudulent intent is a prerequisite to a finding of embezzlement. A showing of fraudulent intent may be negated by a showing that the debtor used the funds openly and without concealment. *In re Laquinta*, 95 B.R. 576 (Bankr. N.D. Ill 1989). A fiduciary or trust relationship need not be established in order to find a debt non-dischargeable by an act of embezzlement. The elements are: (1) appropriation of funds for the debtor's own benefit by fraudulent intent or deceit; (2) the deposit of the resulting funds in an account accessible only to the debtor; and (3) the disbursal or use of those funds without explanation or reason or purpose. *In re Weber*, 892 F.2d at 538.

Thus, in accordance with the aforesaid standards, it is necessary for the Plaintiff to show not only that the proceeds were used in a manner contrary to the agreement of the parties, but that such deviation from the agreement was done with fraudulent intent. Defendants argue that the parties had established the course of conduct during a period of approximately 10 years during which the Plaintiff knew or should have known that the funds were not deposited into a special segregated account but rather were used to pay ongoing business expenses. In Weber, the Seventh Circuit acknowledged that under the knowledgeable acquiescence doctrine, bankruptcy courts have held that a finding of fraudulent intent may be negated by the fact that the debtor used such funds openly, without attempting to conceal, and had reasonable grounds to believe he had a right to sole use. The Court notes that the rule is not mandatory but that evidence of the creditor's knowledgeable acquiescence is relevant to whether the debtor had the requisite fraudulent intent, but it neither dictates nor precludes a finding that the debtor had the necessary intent.

## STATEMENT

The Sixth Circuit has recently noted that for purposes of an embezzlement determination under §523(a)(4), it is relevant that the plaintiff knew that the debtor had not set up a proper trust account and was not timely remitting under its contract coupled with the absence of any hiding or concealment by the debtor, thus constituting a lack of fraudulent intent. The Sixth Circuit concludes that a debtor's fraudulent intent might be negated by circumstantial evidence showing the debtor used the property in question openly without attempting to conceal and had reasonable grounds to believe he had a right to sole use. Further, where the debtor's dominant motivation in misappropriating the property is to benefit his own corporation and business survival rather than to harm the creditor, and acted openly rather than hiding or concealing the failure to segregate the money in question, it is indicative of the absence of any artifice, wrongful scheme or a clever plan of fraud. Where the proceeds from the accounts were spent by the debtor in an effort to maintain the viability of the business, the Court finds that there is an absence of fraudulent intent. *Cash M. Financial Services, Inc. v. Fox (In re Fox)*, 370 B.R. 104 (6th Cir. BAP 2007).

In the present case, the Court finds that a course of conduct had been established by the parties and there was at least acquiescence on the part of the Plaintiff to the manner in which the Defendants used the funds. Further, the use to which those funds were put by the Defendants is consistent with an intent to maintain the viability of the business so as to comply with obligations, including those to the Plaintiff. This Court is persuaded by the rationale of the Sixth Circuit BAP that when defendants act openly and without a fraudulent scheme and are motivated primarily by a desire to keep a business viable, functioning and able to meet its obligations to creditors, the fraudulent intent may be negated. Accordingly, this Court finds in favor of the Defendants with respect to Count I.

### COUNT II

Count II is brought under §523(a)(6) of the Bankruptcy Code. Under that section, an obligation is not discharged "for willful and malicious injury by the debtor to another entity or to the property of another entity." The Supreme Court gave some clarity to this section in the case of *Kawaauhau v. Geiger*, 523 US 57, 118 S.Ct. 974 (1998). There, the Court held that the word "willful" modifies the word "injury" so that nondischargeability requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Many Courts have held that the willful injury standard is met if the injury was substantially certain to result from the debtor's conduct. Malice must apply to a heightened level of culpability which goes beyond recklessness if it is to have a meaning independent of willful. An injury is malicious when the debtor intended to harm the creditor at least in the sense that the debtor's conduct was certain or almost certain to cause the harm. *In re Porter*, 375 B.R. 822 (8th Cir. BAP 2007). The 6th Circuit BAP held that failure to have a surety bond and to remit proceeds from collection of accounts receivable was not a willful and malicious injury when the debtor attempted, but failed to set up a trust account and plaintiff was aware of the situation and that the debtor used the collected accounts receivable to prop up his business. The Court further stated an act will be deemed willful only if it is undertaken with the actual intent to cause injury. The requisite intent exists when the debtor desires to cause the consequences of his act or believes that the consequences are substantially certain to result from it. The Court went on to state that where the debtor was merely negligent in the way he conducted his business, such negligence is not sufficient to except a debt from discharge under 523(a)(6). *In re Fox*, 370 B.R. at118.

In the present case, with the benefit of hindsight, it is conceivable that one could say that the resulting harm to the Plaintiff was substantially certain to result from the course of conduct pursued by the Defendants. However, the Defendants had pursued this way of operating their business for, perhaps, as much as 10 years. The fact that Defendant's business ultimately became unsalvageable and the harm became certain to occur at that point does not negate lack of willfulness to inflict that harm up until that point. This conclusion tends to be corroborated by the fact that Gary Judd himself took the initiative to inform the Plaintiff that matters had reached the point where the harm may have become inevitable.

## STATEMENT

### COUNT III - Section 523(a)(4)

Count III is based on the alleged embezzlement of out of trust vehicles number 2. Again, with respect to these vehicles, it is alleged that the Defendants had an acknowledged obligation under the supplemental agreement and business loan agreement to collect proceeds, convey those to the Plaintiff and convey those proceeds to the Plaintiff within 3 to 5 days of the receipt of those proceeds. It is alleged that the retention of the sale proceeds of these vehicles constitutes embezzlement and that the Plaintiff was damaged with respect to these vehicles in the amount of $79,085.

Again, for the reasons stated above, the Court finds that the requisite fraudulent intent was absent in the conduct of the Defendants. Courts have noted that in the course of dealing between the parties can lead to acquiescence on the part of a secured creditor where the defendant had a reasonable belief that his business practices were known to said creditor and the creditor took no steps to protect its collateral after a long period of time. *Wolfson v. Equine Capital Corp.*, 56 F.3d 52 (11th Cir. 1995). Accordingly, this Court finds in favor of the Defendants with respect to this count as well.

### COUNT IV 523(a)(6)

Count IV is also brought under §523(a)(6) and focuses on the alleged willful and intentional selling vehicles "out of trust". Again, this count focuses on the intentional acts of the Defendants in not complying with the supplemental agreement and the business loan agreement by turning over sale proceeds within the prescribed time period. At paragraph 94 of this count, the complaint alleges that the Defendants knew or should have known that retention of the sale proceeds from the out of trust vehicles was likely to damage the Plaintiff. This count refers to those vehicles which are identified as out of trust vehicles number 2 but alleges essentially the same conduct on the part of the Defendants as a basis for non-dischargeability.

Courts have further noted that when the result of the defendant's conduct is not to personally benefit from the use of the funds in question, there is further support for the conclusion that the defendants did not act maliciously or with intent to cause the resulting harm. *Wachovia Bank and Trust Company v. William Bannister*, 737 F.2d 225 (2nd Cir. 1984). Again, for the reasons stated above with respect to Count II, the Court finds that the requisite intent to inflict harm was absent. Therefore, this court finds in favor of the Defendants.

JUL 16 2008

Judge Manuel Barbosa

# 1.

# Adversary Complaint

# and

# Adversary Proceeding

# (Docket Entry Number 1)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | IN BANKRUPTCY |
| | ) | CHAPTER 7 |
| Debtors, | ) | |
| | ) | CASE NO. 06 B 71118 |
| _____ | ) | |
| | ) | |
| ROCKFORD CAPITAL LEASING, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | ADVERSARY CASE NO. 06 A |
| | ) | |
| vs. | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY

NOW COMES the Plaintiff, ROCKFORD CAPITAL LEASING, INC., an Illinois

corporation, hereinafter "RCL", by and through its attorneys, Barrick, Switzer, Long,

Balsley & Van Evera, and for its Complaint to Determine Dischargeability against the

Defendants, GARY A. JUDD ("G. JUDD") and RHONDA J. JUDD ("R. JUDD"),

hereinafter collectively referred to as "JUDDS", pursuant to 11 USC 523, respectfully

states and alleges as follows:

### GENERAL ALLEGATIONS

1.      On June 27, 2006 ("Petition Date"), JUDDS filed a Voluntary Petition for

Relief pursuant to Chapter 7, Title 11 of the United States Code.

2.      RCL is an Illinois corporation with offices located in Winnebago County,

Illinois.

3.      This matter is a core proceeding pursuant to 28 USC § 157(b)(2)(I).

4.      This Court has jurisdiction over this matter pursuant to 28 USC § 1334.

5.      Venue is proper in this Court pursuant to 28 USC §§ 1408-09.

6.     Prior to the Petition Date, JUDDS operated a business known as Sandy Hollow Auto Center, Inc. at 3909 Sandy Hollow Road, Rockford, Illinois, hereinafter "Sandy Hollow".

7.     Upon information and belief, G. JUDD and R. JUDD, were the sole shareholders of Sandy Hollow.

8.     Sandy Hollow was in the business of selling used automobiles and trucks.

9.     To purchase the vehicles, Sandy Hollow and JUDDS entered into a floor plan financing arrangement with Rockford Financial Services, Inc., hereinafter "RFS", a related corporation to RCL.

10.     The floor plan financing consisted of RFS providing funds to JUDDS and Sandy Hollow which were used to purchase the used car inventory.  RFS had a security interest in each floor plan vehicle and was entitled to the proceeds when the vehicle was sold.

11.     RFS provided floor plan financing to JUDDS and Sandy Hollow from 1997 through 2002 utilizing a Promissory Note with security agreement provisions, a Supplemental Agreement and a UCC1 Financing Statement to document the financing.

12.     In 2002, the floor plan financing was taken over by RCL.

## COUNT I
### (Section 523(a)(4))

13.     RCL restates and realleges paragraphs 1 through 12 of the General Allegations as paragraph 13 of the Complaint as if fully set forth herein.

14.     RCL continued to extend floor plan financing to JUDDS and Sandy Hollow in the amount of Three Hundred Thousand Dollars ($300,000.00) in the same manner and pursuant to the same type of documentation as utilized by RFS.

15.     The most recent floor plan financing documents between RCL, JUDDS and Sandy Hollow were executed on January 1, 2004 in the original principal amount of

- 2 -

Three Hundred Thousand Dollars ($300,000.00) as evidenced by the Promissory Note attached hereto as Exhibit 1, hereinafter "Floor Plan Note".

16.     The Floor Plan Note was executed by the JUDDS in their individual capacity and as officers of Sandy Hollow.

17.     In addition to the Floor Plan Note, RCL also required a Motor Vehicle Dealer Financing Agreement, Sandy Hollow Auto Center, Inc., #CL004B, Supplemental Agreement, hereinafter "Supplemental Agreement", which set forth the terms and conditions regarding the amounts advanced for each vehicle and the terms for payment to RCL after the vehicle had been sold. A copy of the Supplemental Agreement is attached hereto as Exhibit 2 and incorporated herein by reference.

18.     The Supplemental Agreement was the same type of agreement that had been utilized by RFS and contained the same terms regarding payment of vehicle sale proceeds.

19.     The Floor Plan Note specifically incorporated the terms of the Supplemental Agreement as a condition for advances there under.

20.     The Floor Plan Note also contained security agreement provisions wherein JUDDS and Sandy Hollow granted RCL a first security interest in its inventory, equipment, accounts, instruments, documents, chattel paper, other rights of payment and general intangibles, hereinafter "RCL Collateral".

21.     RCL perfected its security interest in the RCL Collateral with the filing of a UCC1 Financing Statement with the Illinois Secretary of State on June 28, 1999 as Document #4057007 and Continuation and Amendment Statements with Document #8083266 and 8746031, all of which are attached hereto as Exhibit 3 and incorporated herein by reference.

- 3 -

22. RCL, JUDDS and Sandy Hollow extended the maturity of the Floor Plan Note pursuant to a modification, a copy of which is attached hereto as Exhibit 4 and incorporated herein by reference.

23. Each time that RCL financed a vehicle under the Floor Plan Note, Sandy Hollow would execute a document entitled Floor Plan Advance Note.

24. Pursuant to Paragraph 3(b) of the Supplemental Agreement, JUDDS and Sandy Hollow were required to deliver to RCL the proceeds from the sale of the floor plan vehicle within five (5) days of the date of sale.

25. In the event that JUDDS and Sandy Hollow failed to tender the proceeds after the sale of the vehicle, JUDDS and Sandy Hollow would be deemed to be "out of trust".

26. RCL provided floor plan financing to JUDDS and Sandy Hollow for all vehicles identified on the chart attached hereto as Exhibit 5 and incorporated herein by reference.

27. The chart identifies the year and make of the vehicles, together with the last six digits of the Vehicle Identification Number and the amount advanced by RCL on each vehicle and the date the vehicle was sold by JUDDS and Sandy Hollow.

28. Sandy Hollow executed a Floor Plan Advance Note for each of the vehicles identified on Exhibit 5. The Floor Plan Advance Notes are attached as Group Exhibit 6.

29. Upon receipt of the Floor Plan Advance Note, RCL would advance the funds necessary for the purchase of the vehicles. The funds were advanced directly to JUDDS and Sandy Hollow.

30. JUDDS and Sandy Hollow were to use the funds to complete the purchase of the vehicles which then became part of the floor plan financing and subject to the terms and conditions of the Supplemental Agreement.

- 4 -

31. JUDDS and Sandy Hollow sold the vehicles identified on Exhibit 5 on the dates set forth therein.

32. On information and belief, G. JUDD and R. JUDD took the following actions upon the sale of the vehicles identified on Exhibit 5:

        a) received the sale proceeds for the vehicle;

        b) deposited the sale proceeds in bank accounts subject to their sole and exclusive control;

        c) failed to notify RCL within five (5) days of the sale of the vehicle;

        d) failed to tender to RCL within five (5) days of the sale of the vehicle all funds due and owing to RCL pursuant to the Floor Plan Advance Note, Floor Plan Note and Supplemental Agreement;

        e) exercised sole, complete and exclusive control over the sale proceeds;

        f) treated the sale proceeds as their own funds with full and complete knowledge that the sale proceeds belonged to RCL;

        g) attempted to cover up the sale of the vehicles by knowingly and incorrectly advising RCL that the vehicles were at the auto auction.

33. On March 30, 2006, RCL conducted a floor plan check of the Sandy Hollow lot and found nineteen (19) vehicles missing from the lot for which RCL had financed and JUDDS and Sandy Hollow had failed to turn over the sale proceeds.

34. On or about March 30, 2006, JUDDS finally advised RCL of their failure to tender the proceeds after the sale of the vehicles as required by the Supplemental Agreement and that they were out of trust. Subsequent thereto, on April 3, 2006 R. JUDD again confirmed that the vehicles had been sold and proceeds not turned over to RCL.

- 5 -

35.    An additional floor plan check in April 2006 identified another vehicle sold out of trust, a 2002 Suzuki XL7 sold on April 19, 2006 and identified on Exhibit 5.

36.    The twenty (20) missing vehicles identified in the March 31, 2006 floor plan check or the April floor plan check are set forth on Exhibit 5, hereinafter "out of trust vehicles".

37.    JUDDS did not tender the sale proceeds to RCL after March 31, 2006 when RCL was advised that the out of trust vehicles had in fact been sold.

38.    JUDDS continued to retain possession of all sale proceeds relating to the out of trust vehicles.

39.    On March 31, 2006, RCL had in its possession Certificates of Title for the out of trust vehicles that had been sold by JUDDS.

40.    JUDDS requested that RCL release the Certificates of Title for the out of trust vehicles so that the titles of said vehicles could be tendered to the new owners of the out of trust vehicles.

41.    On or about June 15, 2006, G. JUDD executed a Vehicle Title Agreement for each of the out of trust vehicles, wherein G. JUDD acknowledged the sale of the out of trust vehicles and requested that RCL release the titles.  Copies of the Vehicle Title Agreements for the out of trust vehicles are attached hereto as Group Exhibit 7 with the exception of the 2002 Buick Rendezvous and the 1999 Ford F-150.

42.    JUDDS had an obligation under the Supplemental Agreement to collect the sale proceeds for the out of trust vehicles for the benefit of RCL and to turn over the sale proceeds for the out of trust vehicles within five (5) days of the receipt of said proceeds.

43.    The collection of the sale proceeds for the out of trust vehicles was entrusted to JUDDS.

44. JUDDS had full knowledge and understanding that upon the sale of the out of trust vehicles the sale proceeds were to be tendered to RCL for payment of the Floor Plan Note.

45. JUDDS intentionally and willfully retained and used said sale proceeds from the out of trust vehicles for their own benefit and to the detriment of RCL.

46. JUDDS had no right to the sale proceeds for the out of trust vehicles and no basis to retain said sale proceeds for their own benefit.

47. JUDDS acted with fraudulent intent in retention of the sale proceeds for the out of trust vehicles.

48. JUDDS' retention of the sale proceeds for the out of trust vehicles constitutes embezzlement of said sale proceeds under 11 USC § 523(a)(4).

49. As a result of JUDDS' embezzlement of the out of trust vehicles sale proceeds, RCL has been damaged in the amount of One Hundred Eighty Three Thousand Seven Hundred Thirty Five Dollars ($183,735.00).

50. JUDDS' debt with respect to the out of trust vehicles is non-dischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code.

WHEREFORE, the Plaintiff, ROCKFORD CAPITAL LEASING, INC., respectfully prays that this Court enter judgment in its favor and against the Defendants, GARY A. JUDD and RHONDA J. JUDD, granting the following relief:

A. holding the debt of GARY A. JUDD and RHONDA J. JUDD to ROCKFORD CAPITAL LEASING, INC. with respect to out of trust vehicles in the amount of One Hundred Eighty Three Thousand Seven Hundred Thirty Five Dollars ($183,735.00) non-dischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code;

B. for such other and further relief that this Court deems just and equitable.

## COUNT II
### (Section 523(a)(6))

51.    RCL restates and realleges paragraphs 1 through 41 of Count I of the Complaint as paragraph 51 of Count II of the Complaint.

52.    JUDDS have willfully and maliciously injured RCL through the following intentional acts:

(a)    willfully and intentionally selling the out of trust vehicles and not turning over the sale proceeds to RCL within five (5) days of sale as required by the Supplemental Agreement;

(b)    willfully and intentionally retaining all sale proceeds from the out of trust vehicles;

(c)    willfully, intentionally and maliciously utilizing the sale proceeds of the out of trust vehicles for their own benefit.

53.    JUDDS knew and intended the consequences of their acts and intended to cause RCL injury and damages by said acts.

54.    JUDDS knew or should have known that the retention of the sale proceeds from the out of trust vehicles was likely to damage RCL.

55.    As a result of JUDDS' willful, intentional and malicious acts, RCL has suffered damage in the amount of One Hundred Eighty Three Thousand Seven Hundred Thirty Five Dollars ($183,735.00).

56.    JUDDS' debt to RCL is non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, the Plaintiff, ROCKFORD CAPITAL LEASING, INC., respectfully requests this Court enter judgment in its favor and against the Defendants, GARY A. JUDD and RHONDA J. JUDD, granting the following relief:

- 8 -

A.     holding the debt of GARY A. JUDD and RHONDA J. JUDD to ROCKFORD CAPITAL LEASING, INC. with respect to out of trust vehicles in the amount of One Hundred Eighty Three Thousand Seven Hundred Thirty Five Dollars ($183,735.00) as non-dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code;

B.     for such other relief that this Court deems just and equitable.

### COUNT III
### (Section 523(a)(4))

57.     RCL restates and realleges paragraph 1 through 15 of Count I of the Complaint as Paragraph 57 of Count III of the Complaint.

58.     In addition to the floor plan financing provided to JUDDS and Sandy Hollow by the Floor Plan Note, RCL provided an additional Three Hundred Thousand Dollars ($300,000.00) of floor plan financing.

59.     The additional floor plan financing was originally set forth in a Promissory Note and Security Agreement dated July 1, 2002 in the original amount of Three Hundred Thousand Dollars ($300,000.00) executed by the JUDDS in their individual and corporate capacity, hereinafter "Floor Plan Note No. 2", a copy of which is attached hereto as Exhibit 8.

60.     As part of Floor Plan Note No. 2, RCL required a Motor Vehicle Dealer Financing Agreement, Sandy Hollow Auto Center, Inc., #CL04B, Supplemental Agreement, which set forth the terms and conditions regarding the amounts advanced for each vehicle and the terms of payment to RCL after the vehicle had been sold. A copy of the Supplemental Agreement has been attached to the Complaint as Exhibit 2 and is incorporated herein by reference.

61.     The Supplemental Agreement was the same type of agreement which the JUDDS had been required to sign since the inception of their floor plan financing with RCL and/or its predecessor.

62.     Floor Plan Note No. 2 specifically incorporated the terms of the Supplemental Agreement as a condition for advances thereunder.

63.     Floor Plan Note No. 2 also contained security agreement provisions wherein JUDDS and Sandy Hollow granted RCL a first security interest in its inventory, equipment, accounts, instruments, documents, chattel paper, other rights of payment and general intangibles, hereinafter "RCL Collateral".

64.     RCL perfected its security interest in the RCL Collateral with the filing of a UCC1 Financing Statement with the Illinois Secretary of State on June 28, 1999, as Document #4057007 and Continuation and Amendment Statements with Documents 8083266 and 8746031, all of which are attached hereto as Exhibit 3 and incorporated herein by reference.

65.     Pursuant to paragraph 3(b) of the Supplemental Agreement, JUDDS and Sandy Hollow were required to deliver to RCL the proceeds from the sale of floor plan vehicles within five (5) days of the date of sale.

66.     In the event that JUDDS and Sandy Hollow failed to tender the proceeds after the sale of the vehicle, JUDDS and Sandy Hollow would be deemed "out of trust".

67.     RCL provided floor plan financing to the JUDDS and Sandy Hollow pursuant to the terms and conditions of Floor Plan Note No. 2 and the Supplemental Agreement.

68.     On or about April 4, 2006, RCL and Sandy Hollow executed a Promissory Note with Riverside Community Bank, hereinafter "Riverside", as part of a refinancing of the Floor Plan Financing under Floor Plan Note No. 2.  The Riverside Community Bank Promissory Note is hereinafter referred to as "Riverside Floor Plan Note", a copy of

which is attached hereto as Exhibit 9.  RCL was also listed as a borrower on the

Riverside Floor Plan Note.

69.    The Riverside Floor Plan Note was secured by Floor Plan Note No. 2 and

the Supplemental Agreement.

70.    The Riverside Floor Plan Note was also contingent upon a Business Loan

Agreement wherein Sandy Hollow agreed to tender to Riverside the sale proceeds from

the vehicles floor planned within three (3) days of the date of sale.  A copy of the

Business Loan Agreement is attached hereto as Exhibit 10 and incorporated herein by

reference.

71.    From April 4, 2006 through May 1, 2006, JUDDS and Sandy Hollow

utilized the Riverside Floor Plan Note for additional floor plan financing.

72.    During that time period, Sandy Hollow purchased and sold nine (9)

vehicles as identified on Exhibit 11, attached hereto and incorporated herein by

reference, hereinafter "out of trust vehicles #2".

73.    The chart, attached as Exhibit 11, incorporated herein by reference,

identifies the year and make of vehicles, together with the last six (6) digits of the Vehicle

Identification Number and the amounts advanced by RCL on each vehicle and the date

each vehicle was sold by the JUDDS and Sandy Hollow with respect to out of trust

vehicles #2.

74.    During the time that additional floor plan financing was being provided

under the Riverside Floor Plan Note, Sandy Hollow continued to execute a Floor Plan

Advance Note for each of the vehicles identified on Exhibit 11.  However, RCL has been

unable to locate the Floor Plan Advance Note for the 2002 Volkswagen Beetle and the

2003 Jeep Liberty.  The Floor Plan Advance Notes for the remaining out of trust vehicles

#2 are attached as Group Exhibit 12.

75.    Upon receipt of the Floor Plan Advance Notes, RCL would advance funds necessary for the purchase of the vehicles.  The funds were advanced directly to JUDDS and Sandy Hollow.

76.    The JUDDS and Sandy Hollow sold the vehicles identified on Exhibit 11 on the dates set forth therein.

77.    Upon information and belief, G. JUDD and R. JUDD took the following actions upon the sale of the out of trust vehicles #2:

(a)    received the sale proceeds for the vehicles;

(b)    deposited the sale proceeds in bank accounts subject to their sole and exclusive control;

(c)    failed to notify RCL within three (3) or five (5) days of the sale of the vehicles;

(d)    failed to tender to RCL within three (3) to five (5) days of the sale of the vehicles all funds due and owing to RCL and/or Riverside pursuant to Floor Plan Advance Note No. 2 and/or Riverside Floor Plan Note;

(e)    exercised sole, complete and exclusive control over the sale proceeds;

(f)    treated the sale proceeds as their own funds with full and complete knowledge that the sale proceeds belonged to RCL;

(g)    attempted to cover up the sale of the vehicles by knowingly and incorrectly advising RCL of the status of the vehicles;

(h)    with respect to the 2002 Volkswagen Beetle, 2003 Jeep Liberty and 2000 Jeep Grand Cherokee, tendered check numbers 14858, 14859 and 14860, copies of which are attached hereto as Exhibit 13 and incorporated herein by reference, for which no funds were available;

(i)     as a result of tendering the NSF checks attached as Exhibit 13 failed to tender the sale proceeds for the 2002 Volkswagen Beetle, 2003 Jeep Liberty and 2000 Jeep Grand Cherokee to RCL as required under the Supplemental Agreement or Business Loan Agreement;

(j)     accepted floor plan financing funds for the 2002 Volkswagen Beetle and failed to return said funds to RCL after JUDDS could not obtain title to said vehicle.

78.     JUDDS did not tender the sale proceeds to RCL for the out of trust vehicles #2 and have continued to retain possession of all sale proceeds relating to out of trust vehicles #2.

79.     RCL and/or Riverside had in its possession Certificates of Title for out of trust vehicles #2 that had been sold by JUDDS.

80.     JUDDS requested that RCL and/or Riverside release the Certificates of Title for the out of trust vehicles #2, so that sale of the vehicles could be completed.

81.     On or about June 15, 2006, G. JUDD executed a Vehicle Title Agreement for six (6) out of trust vehicles #2, wherein G. JUDD acknowledged the sale of out of trust vehicles #2 and requested that RCL release the titles.  Copies of the Vehicle Title Agreements for out of trust vehicles #2 are attached hereto as Group Exhibit 14.

82.     JUDDS had an obligation under the Supplemental Agreement and the Business Loan Agreement to collect the sale proceeds for the out of trust vehicles for the benefit of RCL and to turn over the sale proceeds for the out of trust vehicles #2 within three (3) to five (5) days of the receipt of said proceeds.

83.     The collection of the sale proceeds for the out of trust vehicles #2 was entrusted to JUDDS.

- 13 -

84.     JUDDS had full knowledge and understanding that upon the sale of the out of trust vehicles #2 the sale proceeds were to be tendered to RCL for payment of the Floor Plan Note No. 2 and Riverside Floor Plan Note.

85.     JUDDS intentionally and willfully retained and used said sale proceeds from the out of trust vehicles #2 for their own benefit and to the detriment of RCL.

86.     JUDDS had no right to the sale proceeds for the out of trust vehicles #2 and no basis to retain said sale proceeds for their own benefit.

87.     JUDDS acted with fraudulent intent in retention of the sale proceeds for the out of trust vehicles #2.

88.     JUDDS' retention of the sale proceeds for the out of trust vehicles #2 constitutes embezzlement of said sale proceeds under 11 USC § 523(a)(4).

89.     As a result of JUDDS' embezzlement of the out of trust vehicles #2 sale proceeds, RCL has been damaged in the amount of Seventy Nine Thousand Eighty Five Dollars ($79,085.00).

90.     JUDDS' debt with respect to the out of trust vehicles #2 is non-dischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code.

WHEREFORE, the Plaintiff, ROCKFORD CAPITAL LEASING, INC., respectfully prays this Court enter judgment in its favor and against the Defendants, GARY A. JUDD and RHONDA J. JUDD, granting the following relief:

A.     holding the debt of GARY A. JUDD and RHONDA J. JUDD to ROCKFORD CAPITAL LEASING, INC. in the amount of Seventy Nine Thousand Eighty Five Dollars ($79,085.00) non-dischargeable pursuant to Section 523(a)(4) of the Bankruptcy Code;

B.     for such other and further relief as this Court deems just and equitable.

## COUNT IV
### (Section 523(a)(6))

91.    RCL restates and realleges paragraphs 57-90 of Count III of the

Complaint as paragraph 91 of Count IV of the Complaint.

92.    JUDDS have willfully and maliciously injured RCL through the following

intentional acts:

(a)    willfully and intentionally selling out of trust vehicles #2 and not

turning over the sale proceeds to RCL within three (3) to five (5) days after the sale as

required by the Supplemental Agreement and the Business Loan Agreement;

(b)    willfully and intentionally retaining all sale proceeds from out of

trust vehicles #2;

(c)    willfully, intentionally and maliciously utilizing the sale proceeds of

the out of trust vehicles #2 for their own benefit.

93.    JUDDS knew and intended the consequences of their acts and they

intended to cause RCL injury and damage by said acts.

94.    JUDDS knew or should have known that the retention of the sale

proceeds from out of trust vehicles #2 was likely to damage RCL.

95.    As a result of JUDDS willful, intentional and malicious acts, RCL has

suffered damage in an amount of Seventy Nine Thousand Eighty Five Dollars

($79,085.00).

96.    JUDDS' debt with respect to the out of trust vehicles #2 is non-

dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code.

WHEREFORE, the Plaintiff, ROCKFORD CAPITAL LEASING, INC., respectfully

requests this Court enter judgment in its favor and against the Defendants, GARY A.

JUDD and RHONDA J. JUDD, granting the following relief:

- 15 -

A.      holding the debt of GARY A. JUDD and RHONDA J. JUDD to

ROCKFORD CAPITAL LEASING, INC. with respect to out of trust vehicles #2 in the

amount of Seventy Nine Thousand Eighty Five Dollars ($79,085.00) as non-

dischargeable pursuant to Section 523(a)(6) of the Bankruptcy Code;

B.      for such other and further relief that this Court deems just and equitable.

                                        ROCKFORD CAPITAL LEASING, INC.,
                                        an Illinois corporation,
                                        Plaintiff,

                                        BY:    /s/ Gregory A. Biegel
                                               GREGORY A. BIEGEL
                                               Attorney for Plaintiff

Gregory A. Biegel
BARRICK, SWITZER, LONG,
 BALSLEY & VAN EVERA
6833 Stalter Drive, First Floor
Rockford, IL  61108
Telephone:  (815) 962-6611

| Gary Judd & Rhonda Judd | Rockford Capital Leasing, Inc | Loan Number __CL004D__ |
|---|---|---|
| Sandy Hollow Auto Center, Inc. | 4249 E. State St., Ste. 301 | Date __1/1/04__ |
| 3909 Sandy Hollow Rd; Rockford, IL 61109  Rockford, IL. 61108 | | Maturity Date __12/31/05__ |
| 815-874-0003 | | Loan Amount $__300,000.00__ |
| BORROWER'S NAME AND ADDRESS | | Renewal Of __CL004C__ |
| "I" includes each borrower above, jointly and severally. "You" means the lender, its successors and assigns. | | |

I promise to pay to you, or your order, at your address listed above the

PRINCIPAL sum of ___Three Hundred Thousand Dollars & No/100's_____ Dollars $_300,000.00_

☐ **Single Advance:** I have received all of this principal sum. No additional advances are contemplated under this note.

☒ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. As of today I have received the amount of $_275,600.00_ and future principal advances are contemplated. Conditions The conditions for future advances are _set forth in the Supplemental Agreement dated_ _7/1/02 attached hereto and made a part thereof._

☒ **Open-End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires no later than 12/31/05.

☐ **Closed-End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**PURPOSE:** The purpose of this loan is_____ to renew note #CL004C for an operating line of credit

**INTEREST:** I agree to pay interest on the principal balance(s) owing from time to time as stated in this section. Interest will be calculated on a __simple interest__ basis.

☐ **Fixed Rate:** I agree to pay interest at the fixed, simple rate of _____ % per year.

☒ **Variable Rate:** I agree to pay interest at the initial simple rate of _13.50_ % per year. This rate may change as stated below.

☐ **Index Rate:** The future rate will be_____ the following index rate: _____

☒ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in our control.

☐ **Frequency and Timing:** The rate on this note may increase as often as _____. An increase in the interest rate will take effect _____

☒ **Limitations:** The rate on this note will not at any time (and no matter what happens to any index rate used) go above or below these limits.

☒ **Maximum Rate:** The rate will not go above____ no maximum ____ .

☒ **Minimum Rate:** The rate will not go below__13.50%____ .

**Post-Maturity Rate:** I agree to pay interest on the unpaid balance owing after maturity and until paid in full as stated below.

☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).

☐ at a rate equal to _____

☒ **ADDITIONAL CHARGES:** In addition to interest, I ☐ have paid ☒ agree to pay the following additional charges: _15% late charge of amount due if not paid within 10 days of due date_____

**PAYMENTS:** I agree to pay this note as follows:

☒ **Interest:** I agree to pay accrued interest as billed, monthly beginning 2/1/04 and every month thereafter until maturity.

☒ **Principal:** I agree to pay the principal as set forth in the supplemental agreement attached hereto.

☐ **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $_____ and will be due on _____. A payment of $_____ will be due on the _____ day of each _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____

☒ **Effect of Variable Rate:** An increase in the interest rate will have the following effect on the payments:

☐ The amount of the final payment will be increased.  ☐ The amount of each scheduled payment will be increased.

**EXHIBIT**

1

**ADDITIONAL TERMS:**

**SECURITY:**   I give you a security interest in the following:
(1)   any property of mine, whether I own it now or in the future, which is in your possession (This includes, but is not limited to, property I give you for safekeeping, collection, or exchange, and all dividends and distributions from the property.).
(2)   the property described below, together with all parts, accessories, repairs, improvements and accessions to the property, and all proceeds and products from the property.

[x] **Inventory:**   All inventory wherever it is located which I own now or may own in the future, which I will sell or lease, or which has been or will be supplied to me under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

[x] **Equipment:**   All equipment which I own now or may own in the future including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, and parts and tools.   Any equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

[ ] **Farm Products:**   All farm products which I own now or may own in the future including, but not limited to:
(a) all poultry and livestock and their young, along with their products and produce;
(b) all crops, annual or perennial, and all products of the crops; and
(c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

[x] **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:**   All rights I have now or may have in the future to the payment of money including, but not limited to:
(a) payment for goods sold or leased or for services rendered, whether or not I have earned such payment by performance; and
(b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

[x] **General Intangibles:**   All general intangibles I own now or may own in the future including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

[ ] **Additional Property:** Described as follows:

Description of real estate if the above property is crops, timber, minerals (including oil or gas), fixtures _____

_____

Name of record owner, if not me: _____
[ ] If checked, this security agreement should be filed in the real estate records.

| Any person who signs within this box does so to give you a security interest in the property described above.   This person does not promise to pay the note. |
|---|
| Signed _____        Date _____ |

2

I will use the property listed as security above for : ☐ farming operations, ☒ business purposes, ☐ other_____
☒ If checked, this note is secured by separate **and prior security agreement and UCC-1 filings**
dated **4/20/97; 4/20/98, 5/1/99** ( Failure to list a prior security agreement here does not mean that the agreement does not secure this note.)

**SIGNATURES: I AGREE TO THE TERMS SET OUT ON THE FRONT AND BACK OF ALL THE PAGES OF THIS DOCUMENT.** I have received a copy of this document on today's date.

X _____   X _____
      Gary Judd, President                    Rhonda Judd, Secretary

X _____   X _____
      Gary Judd, Personally                   Rhonda Judd, Personally

## ADDITIONAL TERMS OF THE NOTE

**APPLICABLE LAW:** This Note and all documents given to secure its payment including a certain Security Agreement of even date, herewith, by Maker and Lender shall be interpreted and construed according to the laws of the State of Illinois.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid earned interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this form.

**INTEREST:** If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. If the interest rate on this note is variable, decreases in the interest rate will have the corresponding opposite effect on my payment that increases will have (as shown on the front of this form). No matter how the interest rate is computed, it will never be higher than the highest rate allowed by law.

**INDEX RATES:** If you and I have agreed that the interest rate on this note will be variable and will be related to an index rate, then the index we select will function only as a tool for setting the rate on this note. You do not guarantee, by selecting any index, that the rate on this note will have a particular relationship to the rate you charge on any other loans or any type or class of loans with your other customers.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal.

If this is closed-end credit, then repaying a part of the principal will not entitle me to additional credit.

If this is open-end credit, then repaying a part of the principal will entitle me to additional credit, unless the open-end feature has expired. You will not ordinarily make an advance if it would cause the unpaid principal amount to become greater than the maximum principal amount, or if the unpaid principal amount is already greater than the maximum principal amount. You will never be obligated to make such an advance, even if you occasionally do so.

**POST-MATURITY RATE:** For purposes of deciding when the "Post-Maturity Rate" (shown on the other side) applies, the term "maturity" means the following:

(1)  if the note is payable on demand, the date you make your demand or the date you accelerate payment on the note, whichever is earlier;
(2)  if the note is payable on demand with an alternate maturity date(s), the date you make your demand or the final alternate maturity date or the date you accelerate payment on the note, whichever is earlier; or,
(3)  in all other cases, the date of the last scheduled payment of principal or the date you accelerate payment on the note, whichever is earlier.

**SET-OFF:** You have the right to set-off any amount I owe you under this note against any right I have to receive money from you. If my right to receive money for you is owned by someone else not paying this note, your set-off can only reach funds I could have reached with my own request or endorsement. Your right of set-off does not extend to accounts where my rights are only as a fiduciary. It also does not extend to my IRA or other tax-deferred retirement account.

Your right of set-off applies without your first telling me you are going to use it. It applies no matter what sort or value of Collateral is on this loan. It also applies no matter who else has agreed to pay this note.

You will not be liable for wrongful dishonor of a check where such dishonor occurs because you set-off this debt against my account.

**ATTORNEYS' FEES:** If you hire a lawyer to collect this note, I must pay his or her fee, plus court costs (except where prohibited by law).

**DEFAULT:** I will be in default if any one or more of the following occur:

(1)  I fail to make a payment on time or in the amount due;
(2)  I fail to keep the collateral insured, if required;
(3)  I fail to keep any other promise I have made in connection with this loan or any agreement securing this loan;
(4)  I fail to pay, or keep any other promise, on any other loan or agreement I have with you;
(5)  any other creditor of mine attempts to collect the debt I owe him through court proceedings;
(6)  I die;
(7)  I go into bankruptcy, whether by my own choice or not;
(8)  I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; or
(9)  anything else happens which causes you to believe that you will have difficulty collecting the amount I owe you

**REMEDIES:** If I am in default on this note, you have the following remedies:

(1) you may, without notice, accelerate the due date of this note and make all unpaid principal, interest, and all other charges immediately due and payable;
(2) you may set-off this debt against any right I have to the payment of money from you;
(3) you may demand more security or new parties obligated to pay this note in return for not using any other remedy;
(4) you may make use of any remedy I have under state or federal law;
(5) you may make use of any remedy given to you in any agreement securing this note; and
(6) if this is a multiple advance loan, either open-end or closed-end, you may refuse to make advances to me while I am in default.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I default, you do not waive your right to later consider the event a default if it happens again.

**CONFESSION OF JUDGMENT:** In addition to your remedies listed above, I authorize any attorney to appear in a court of record and confess judgment, without process, against me, in favor of you, for any sum unpaid and due on this note, together with collection costs including reasonable attorneys' fees.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to.

(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest), or
(3) give notice that amounts due have not been paid (notice of dishonor).

**ADDITIONAL PARTIES AND SECURITY:** I understand that I must pay this note even if someone else has signed it. You may sue me, or anyone else who is obligated on the note, or any of us together, to collect this note. You do not have to tell me this note has not been paid. You may, without notice, release any cosigner, release or substitute secured property, fail to perfect any security interest or otherwise impair the secured property, or waive any right you might have against any of us and I will still be obligated to pay the note. Extending new credit or renewing or modifying this note will not affect my duty to pay this note. If any of us have our obligation discharged in bankruptcy, this fact will not affect the obligation of any other person who has agreed to pay this note.

**FINANCIAL STATEMENTS:** I agree to provide to you, upon request, any financial statements or information you may deem necessary. I warrant that all financial statements and information I provide to you are or will be accurate, correct, and complete.

**GUARANTEE:** By signing below, I unconditionally guarantee the payment of any amounts owed under this note and any security agreement. I also agree that all the other terms of the note and any security agreement will apply to me.

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS:** This security agreement secures this note and any other debt I have with you, now or later. However, it will not secure other debts if you fail, with respect to such other debts, to make any required disclosure about this security agreement or if you fail to give any required notice of the right of rescission. This security agreement will be in effect until it is discharged in writing.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** I represent that I own the property listed as security on the front side. Your security interest in the property is ahead of the claims of any other creditor, and I will do whatever you require to protect your interest. I will keep the property in my possession at the address listed on the front side. I will not remove the property from that address unless I have given you written notice of the location where I would like to move the property to and you have not objected in writing. I will use the property only for its intended purposes, and will keep it in good repair. I will notify you of any loss or damage to the property. You may examine and inspect the property wherever it is located at any reasonable time. I will not sell or transfer the property or any interest in it without first obtaining your written consent, unless the property is inventory. By not objecting to an unauthorized sale or transfer, you do not waive your right to consider any subsequent unauthorized sale or transfer a default. I will pay all taxes and charges on the property as they become due.

**INSURANCE:** I agree to keep the property insured against the risks and for the amount you require. I will buy the insurance from a firm which is licensed to do business in this state and which is reasonably acceptable to you. You will be named as loss payee on the insurance policy. The insurance will be in effect until the property is released from this agreement. You may require additional security if you agree that insurance proceeds may be used to repair or replace the property.

**ACCOUNTS AS SECURED PROPERTY:** If I have given you a security interest in my accounts, I will not settle any account for less than its full value without your written permission.

I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I have taken back in trust for you, and will not mix them with any other property of mine. At your request, I will deliver the proceeds to you or pay you the full price on any returned or repossessed items.

**INVENTORY AS SECURED PROPERTY:** If I have given you a security interest in my inventory, I will not dispose of it except in the ordinary course of my business at the fair market value for the property, or at a minimum price that we have agreed upon.

**FARM PRODUCTS AS SECURED PROPERTY:** If I have given you a security interest in my farm products, I will provide to you a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. As used in this paragraph, the terms farm products, commission merchants and selling agents have the meanings given in the Federal Food Security Act of 1985.

**RIGHTS OF LENDER:** You may take the following actions involving this agreement:

(1) you may notify my account debtor of your interest in the secured property and tell the account debtor to make the payment to you or someone else you name, rather than me; you may endorse any checks received from account debtors.
(2) you may place on any chattel paper or instruments a note indicating your interest in the secured property;
(3) you may, in my name, demand, collect, receive, enforce and give
  a receipt for, compromise, settle, and handle any suits or other proceedings involving the secured property;
(4) take any action you feel is necessary in order to take possession of the secured property, including performing any part of a contract or endorsing it in my name; and
(5) you may make an entry on my books and records showing the existence of the security agreement.

**PAYMENTS BY LENDER: You** are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the unpaid principal under the note secured by this agreement.

**PURCHASE MONEY SECURITY INTEREST:** For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b)) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired. No security interest will be terminated by application of this formula. As used above, "purchase money loan" means any loan the proceeds of which, either in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**REMEDIES:** I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my address listed on the front side by first class mail will be reasonable notice under the Uniform Commercial Code.

**PLEDGES:** Pledged property is property I am giving to you to keep in your possession to secure the payment of the secured obligations. You may keep this property until the secured obligations are paid in full. You do not have to protect any rights I may have against any prior parties to the property. You or someone you select may be shown as the owner of the property. You may have any prior party make payments on the property to you. You are not liable for any decline in value of the property.

**FILING:** A carbon, photographic or other reproduction of this agreement may be used as a financing statement where allowed by law.

**INVENTORY VALUE:** I agree to provide to you, on your demand, such documents as you may request, including, but not limited to, an account of my inventory in such a form as you may request which documents should show the aggregate wholesale cost of such inventory.

---

MOTOR VEHICLE DEALER FINANCING AGREEMENT, Sandy Hollow Auto Center, Inc. #CL004B

(SUPPLEMENTAL AGREEMENT)

---

In connection with our purchase of new and/or used automobiles and trucks and accessories and equipment thereof (hereinafter sometimes called "Goods") from various purchase sources, we desire to arrange for your financing of such purchases on the following basis:

1. For value received, effective as of the date of your acceptance hereof, we hereby grant to you a purchase money security interest in all of our inventory of motor vehicles hereafter purchased from various purchase sources and in all attachments, improvements, accessories, equipment and additions now or hereafter attached, added or affixed to such inventory, in all substitutions and exchanges for all or any part of such inventory and in all other proceeds (cash and non-cash) from our sale or other disposition of such inventory (including trade-ins, notes, contracts, accounts receivable and "chattel paper" as that term is defined in the Uniform Commercial Code of Illinois) all equipment of the Debtor of every description used or useful in the conduct of the Debtor's business, now or, hereafter existing or acquired, and all accessories, signs, accounts receivable, parts and equipment now or hereafter affixed thereto or used in connection therewith to secure the payment of our debts to you incurred and to be incurred hereunder and all of our other indebtedness, liabilities and obligations to you, direct or indirect, joint or several, absolute or contingent, whether now or hereafter existing and, howsoever created, arised or acquired by you (all of which are hereinafter collectively called the "Obligations").

2. To further evidence and secure our obligations to you, we agree to execute and deliver to you (a) a note or notes payable on demand with interest at said agreed rate billed monthly on the average daily balance as calculated, for the amount of such funds borrowed, in addition, we agree to pay a $100.00/Car Floured service charge to be assessed monthly on the average monthly balance, and (b) a trust receipt security agreement or agreements describing the Goods covered by the related invoice or invoices and setting forth the amounts loaned thereon. Such notes and trust receipt security agreements shall be executed and delivered to you at or prior to the time of your honoring such loan requests and shall be in the usual form being used by you from time to time for the trust receipt financing of automobile dealers, copies of your present forms of such note and trust receipt security agreements being hereto attached.

3. It is understood that the maximum limit of credit which you will extend to us under this and any preceding similar financing agreement, outstanding at any one time, will be $300,000.00    All drafts exceeding that maximum will be considered an overdraft and refused.

While said notes evidencing our debts to you incurred and to be incurred hereunder are always payable by us on demand, and in all events as and when the Goods financed thereby are sold or otherwise disposed of, we understand, it is also your policy at present, to expect a reduction from time to time of the original principal amount of each of our said notes on Goods covered by the related trust agreements that have not been sold by us, and that you will advise us from time to time as to your policy in this respect. We agree to comply with all terms and provisions of the trust receipt security agreements given by us to secure the payment of our said notes.

We agree that in addition to the specific conditions set forth in the promissory note, that we shall also be subject to the terms and conditions of this agreement as set forth below.

(a) We acknowledge that Rockford Capital Leasing, Inc. shall have the right to restrict the amount of the advance value for each vehicle which may be included in the inventory, hereinafter "Advance Value of Vehicle". The Advance Value of Vehicle for any used vehicles to be included in the inventory shall be restricted to one hundred percent (100%) of the wholesale clean value [wholesale clean value as set forth in the most recent National Auto Research Black Book (as published)] for each used vehicle.

Only current models and those not exceeding eight (8) years in age or vehicles with a odometer reading not in excess of one hundred thousand (100,000) miles, will be eligible for advances under the Promissory note and this Agreement.

(b) Upon the sale of an item of Inventory, we shall deliver to you all proceeds from the said sale item , which proceeds shall not be less than the Advance Value or cost as shown on the actual Inventory List. The proceeds shall be delivered to you within (5) days of the date of sale.

1

EXHIBIT
2

    (e) Notwithstanding the requirements on payment of proceeds from the sale of Inventory, we further agree to certain curtailment procedures for the used vehicles in Inventory.

        (i)    With respect to the used vehicles in Inventory, we further agree that ten percent (10%) of the original advance on the used vehicle shall be paid to Rockford Capital Leasing, Inc. on the hundred twenty (120) day anniversary of the original advance, if the vehicle has not been sold and every 60 days, thereafter. If the used vehicle has not been sold by the twelve (12) month anniversary of the original advance, we shall pay to you one hundred percent (100%) of the original advance, less any amounts previously paid on said used vehicle.

4.   We assume all responsibility for, and risk of damage to or loss or destruction of said Goods and agree that we will keep the Goods properly housed and in good condition, and insured against such risks, in such amounts, with such insurance carrier, and with such loss payable clause, as will be satisfactory to you. Duplicate copies of such Insurance policies and loss payable clause, as will be satisfactory to you. Duplicate copies of such Insurance policies and loss payable clauses will be kept on file with you. We shall furnish you with an exact copy of our complete operating statement each month.

5.   To facilitate the expeditious honoring of said drafts or other calls on you, we have authorized among others, any employee or employees , who shall from time to time be designated by RCL in writing to execute and deliver such notes and trust receipt security agreements in our name and on our behalf, and we have caused to be delivered to you an executed Power of Attorney evidencing the authority of such employees to act for us. You are hereby authorized to rely upon the authority of any one of the persons named in or designated pursuant to the terms of said Power of Attorney (or any other such Power of Attorney subsequently delivered by us to you) to execute and deliver such notes and trust security agreements to you on our behalf until such time as written notice from us to the contrary is actually received by you. Whenever notes or trust receipt security agreements are signed for us by any one of said persons authorized to do so by our Power of Attorney as contemplated in the preceding paragraph, we agree upon request from you, to ratify and approve in writing the execution and delivery thereof, and if we fail to do so within five (5) days the same shall, at your option, be immediately due and payable.

6.   All of our said obligations to you shall become due and payable immediately (a) without any demand or notice whatsoever in the event of any assignment for the benefit of our creditors, or the commencement of any bankruptcy, receivership, insolvency, reorganization, dissolution or liquidation proceedings by or against us, or (b) at your option, without any demand or notice whatsoever, in the event of our failure to pay any obligation to you when due, or our failure to keep and perform each and all of the terms, conditions, promises and agreements which are to be kept and performed by us under this agreement or under said notes or, trust receipt security agreements or under any other agreement between us, whether now or hereafter existing. It is further understood and agreed that in addition to the rights, privileges, options and remedies to which you are entitled under this agreement, you shall also have all of the rights, privileges, options and remedies to which you are entitled under said notes and trust receipt security agreement and under the Uniform Commercial Code of Illinois, all of the same or hereafter existing to the rights, privileges, this agreement, you shall remedies to which you are agreements and under the being cumulative. We hereby waive all rights under said Code that may be legally waived and agree that three (3) days notice by you, exclusive of Saturdays, Sundays and legal holidays of any public sale, or of the time after which any private sale or other intended disposition of the Goods, or any part thereof, is to be made, is reasonable notification thereof under said code. No waiver or condonation of any privilege or default under this a greement or u nder said n otes or t rust r eceipt s ecurity a greements shall b e b inding upon you unless in writing signed by one of your officers, nor shall the same constitute a waiver of any other subsequent breach or default.

7.   At your request, we will join you in execution such financing statements pursuant to the Uniform Commercial Cod of Illinois and in form satisfactory to you, as you may require from time to time to perform your security interest in said Goods, and we will pay, on demand, all costs and filing fees pertaining thereto and all other costs and expenses which you may incur in protecting or realizing on your security interest hereunder, or under any of said trust receipt security agreements.

8.   This agreement shall apply, with respect to the delivery of such Goods to us under invoices presented to you on and after 7/1/02 or the date of your acceptance hereof, whichever is later. Any prior agreement between us for the financing of such Goods shall remain in effect with respect to all Goods delivered to us pursuant to invoices presented to you prior to such date.

9.   If the foregoing is agreeable to you, please execute and return the duplicate original hereof to us, and this will constitute a binding agreement between us.

2

10. Corporation shall maintain at all ties at least $N/A net worth, and shall furnish proof thereof in the form of monthly operating statements and balance sheets, and an annual auditors report, or upon demand.

IN WITNESS WHEREOF, we have caused this instrument to be executed and delivered in duplicate by our proper officers thereunto duly authorized by our Board of Directors and our corporate to be hereto affixed and attested (or to be signed by a partner if the undersigned is a partnership or by the proprietor if the undersigned is a proprietorship), this 1st day of July , 2002 at Rockford, IL 61108.

ATTEST:

Sandy Hollow Auto Center, Inc.

Gary Judd, President

Rhonda Judd, Secretary

ROCKFORD CAPITAL LEASING, INC..

Leonard La Pietro, President

3

This FINANCING STATEMENT is presented to a filing officer for filing pursuant to the Uniform Commercial Code:

| | | For Filing Officer (Date, Time, Number, and Filing Officer) |
|---|---|---|
| Debtor(s) (Last Name First) and address(es)<br>Sandy Wollow Auto Center Inc.<br>3909 Sandy Hollow Rd.<br>Rockford, IL 61109 | Secured Party(ies) and address(es)<br>Rockford Financial Systems Inc.<br>120 W. State St. Ste. 204<br>Rockford, IL 61108 | UCU106/28/99:03:1898:<br>20.00 MU<br>SOSIL 08:24 4057007 FS |

1. This financing statement covers the following types (or items) of property:

See attachment 1 consisting of one page attached
hereto and made a part thereof.

ASSIGNEE OF SECURED PARTY
American National Bank
6323 Riverside Blvd.
Rockford, IL 61114

2. ☐ Products of Collateral are also covered.

TERMINATION STATEMENT: This Statement of Termination of Financing is presented to a Filing Officer for filing pursuant to the Uniform Commercial Code. The Secured Party certifies that the Secured Party no longer claims a security interest under the financing statement bearing the file number shown above.

Date _____ 19___        By _____
**Filing Officer Copy --- Acknowledgement**        (Signature of Secured Party or Assignee of Record. Not Valid Until Signed.)
                                        Filing Officer is requested to note file number, date and hour of filing on this copy and return
                                        it to the person filing, as an acknowledgement.

STANDARD FORM – UNIFORM COMMERCIAL CODE – FORM UCC-1        This form of financing statement is approved by the Secretary of State.

**3**

┌─────────────────┐
│    **EXHIBIT**   │
│      **3**       │
└─────────────────┘

ATTACHMENT #1

All automotive inventory financed by Rockford Financial Systems, Inc. and which Rockford Financial Systems, Inc. is in possession of the title, whether held for sale, lease, rental or demonstration, together with all parts, equipment and additions and accessions thereto, accounts receivable, accounts, contract rights, general intangibles, chattel paper, instruments, documents and other rights to payment, and all renewals or replacements thereof or articles of substitution thereof, and all proceeds thereof and all proceeds of proceeds thereof. And any interest of the Debtor in any of the foregoing, and all books, records and data relating to the foregoing, all whether now owned or existing or hereafter acquired or arising, and all proceeds thereof, including, without limitation, all insurance proceeds, property taken in trade and dealer reserves.

Master Client: 11846

**UCC DIRECT** SERVICES

Page No: 1

P.O. Box 200824
Houston, TX 77216-0824
310-662-4100 · FAX 815-962-4141

Date: 01-28-05

RETURNED DOCUMENTS
FOR INFORMATIONAL PURPOSES ONLY
**** THIS IS NOT A BILL ****

Bill to     TONI MASINGILL
Party:      ROCKFORD CAPITAL LEASING INC.
            4249 E STATE STREET, SUITE 301
            ROCKFORD, IL  61108

| UDS Number | Bill Code | Debtor Name | File | ST |
|---|---|---|---|---|
| 5796190.3 | TONI MASINGILL | SANDY HOLLOW AUTO CENTER, INC. | | IL |

User Name: TONI MASINGILL
Filing Information:
8746031        01-24-2005   SS IL

1 Entries

For Office Use Only
  Batch     Count
  10028       1

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282   Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)   611846 1ROCKFORD

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

5796190.3

1LIL

2005 JAN 24  PM 4:30

UCU101/25/05:07:5676:
20.00 CkD1
SOSIL 13:26   8746031 AM

UCU101/25/05:07:5676:
20.00 CkD1
SOSIL 13:26   8746031 AM

JAN 2 4 2005

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
4057007  06-28-99  SS IL

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☒ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☒ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:
6a. ORGANIZATION'S NAME
ROCKFORD FINANCIAL SYSTEMS, INC.

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

7. CHANGED (NEW) OR ADDED INFORMATION:
7a. ORGANIZATION'S NAME
ROCKFORD CAPITAL LEASING, INC.

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4249 E. STATE ST., SUITE 301 | ROCKFORD | IL | 61108 | |

| 7d. SEE INSTRUCTION | ADDL INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.
9a. ORGANIZATION'S NAME
ROCKFORD FINANCIAL SYSTEMS, INC.

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

10. OPTIONAL FILER REFERENCE DATA
5796190.3 Debtor Name: SANDY HOLLOW AUTO CENTER, INC.  CLC004  TONI MASINGILL

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 07/29/98)   Prepared by UCC Direct Services, P.O. Box 29071

RECEIVED

2004 JAN -8 PM 4: 30

UCC DIVISION

**UCC FINANCING STATEMENT AMENDMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone (800) 331-3282     Fax (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Mailing Address)   511846 IROCKFORD

UCC Direct Services          5796190.2
P.O. Box 29071
Glendale, CA 91209-9071      ILIL

UCU101/09/04:07:3366:
20.00 CK01
SOS IL 14:18   8083266 CT

UCU101/09/04:07:3366:
20.00 CK01
SOS IL 14:18   8083266 CT

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE #
4057007  06-28-99  SS IL

1b. This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

3. ☒ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

4. ☐ ASSIGNMENT (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c, and also give name of assignor in item 9.

5. AMENDMENT (PARTY INFORMATION): This Amendment affects ☐ Debtor or ☐ Secured Party of record. Check only one of these two boxes.
Also check one of the following three boxes and provide appropriate information in items 6 and/or 7.
☐ CHANGE name and/or address: Give current record name in item 6a or 6b; also give new name (if name change) in item 7a or 7b and/or new address (if address change) in item 7c.
☐ DELETE name: Give record name to be deleted in item 6a or 6b.
☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7d-7g (if applicable).

6. CURRENT RECORD INFORMATION:

| 6a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|

OR

| 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

7. CHANGED (NEW) OR ADDED INFORMATION:

| 7a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|

OR

| 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 7d. TAX ID #: SSN or EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any | ☐ NONE |
|---|---|---|---|---|---|

8. AMENDMENT (COLLATERAL CHANGE): check only one box.
Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| 9a. ORGANIZATION'S NAME |  |  |  |
|---|---|---|---|
| ROCKFORD FINANCIAL SYSTEMS, INC. | | | |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

10. OPTIONAL FILER REFERENCE DATA
5796190.2  Debtor Name: SANDY HOLLOW AUTO CENTER, INC.  CLC004  TONI MASINGILL

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV 07/29/98)   Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel (800) 331-3282

#CLC004

## MODIFICATION AGREEMENT

This AGREEMENT made this 14th day of January, 2005, between Rockford Capital Leasing, Inc., a leasing company having its principal place of business in Rockford, IL, first party and Sandy Hollow Auto Center, Inc., second party.

WHEREAS, there is now unpaid the sum of $300,000.00 upon a Promissory Note owned by first party originally for $300,000.00 dated July 1, 2002 collateralized with a UCC1 Financing Statement, Personal Guarantees of Rhonda and Gary Judd, jointly and severably, and vehicles as described by the Motor Vehicle Dealer Financing Agreement.

AND WHEREAS, second party has requested a change in the maturity date of said note to be extended to 1/14/06 and first party is willing to grant such an amendment.

Now therefore the parties do hereby agree that the Promissory Note be extended to 1/14/06.

The parties do further agree that all other provisions of said Promissory Note, UCC1 Financing Statement, Personal Guarantees and vehicles as described by the Motor Vehicle Dealer Financing Agreement shall remain unchanged and are expressly ratified and confirmed.

Executed this ___14th___ day of ___January___, 2005.

Rockford Capital Leasing, Inc.

BY: _____
　　Leonard La Passe, President

Sandy Hollow Auto Center, Inc.

BY: _____
　　Gary Judd, President

BY: _____
　　Rhonda Judd, Secretary

EXHIBIT
**4**

| VEHICLE DESCRIPTION | VIN | AMOUNT FLOORED** | DATE SOLD |
|---|---|---|---|
| 2000 Grand Caravan | 867918 | $5,825 | 03/18/06 |
| 1998 Caravan | 787667 | $4,755 | 04/01/06 |
| 2002 Suburban | 263039 | $17,810 | 01/20/06 |
| 1997 Ram | 170230 | $5,000 | 01/31/06 |
| 2002 Astro | 124316 | $6,725 | 02/03/06 |
| 1997 Ford F-150 | B32392 | $5,860 | 03/17/06 |
| 2002 Mazda | M04190 | $8,375 | 02/03/06 |
| 2001 Dakota | 310644 | $10,870 | 02/13/06 |
| 2001 Bravada | 163077 | $10,600 | 04/19/06 |
| 2002 Suburban | 166835 | $16,775 | 02/14/06 |
| 1999 Windstar | A49487 | $5,600 | 02/21/06 |
| 2000 Impala | 137184 | $6,100 | 02/27/06 |
| 1998 Explorer | B79569 | $5,025 | 03/04/06 |
| 2003 Ram | 153073 | $13,100 | 12/17/05 |
| 2001 Rodeo | 348928 | $7,765 | 11/29/05 |
| 1999 Tahoe | 223170 | $7,765 | 03/14/06 |
| 2002 Buick Rendezvous*** | 505261 | $11,375 | * |
| 1999 Ford F-150*** | B56068 | $9,600 | 10/17/05 |
| 2001 Suburban | 237695 | $14,235 | 03/30/06 |
| 2002 Suzuki XL7 | 129848 | $10,575 | 04/19/06 |

\* Vehicle was sold by Judd's and Sandy Hollow; exact date is still under investigation.

** The values set forth on the Amount Floored reflect a $100 charge assessed by RCL to Sandy Hollow, so that Sandy Hollow could obtain a lower interest rate for the vehicles floored.

***The Vehicle Title Agreements for these vehicles have not been located.

```
EXHIBIT
   5
```

## FLOOR PLAN ADVANCE NOTE

Debtor

Sandy Hollow Auto Center
3909 Sandy Hollow Rd
Rockford, IL 61109

$ _10 870_                          Rockford, Illinois    _7/15_  20__

    FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the principal sum of $ _ten thousand eight seventy_ dollars ($ _10,870 -_) upon the sale of the collateral listed below or 120 days from the date hereof

Make:  _2001_
Year:  _Dodge_  _Black_
Model:  _Dakota_
V.I.N.  _1B7HL28X41S310644_

    The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By _____

**EXHIBIT**
**6**

①

## FLOOR PLAN ADVANCE NOTE

Debtor

Sandy Hollow Auto Center
3909 Sandy Hollow Rd
Rockford, IL 61109

Rockford, Illinois    **6/10**    200_

$ __11275__

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the principal sum of $ _Eleven thousand two seventy five_ dollars ($ __11275__ ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    _2002_
Make    _Buick_    Black
Model   _Randevous_
VIN     _365D 80 3E1 25 6005 261_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By: _R. S____

**FLOOR PLAN ADVANCE NOTE**

Dealer

Sandy Hollow Auto Center
2909 Sandy Hollow Rd
Rockford IL 61109

$ 9500                                    Rockford, Illinois        8/12      200_

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the
amount sum of $ _Nine thousand five hundred_____ dollars
$ _9500_____ upon the sale of the collateral listed below or 120 days from the date hereof.

Year    1999
Make    Ford  F-150  Burgundy
Model   F-150
VIN     1FTRX18W2XNB56068.

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

B: R Sw]

FLOOR PLAN ADVANCE NOTE

Debtor:

Sandy Hollow Auto Center
3909 Sandy Hollow Rd
Rockford, IL 61109

$ 10,500                                    Rockford, Illinois    6/29    20__

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the
principal sum of $ Ten thousand five                                           dollars
$ 10,500        ) upon the sale of the collateral listed below or 120 days from the date hereof

Make    2001
Year    Olds        Black
Model   Aurora
V.n.#   1GHDT13w5916.3072

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By:

FLOOR PLAN ADVANCE NOTE

Debtor

Sandy Hollow Auto Center
3909 Sandy Hollow Rd
Rockford IL 61109

Rockford, Illinois    9-1    20--

$ 5500

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the principal sum of $ _Five Thousand five hundred_ dollars $ 5,500 upon the sale of the collateral listed below or 120 days from the date hereof

Make _1999_
Year _ford_
Model _windstar_
VIN _2FMZA514 1 X B A 49487_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By _____

*1*

FLOOR PLAN ADVANCE NOTE

Debtor

Sandy Hollow Auto Center
3909 Sandy Hollow Rd
Rockford, IL 61109

$ _7665_                          Rockford, Illinois    _9/15_ 20--

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the
principal sum of $ _Seven thousand six sixty five_ dollars
$ _7665_                 ) upon the sale of the collateral listed below or 120 days from the date hereof

Year _2001_
Make _Isuzu_  white.
Model _Rodeo_
Serial _452DM58W614345908_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By: _____

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
3956 Sandy Hollow Rd
Rockford, IL 61109

*4925*                          Rockford, Illinois    10/21/05

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing
the sum of __Forty nine hundred twenty five__ DOLLARS
*4925* upon the sale of the collateral listed below or 120 days from the date hereof.

__1998__
__Ford__
__Explorer__
__1FMZU34E1WZB79569__

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of that certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By  R S

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
3905 Sandy Hollow Rd
Rockford IL 61109

$ _13,000_____                              Rockford, Illinois      _11-1_____

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing,
the sum of $ _Thirteen Thousand_____ dollars
$ _13,000_____ upon the sale of the collateral listed below or 120 days from the date hereof.

Year    _2003_
Make    _Dodge Ram_
Model   _Ram_
ID      _ID7HA18N53S153073_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of the Lease Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By _____

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
1906 Sandy Hollow Rd
Rockford, IL 61109

$ _5,000_                                        Rockford, Illinois    _11-1_

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
the sum of $ _Five_ _thousand_ _____ dollars
$ _5,000_ ) upon the sale of the collateral listed below or 120 days from the date hereof.

Year    _1997_
Make    _Dodge_white_
Model   _Ram_
        _1B7HC 76 2 7VS/ 702 30_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

B _[signature]_

⑦

## FLOOR PLAN ADVANCE NOTE

Debtor

Sandy Hollow Auto Center
4559 Sandy Hollow Rd
Rockford, IL 61109

8375                                          Rockford, Illinois    11/11    ....

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
... the sum of $   Eight   thousand   three   seventy   Dollars
$   8375   ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    2002
Make    Mazda    Silver
Model   Truck
VIN                 m01490

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of ...
are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By

①

## FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
1709 Sandy Hollow Rd
Rockford, IL 61109

17710 —                                    Rockford, Illinois    11·21

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the sum of $ Seventeen thousand seven hundred 17,710.—) upon the sale of the collateral listed below or 120 days from the date hereof.

Year    2002
Make    Chevy      Black
Model   Suburban
VIN     3GNFK16Z52G263039

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By

**FLOOR PLAN ADVANCE NOTE**

Debtor:

Sandy Hollow Auto Center
1666 Sandy Hollow Rd
Rockford IL 61109

$ _16,675_                                    Rockford, Illinois   _2/2_   _____

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
the principal sum of $ _Sixteen Six Seventy five_                     dollars
($ _16,675_          ) upon the sale of the collateral listed below or 120 days from the date hereof:

Year:   _2003_
Make:   _Chevy_
Model:  _Suburban_ maroon
VIN:    _IGNEC 16 Z 33J 166 835_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc. the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By: _[signature]_

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
3906 Sandy Hollow Rd
Rockford, IL 61109

66 25                          Rockford, Illinois    9206

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
_Illinois_ Six thousand sixtwenty five  dollars
6625  ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    2002
Make    Chevy
Model   Astro Van white
VIN     1GC-DM 19X 52 B124316

    The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc. the terms of which
are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By

## FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
1966 Sandy Hollow Rd
Rockford, IL 61109

6,000                                    Rockford, Illinois    2-2-06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc., the sum of $ Six thousand                                    dollars
6,000             ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    2000
Make    Chevy  Red
Model   Impala
VIN     2G1WF55E5y9137184

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By _____

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
4916 Sandy Hollow Rd
Rockford, IL 61109

4655                                    Rockford, Illinois    2/8

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
the principal sum of $ _Four thousand six fifty five_ dollars
($ _4655_ ) upon the sale of the collateral listed below or 90 days before the date hereof.

Year    _1998_
Make    _Dodge   white_
Model   _Caravan_
VIN     _2B4GP4438WR787667_

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the
certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

3. _R. S____

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
1929 Sandy Hollow Rd
Rockford IL 61109

5760                          Rockford, Illinois      2/17

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
Illinois     Five thousand seven sixty     Dollars
(       5760       ) upon the sale of the collateral listed below or 120 days from the date hereof

1997
Ford          Red
F-150
1FTDF1763VK832392

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

3.  [signature]

G

## FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
3906 Sandy Hollow Rd
Rockford IL 61109

7665                              Rockford, Illinois    2/17

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing
the sum of $ Seven thousand six sixty five dollars
$ 7665 upon the sale of the collateral listed below or 120 days from the date hereof

Year: 1999
Make: Chevy Red
Model: Tahoe
3GNEK18R7XG223170

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with that certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By: R S

<u>FLOOR PLAN ADVANCE NOTE</u>

Sandy Hollow Auto Center
1009 Sandy Hollow Rd
Rockford IL 61109

$5725-     Rockford, Illinois    3/9/06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the sum of $ Fifty Seven Twenty Five dollars $ 5725- upon the sale of the collateral listed below, or 120 days from the date hereof.

Year    2000
Make    Dodge
Model   Caravan
         2B4GP 2433 YR867918

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of the Floor Plan Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc. the terms of which are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By _____

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
2000 Grand Caravan 2D4GP 2433 yR 367918 ("vehicle") has been sold by SH on
March 18 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By:
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
BUY SHEET MISSING

EXHIBIT
7

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
~~1998~~ ~~used Camaro~~ 2G4CP ~~1929~~ ~~8XXXX6~~ ("vehicle") has been sold by SH on
_____, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this _15TH_ day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
BUY SHEET MISSING

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
02 Suburban  3GNFK16Z52G263039 ("vehicle") has been sold by SH on
Jan 20 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15th day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD  1/20/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
97 Ram 1B7HB1627VS170230 ("vehicle") has been sold by SH on
Jan 31, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15th day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 1/31/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
02 Astro 1GCDm19x52B134 816   ("vehicle") has been sold by SH on
Feb 03            , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By:
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 2/3/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
97 Ford F-150  1FTDF1765VKA32392 ("vehicle") has been sold by SH on
March 17 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____

Its: PResiDeNT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON  ASSOCIATED  BK  FLOOR PLAN
TITLE  ATTACHED
SOLD   3/17/06
FIRST DISCOVERED CAR WAS
MISSING  ON  3/20/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
02 mazada  4F4 YR16u 92 Tm 04190 ("vehicle") has been sold by SH on
Feb, 03 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this _15TH_ day of June, 2006

Sandy Hollow Auto Center, Inc.

By _____
Its: _PRESIDENT_

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON  ASSOCIATED  FLOOR PLAN
TITLE  ATTACHED
BUY SHEET  MISSING

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
_01 Dakota 1B THL 2AK 4153 1064 44_ ("vehicle") has been sold by SH on
_Feb. 13_____, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this _15ʈ_ day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____

Its: _PRESIDENT_

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso

Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 2/13/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
01 Bravada  (GHDT15W512163077  ("vehicle") has been sold by SH on
April 19  , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED BK FLOORPLAN
TITLE ATTACHED
SOLD ON 4/19/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that 02 Suburban 1GNEC 16 Z 33J166835 ("vehicle") has been sold by SH on Feb, 14 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement, Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL retained the original certificate of title for the vehicle pending sale. SH has requested that RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without waiver of any rights and without payment in full for the vehicle, RCL has agreed to release the certificate of title to SH, so that SH can have a new title issued to the vehicle's buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this _15TH_ day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____

Its: _PRESIDENT_

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 2/14/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
99 windstar 2Fmzas141x8A49487 ("vehicle") has been sold by SH on
Feb 21 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 2/21/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
2000  Impala  2G1WF52E5Y9137184 ("vehicle") has been sold by SH on
Feb 27                , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this  15TH  day of June, 2006

Sandy Hollow Auto Center, Inc.

By:
Its:  PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD  2/27/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
__98 Explorer 1FMZU 34E1WZB79569__ ("vehicle") has been sold by SH on
__March 04__, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this __15TH__ day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: __PRESIDENT__

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED)
SOLD  3/4/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
03 Ram  1DTHA18N535153073  ("vehicle") has been sold by SH on
Dec. 17, 2005 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By:
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 12/17/05

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
01 Rodeo  4S2DM58W614 348928  ("vehicle") has been sold by SH on
Nov 29, 2005 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By:
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED
SOLD 11/29/05

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
99 Tahoe  3GNEK18R1XG-223170  ("vehicle") has been sold by SH on
March 14 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15T# day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON ASSOCIATED FLOOR PLAN
TITLE ATTACHED

SOLD  3/14/06

FIRST DISCOVERED CAR WAS
MISSING ON 3/30/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
01 Suburban 1GNFK16T7 1J 237695 ("vehicle") has been sold by SH on
March 30 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15ᵗʰ day of June, 2006

Sandy Hollow Auto Center, Inc.

By
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaVassa
Its: President

ON SV FLOOR PLAN
TITLE ATTACHED
SOLD 3/30/06

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
02 Suzuki XL7  J53Tx9av824129848  ("vehicle") has been sold by SH on
April 18 ____, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15ᵗʰ day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

ON  SV  FLOOR PLAN
TITLE ATTACHED
SOLD ON  4/18/06

| Gary Judd and Rhonda Judd | Rockford Capital Leasing, Inc | Loan Number CL004B |
|---|---|---|
| Sandy Hollow Auto Center, Inc. | 4249 E. State St., Ste. 301 | Date     7/1/02 |
| 3909 Sandy Hollow Rd; Rockford, IL 61109 | Rockford, IL. 61108 | Maturity Date  1/1/03 |
| 815-874-0003 | | Loan Amount $ 300,000.00 |
| BORROWER'S NAME AND ADDRESS | | Renewal Of  CL004A |
| "I" includes each borrower above, jointly and severally; "You" means the lender, its successors and assigns. | | |

I promise to pay to you, or your order, at your address listed above the
**PRINCIPAL** sum of ____ Three Hundred Thousand Dollars & No/100's----------------Dollars $300,000.00

- [ ] **Single Advance:** I have received all of this principal sum. No additional advances are contemplated under this note.
- [X] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. As of today I have received the amount of $ __ 275,600.00 ____ and future principal advances are contemplated. Conditions The conditions for future advances are  set forth in the Supplemental Agreement  Dated 7/1/02 attached hereto and made a part thereof.

- [X] **Open-End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires no later than  1/1/03  .
- [ ] **Closed-End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**PURPOSE:** The purpose of this loan is ___ to renew note #CL004A for an operating line of credit.
**INTEREST:** I agree to pay interest on the principal balance(s) owing from time to time as stated in this section. Interest will be calculated on a _____ basis.
- [ ] **Fixed Rate:** I agree to pay interest at the fixed, simple rate of _____ % per year.
- [X] **Variable Rate:** I agree to pay interest at the initial simple rate of _13.50_ % per year. This rate may change as stated below.
  - [ ] **Index Rate:** The future rate will be _____ the following index rate: _____
    _____
  - [X] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in our control.
  - [ ] **Frequency and Timing:** The rate on this note may increase as often as _____
        An increase in the interest rate will take effect _____
  - [X] **Limitations:** The rate on this note will not at any time  (and no matter what happens to any index rate used) go above or below these limits.
    - [X] **Maximum Rate:** The rate will not go above  no maximum  .
    - [X] **Minimum Rate:** The rate will not go below  13.50%  .
  **Post-Maturity Rate:** I agree to pay interest on the unpaid balance owing after maturity and until paid in full as stated below.
  - [X] on the same fixed or variable rate basis in effect before maturity (as indicated above).
  - [ ] at a rate equal to _____

- [X] **ADDITIONAL CHARGES:** In addition to interest, I [ ] have paid [X] agree to pay the following additional charges: _15% late charge of amount due if not paid within 10 days of due date _____

**PAYMENTS:** I agree to pay this note as follows:
- [X] **Interest:** I agree to pay accrued interest  as billed, monthly beginning 8/1/02 and every month  thereafter until maturity.
- [X] **Principal:** I agree to pay the principal  as set forth in the Supplemental Agreement  attached hereto.
- [ ] **Installments:** I agree to pay this note in _____ payments. The first payment will be in the amount of $_____ and will be due on _____ . A payment of $_____ will be due on the _____ day of each _____ thereafter. The final payment of the entire unpaid balance of principal and interest will be due _____
- [X] **Effect of Variable Rate:** An increase in the interest rate will have the following effect on the payments:
  - [ ] The amount of the final payment will be increased.    [X] The amount of each scheduled payment will be increased.

**EXHIBIT
8**

**ADDITIONAL TERMS:**

**SECURITY:**  I give you a security interest in the following:

  (1)  any property of mine, whether I own it now or in the future, which is in your possession (This includes, but is not limited to, property I give you for safekeeping, collection, or exchange, and all dividends and distributions from the property.).

  (2)  the property described below, together with all parts, accessories, repairs, improvements and accessions to the property, and all proceeds and products from the property.

     [x] **Inventory:**  All inventory wherever it is located which I own now or may own in the future, which I will sell or lease, or which has been or will be supplied to me under contracts of service, or which are raw materials, work in process, or materials used or consumed in my business.

     [x] **Equipment:**  All equipment which I own now or may own in the future including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, and parts and tools. Any equipment described in a list or schedule which I give to you will also be included in the secured property, but such a list is not necessary for a valid security interest in my equipment.

     [ ] **Farm Products:** All farm products which I own now or may own in the future including, but not limited to:
          (a) all poultry and livestock and their young, along with their products and produce;
          (b) all crops, annual or perennial, and all products of the crops; and
          (c) all feed, seed, fertilizer, medicines, and other supplies used or produced in my farming operations.

     [x] **Accounts, Instruments, Documents, Chattel Paper and Other Rights to Payment:** All rights I have now or may have in the future to the payment of money including, but not limited to:
          (a) payment for goods sold or leased or for services rendered, whether or not I have earned such payment by performance; and
          (b) rights to payment arising out of all present and future debt instruments, chattel paper and loans and obligations receivable.
          The above include any rights and interests (including all liens and security interests) which I may have by law or agreement against any account debtor or obligor of mine.

     [X] **General Intangibles:** All general intangibles I own now or may own in the future including, but not limited to, tax refunds, applications for patents, patents, copyrights, trademarks, trade secrets, good will, trade names, customer lists, permits and franchises, and the right to use my name.

[ ] **Additional Property:** Described as follows:


Description of real estate if the above property is crops, timber, minerals (including oil or gas), fixtures_____

_____

Name of record owner, if not me: _____
[ ] If checked, this security agreement should be filed in the real estate records.

> Any person who signs within this box does so to give you a security interest in the property described above. This person does not promise to pay the note.
>
>     Signed _____    Date _____

I will use the property listed as security above for : ☐ farming operations, ☒ business purposes, ☐ other_____
☒ If checked, this note is secured by separate  and prior security agreement and UCC-1 filings
dated 4/20/97, 4/20/98, 5/1/99 ( Failure to list a prior security agreement here does not mean that the agreement does
not secure this note.)

**SIGNATURES: I AGREE TO THE TERMS SET OUT ON THE FRONT AND BACK OF ALL THE PAGES OF THIS
DOCUMENT.** I have received a copy of this document on today's date.

X _____     X _____
        Gary Judd, President                    Rhonda Judd, Secretary

X _____     X _____
        Gary Judd, Personally                   Rhonda Judd, Personally

---

## ADDITIONAL TERMS OF THE NOTE

**APPLICABLE LAW:** This Note and all documents given to secure its payment including a certain Security Agreement of even date, herewith, by Maker and Lender shall be interpreted and construed according to the laws of the State of Illinois.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce unpaid earned interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this form.

**INTEREST:** If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. If the interest rate on this note is variable, decreases in the interest rate will have the corresponding opposite effect on my payment that increases will have (as shown on the front of this form). No matter how the interest rate is computed, it will never be higher than the highest rate allowed by law.

**INDEX RATES:** If you and I have agreed that the interest rate on this note will be variable and will be related to an index rate, then the index we select will function only as a tool for setting the rate on this note. You do not guarantee, by selecting any index, that the rate on this note will have a particular relationship to the rate you charge on any other loans or any type or class of loans with your other customers.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal.

If this is closed-end credit, then repaying a part of the principal will not entitle me to additional credit.

If this is open-end credit, then repaying a part of the principal will entitle me to additional credit, unless the open-end feature has expired. You will not ordinarily make an advance if it would cause the unpaid principal amount to become greater than the maximum principal amount, or if the unpaid principal amount is already greater than the maximum principal amount. You will never be obligated to make such an advance, even if you occasionally do so.

**POST-MATURITY RATE:** For purposes of deciding when the "Post-Maturity Rate" (shown on the other side) applies, the term "maturity" means the following:

(1)  if the note is payable on demand, the date you make your demand or the date you accelerate payment on the note, whichever is earlier;
(2)  if the note is payable on demand with an alternate maturity date(s), the date you make your demand or the final alternate maturity date or the date you accelerate payment on the note, whichever is earlier; or,
(3)  in all other cases, the date of the last scheduled payment of principal or the date you accelerate payment on the note, whichever is earlier.

**SET-OFF:** You have the right to set-off any amount I owe you under this note against any right I have to receive money from you. If my right to receive money for you it owned by someone else not paying this note, your set-off can only reach funds I could have reached with my own request or endorsement. Your right of set-off does not extend to accounts where my rights are only as a fiduciary. It also does not extend to my IRA or other tax-deferred retirement account.

Your right of set-off applies without your first telling me you are going to use it. It applies no matter what sort or value of Collateral is on this loan. It also applies no matter who else has agreed to pay this note.

You will not be liable for wrongful dishonor of a check where such dishonor occurs because you set-off this debt against my account.

**ATTORNEYS' FEES:** If you hire a lawyer to collect this note, I must pay his or her fee, plus court costs (except where prohibited by law).

**DEFAULT:** I will be in default if any one or more of the following occur:

(1)  I fail to make a payment on time or in the amount due;
(2)  I fail to keep the collateral insured, if required;
(3)  I fail to keep any other promise I have made in connection with this loan or any agreement securing this I loan;
(4)  I fail to pay, or keep any other promise, on any other loan or agreement I have with you;
(5)  any other creditor of mine attempts to collect the debt I owe him through court proceedings;
(6)  I die;
(7)  I go into bankruptcy, whether by my own choice or not;
(8)  I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; or
(9)  anything else happens which causes you to believe that you will have difficulty collecting the amount I owe you.

3

**REMEDIES:** If I am in default on this note, you have the following remedies:

(1) you may, without notice, accelerate the due date of this note and make all unpaid principal, interest, and all other charges immediately due and payable;
(2) you may set-off this debt against any right I have to the payment of money from you;
(3) you may demand more security or new parties obligated to pay this note in return for not using any other remedy;
(4) you may make use of any remedy have under state or federal law;
(5) you may make use of any remedy given to you in any agreement securing this note; and
(6) if this is a multiple advance loan, either open-end or closed-end, you may refuse to make advances to me while I am in default.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By deciding not to use any remedy should I default, you do not waive your right to later consider the event a default if it happens again.

**CONFESSION OF JUDGMENT:** In addition to your remedies listed above, I authorize any attorney to appear in a court of record and confess judgment, without process, against me, in favor of you, for any sum unpaid and due on this note, together with collection costs including reasonable attorneys' fees.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:

(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

**ADDITIONAL PARTIES AND SECURITY:** I understand that I must pay this note even if someone else has signed it. You may sue me, or anyone else who is obligated on the note, or any of us together, to collect this note. You do not have to tell me this note has not been paid. You may, without notice, release any cosigner, release or substitute secured property, fail to perfect any security interest or otherwise impair the secured property, or waive any right you might have against any of us and I will still be obligated to pay the note. Extending new credit or renewing or modifying this note will not affect my duty to pay this note. If any of us have our obligation discharged in bankruptcy, this fact will not affect the obligation of any other person who has agreed to pay this note.

**FINANCIAL STATEMENTS:** I agree to provide to you, upon request, any financial statements or information you may deem necessary. I warrant that all financial statements and information I provide to you are or will be accurate, correct, and complete.

**GUARANTEE:** By signing below, I unconditionally guarantee the payment of any amounts owed under this note and any security agreement. I also agree that all the other terms of the note and any security agreement will apply to me.

## ADDITIONAL TERMS OF THE SECURITY AGREEMENT

**SECURED OBLIGATIONS:** This security agreement secures this note and any other debt I have with you, now or later. However, it will not secure other debts if you fail, with respect to such other debts, to make any required disclosure about this security agreement or if you fail to give any required notice of the right of rescission. This security agreement will be in effect until it is discharged in writing.

**OWNERSHIP AND DUTIES TOWARD PROPERTY:** I represent that I own the property listed as security on the front side. Any security interest in the property is ahead of the claims of any other creditor, and I will do whatever you require to protect your interest. I will keep the property in my possession at the address listed on the front side. I will not remove the property from that address unless I have given you written notice of the location where I would like to move the property to and you have not objected in writing. I will use the property only for its intended purposes, and will keep it in good repair. I will notify you of any loss or damage to the property. You may examine and inspect the property wherever it is located at any reasonable time. I will not sell or transfer the property or any interest in it without first obtaining your written consent, unless the property is inventory. By not objecting to an unauthorized sale or transfer, you do not waive your right to consider any subsequent unauthorized sale or transfer a default. I will pay all taxes and charges on the property as they become due.

**INSURANCE:** I agree to keep the property insured against the risks and for the amount you require. I will buy the insurance from a firm which is licensed to do business in this state and which is reasonably acceptable to you. You will be named as loss payee on the insurance policy. The insurance will be in effect until the property is released from this agreement. You may require additional security if you agree that insurance proceeds may be used to repair or replace the property.

**ACCOUNTS AS SECURED PROPERTY:** If I have given you a security interest in my accounts, I will not settle any account for less than its full value without your written permission.

I will collect all accounts until you tell me otherwise. I will keep the proceeds from all the accounts and any goods which are returned to me or which I have taken back in trust for you, and will not mix them with any other property of mine. At your request, I will deliver the proceeds to you or pay you the full price on any returned or repossessed items.

**INVENTORY AS SECURED PROPERTY:** If I have given you a security interest in my inventory, I will not dispose of it except in the ordinary course of my business at the fair market value for the property, or at a minimum price that we have agreed upon.

**FARM PRODUCTS AS SECURED PROPERTY:** If I have given you a security interest in my farm products, I will provide to you a written list of the buyers, commission merchants or selling agents to or through whom I may sell my farm products. As used in this paragraph, the terms farm products, commission merchants and selling agents have the meanings given to them in the Federal Food Security Act of 1985.

**RIGHTS OF LENDER:** You may take the following actions involving this agreement:

(1) you may notify any account debtor of your interest in the secured property and tell the account debtor to make the payment to you or someone else you name, rather than me; you may endorse any checks received from account debtors;
(2) you may place on any chattel paper or instruments a note indicating your interest in the secured property;
(3) you may, in my name, demand, collect, endorse, receive and give
     a receipt for, compromise, settle, and handle any suits or other proceedings involving the secured property;
(4) take any action you feel is necessary in order to take possession of the secured property, including performing any part of a contract or endorsing it in my name; and
(5) you may make an entry on my books and records showing the existence of the security agreement.

4

**PAYMENTS BY LENDER:** You are authorized to pay, on my behalf, charges I am or may become obligated to pay to preserve or protect the secured property (such as property insurance premiums). You may treat those payments as advances and add them to the unpaid principal under the note secured by this agreement.

**PURCHASE MONEY SECURITY INTEREST:** For the sole purpose of determining the extent of a purchase money security interest arising under this security agreement: (a) payments on any non-purchase money loan also secured by this agreement will not be deemed to apply to the purchase money loan, and (b)) payments on the purchase money loan will be deemed to apply first to the non-purchase money portion of the loan, if any, and then to the purchase money obligations in the order in which the items of collateral were acquired. No security interest will be terminated by application of this formula. As used above, "purchase money loan" means any loan the proceeds of which, either in whole or in part, are used to acquire any collateral securing the loan and all extensions, renewals, consolidations and refinancings of such loan.

**REMEDIES:** I will be in default on this security agreement if I am in default on any note this agreement secures or if I fail to keep any promise contained in the terms of this agreement. If I default, you have all of the rights and remedies provided in the note and under the Uniform Commercial Code. You may require me to make the secured property available to you at a place which is reasonably convenient. You may take possession of the secured property and sell it as provided by law. The proceeds will be applied first to your expenses and then to the debt. I agree that 10 days written notice sent to my address listed on the front side by first class mail will be reasonable notice under the Uniform Commercial Code.

**PLEDGES:** Pledged property is property I am giving to you to keep in your possession to secure the payment of the secured obligations. You may keep this property until the secured obligations are paid in full. You do not have to protect any rights I may have against any prior parties to the property. You or someone you select may be shown as the owner of the property. You may have any prior party make payments on the property to you. You are not liable for any decline in value of the property.

**FILING:** A carbon, photographic or other reproduction of this agreement may be used as a financing statement where allowed by law.

**INVENTORY VALUE:** I agree to provide to you, on your demand, such documents as you may request, including, but not limited to, an account of my inventory in such a form as you may request which documents should show the aggregate wholesale cost of such inventory.

5



*0955*

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $600,000.00 | 04-04-2006 | 04-04-2007 | 1414401030 | | | ESTE | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ROCKFORD CAPITAL LEASING, INC. (TIN: 61-1414401)
SANDY HOLLOW AUTO CENTER, INC. (TIN: 36-4138106)
4249 E STATE ST STE 201
ROCKFORD, IL 61108-2046

**Lender:** RIVERSIDE COMMUNITY BANK
PERRYVILLE BANKING CENTER
8835 EAST RIVERSIDE BLVD
PO BOX 10400
ROCKFORD, IL 61114
(815) 637-7009

| Principal Amount: $600,000.00 | Initial Rate: 8.250% | Date of Note: April 4, 2006 |
|---|---|---|

**PROMISE TO PAY.** ROCKFORD CAPITAL LEASING, INC.; and SANDY HOLLOW AUTO CENTER, INC. ("Borrower") jointly and severally promise to pay to RIVERSIDE COMMUNITY BANK ("Lender"), or order, in lawful money of the United States of America, the principal amount of Six Hundred Thousand & 00/100 Dollars ($600,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on April 4, 2007. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning May 4, 2006, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. The annual interest rate for this Note is computed on a 365/360 basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the PRIME RATE AS PUBLISHED IN THE WALL STREET JOURNAL. WHEN A RANGE OF RATES HAS BEEN PUBLISHED, THE LOWER OF THE RATES WILL BE USED (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current index rate upon Borrower's request. The interest rate change will not occur more often than each DAY. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 7.760% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 0.500 percentage points over the Index, resulting in an initial rate of 8.250% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: RIVERSIDE COMMUNITY BANK, 8835 EAST RIVERSIDE BLVD ROCKFORD, IL 61114.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 15.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the Indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured (and no Event of Default will have occurred) if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or

EXHIBIT
9

**PROMISSORY NOTE**
**(Continued)**

Loan No: 1414401038                                                                 Page 2

not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**COLLATERAL.** Borrower acknowledges this Note is secured by INCLUDING BUT NOT LIMITED TO SECURITY AGREEMENT DATED APRIL 4, 2006.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested either orally or in writing by Borrower or as provided in this paragraph. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following persons currently are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority: LEONARD J. LAPASSO, PRESIDENT of ROCKFORD CAPITAL LEASING, INC.; GARY A. JUDD, PRESIDENT of SANDY HOLLOW AUTO CENTER, INC.; RHONDA J JUDD, SECRETARY of SANDY HOLLOW AUTO CENTER, INC.; and TOM MARINGGLI, of ROCKFORD CAPITAL LEASING, INC. PER REQUEST TO RIVERSIDE COMMUNITY BANK. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or of any other loan with Lender; (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender; or (E) Lender in good faith believes itself insecure.

**ADDITIONAL PROVISION.**
THIS LOAN IS GOVERNED BY A BUSINESS LOAN AGREEMENT DATED APRIL 4, 2006.

**ADDITIONAL PROVISION.**
UNLIMITED, UNSECURED PERSONAL GUARANTY OF LEONARD J. LAPASSO, GARY A. JUDD AND RHONDA J. JUDD ALL THREE DATED APRIL 4, 2006.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Each Borrower understands and agrees that, with or without notice to Borrower, Lender may with respect to any other Borrower (a) make one or more additional advances or unsecured loans or otherwise extend additional credit; (b) alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (c) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (d) apply such security and direct the order or manner of sale thereof, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreements, as Lender in its discretion may determine; (e) release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; and (f) determine how, when and what application of payments and credits shall be made on any other indebtedness owing by such other Borrower. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

**ILLINOIS INSURANCE NOTICE.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

PRIOR TO SIGNING THIS NOTE, EACH BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. EACH BORROWER AGREES TO THE TERMS OF THE NOTE.
BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

ROCKFORD CAPITAL LEASING, INC.

By: _____
LEONARD J. LAPASSO, PRESIDENT of ROCKFORD
CAPITAL LEASING, INC.

SANDY HOLLOW AUTO CENTER, INC.

By: _____        By: _____
GARY A. JUDD, PRESIDENT of SANDY HOLLOW            RHONDA J JUDD, SECRETARY of SANDY HOLLOW
AUTO CENTER, INC.                                   AUTO CENTER, INC.

Loan No: 1414401038

**PROMISSORY NOTE**
**(Continued)**

Page 3

LENDER:

RIVERSIDE COMMUNITY BANK

X _____
   Authorized Signer



"0070"

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $600,000.00 | 04-04-2006 | 04-04-2007 | 1514401038 | 4I0 / A2 | | 83TEB | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ROCKFORD CAPITAL LEASING, INC. (TIN: 81-1414401)
SANDY HOLLOW AUTO CENTER, INC. (TIN: 36-4138186)
4249 E STATE ST STE 301
ROCKFORD, IL 61108-2045

**Lender:** RIVERSIDE COMMUNITY BANK
PERRYVILLE BANKING CENTER
6855 EAST RIVERSIDE BLVD
PO BOX 15400
ROCKFORD, IL 61114
(815) 637-7000

THIS BUSINESS LOAN AGREEMENT dated April 4, 2006, is made and executed between ROCKFORD CAPITAL LEASING, INC.; and SANDY HOLLOW AUTO CENTER, INC. ("Borrower") and RIVERSIDE COMMUNITY BANK ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement ("Loan"). Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of April 4, 2006, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**MULTIPLE BORROWERS.** This Agreement has been executed by multiple obligors who are referred to in this Agreement individually, collectively and interchangeably as "Borrower." Unless specifically stated to the contrary, the word "Borrower" as used in this Agreement, including without limitation all representations, warranties and covenants, shall include all Borrowers. Borrower understands and agrees that, with or without notice to any one Borrower, Lender may (A) make one or more additional secured or unsecured loans or otherwise extend additional credit with respect to any other Borrower; (B) with respect to any other Borrower alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of any indebtedness, including increases and decreases of the rate of interest on the indebtedness; (C) exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any security, with or without the substitution of new collateral; (D) release, substitute, agree not to sue, or deal with any one or more of Borrower's or any other Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (E) determine how, when and what application of payments and credits shall be made on any indebtedness; (F) apply such security and direct the order or manner of sale of any Collateral, including without limitation, any non-judicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (G) sell, transfer, assign or grant participations in all or any part of the Loan; (H) exercise or refrain from exercising any rights against Borrower or others, or otherwise act or refrain from acting; (I) settle or compromise any indebtedness; and (J) subordinate the payment of all or any part of any of Borrower's indebtedness to Lender to the payment of any liabilities which may be due Lender or others.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** ROCKFORD CAPITAL LEASING, INC. is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Illinois. ROCKFORD CAPITAL LEASING, INC. is duly authorized to transact business in all other states in which ROCKFORD CAPITAL LEASING, INC. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which ROCKFORD CAPITAL LEASING, INC. is doing business. Specifically, ROCKFORD CAPITAL LEASING, INC. is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. ROCKFORD CAPITAL LEASING, INC. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. ROCKFORD CAPITAL LEASING, INC. maintains an office at 4249 E STATE ST STE 301, ROCKFORD, IL 61108-2045. Unless ROCKFORD CAPITAL LEASING, INC. has designated otherwise in writing, the principal office is the office at which ROCKFORD CAPITAL LEASING, INC. keeps its books and records including its records concerning the Collateral. ROCKFORD CAPITAL LEASING, INC. will notify Lender prior to any change in the location of ROCKFORD CAPITAL LEASING, INC.'s state of organization or any change in ROCKFORD CAPITAL LEASING, INC.'s name. ROCKFORD CAPITAL LEASING, INC. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to ROCKFORD CAPITAL LEASING, INC. and ROCKFORD CAPITAL LEASING, INC.'s business activities.

SANDY HOLLOW AUTO CENTER, INC. is a corporation for profit which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Illinois. SANDY HOLLOW AUTO CENTER, INC. is duly authorized to transact business in all other states in which SANDY HOLLOW AUTO CENTER, INC. is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which SANDY HOLLOW AUTO CENTER, INC. is doing business. Specifically, SANDY HOLLOW AUTO CENTER, INC. is, and at all times shall be, duly qualified as a foreign corporation in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. SANDY HOLLOW AUTO CENTER, INC. has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. SANDY HOLLOW AUTO CENTER, INC. maintains an office at 3909 SANDY HOLLOW RD, ROCKFORD, IL 61109. Unless SANDY HOLLOW AUTO CENTER, INC. has designated otherwise in writing, the principal office is the office at which SANDY HOLLOW AUTO CENTER, INC. keeps its books and records including its records concerning the Collateral. SANDY HOLLOW AUTO CENTER, INC. will notify Lender prior to any change in the location of SANDY HOLLOW AUTO CENTER, INC.'s state of organization or any change in SANDY HOLLOW AUTO CENTER, INC.'s name. SANDY HOLLOW AUTO CENTER, INC. shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to SANDY HOLLOW AUTO CENTER, INC. and SANDY HOLLOW AUTO CENTER, INC.'s business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business: None.

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any

EXHIBIT
10

**BUSINESS LOAN AGREEMENT**
(Continued)

Loan No: 1414401038                                                                Page 2

---

provision of (a) Borrower's articles of incorporation or organization, or bylaws, or (b) any agreement or other instrument binding upon Borrower or (c) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be for Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Additional Requirements.** _(handwritten initials)_  RIVERSIDE COMMUNITY BANK TO RECEIVE ~~QUARTERLY~~ INTERNALLY PREPARED FINANCIAL STATEMENTS ON SANDY HOLLOW AUTO CENTER, INC.

RIVERSIDE COMMUNITY BANK TO RECEIVE ANNUAL TAX RETURNS AND ACCOUNTANT PREPARED FINANCIAL STATEMENTS ON SANDY HOLLOW AUTO CENTER, INC., ROCKFORD CAPITAL LEASING, INC. AND ROCKFORD FINANCIAL SERVICES, INC.

RIVERSIDE COMMUNITY BANK TO RECEIVE ANNUAL TAX RETURNS AND PERSONAL FINANCIAL STATEMENTS ON LEONARD J. LAFASSO, GARY A. JUDD AND RHONDA J. JUDD.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property value on the basis of which insurance has been obtained, and the manner of determining that value; and (6) the expiration date of the policy. In addition, upon request of Lender Borrower will have each insurance policy, obtain and submit reports from an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| LEONARD J. LAFASSO | Unlimited |
| GARY A. JUDD | Unlimited |
| RHONDA J. JUDD | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**BUSINESS LOAN AGREEMENT**
(Continued)

Loan No: 1414401038    Page 3

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which payment would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Compliance Certificates.** Unless waived in writing by Lender, provide Lender at least annually, with a certificate executed by Borrower's chief financial officer, or other officer or person acceptable to Lender, certifying that the representations and warranties set forth in this Agreement are true and correct as of the date of the certificate and further certifying that, as of the date of the certificate, no Event of Default exists under this Agreement.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge, transfer, acquire or consolidate with any other entity, change its name, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) pay any dividends on Borrower's stock (other than dividends payable in its stock), provided, however that notwithstanding the foregoing, but only so long as no Event of Default has occurred and is continuing or would result from the payment of dividends, if Borrower is a "Subchapter S Corporation" (as defined in the Internal Revenue Code of 1986, as amended). Borrower may pay cash dividends on its stock to its shareholders from time to time in amounts necessary to enable the shareholders to pay income taxes and make estimated income tax payments to satisfy their liabilities under federal and state law which arise solely from their status as Shareholders of a Subchapter S Corporation because of their ownership of shares of Borrower's stock, or purchase or retire any of Borrower's outstanding shares or alter or amend Borrower's capital structure.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Borrower will not enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection therewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, in Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any

Case 3:08-cv-50175    Document 1-3    Filed 08/14/2008    Page 36 of 64

Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the Guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding twelve (12) months, it may be cured if Borrower or Grantor, as the case may be, after receiving written notice from Lender demanding cure of such default: (1) cure the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**ADDITIONAL PROVISION.**
**SUBORDINATION:** SUBORDINATION AGREEMENT DATED NOVEMBER 14, 2003 BETWEEN AMCORE BANK, RIVERSIDE COMMUNITY BANK, ROCKFORD FINANCIAL SYSTEMS, INC AND ROCKFORD CAPITAL LEASING, INC GRANTING RIVERSIDE A FIRST SECURITY POSITION IN COLLATERAL ON GARY AUTO AND RHONDA AUTO AND SANDY HOLLOW AUTO CENTER, INC.

**TITLES:** ALL TITLES OF FLOORED VEHICLES WILL BE RETAINED BY RIVERSIDE COMMUNITY BANK UNTIL THE VEHICLE HAS BEEN SOLD.

**INVENTORY:** ROCKFORD CAPITAL LEASING WILL FURNISH BANK WITH AN INVENTORY SHEET AT TIME OF NEW ADDITIONS TO FLOOR PLAN NO LATER THAN MONTHLY.

**COLLATERAL MONITORING:** RIVERSIDE COMMUNITY BANK TO MAKE MONTHLY FLOOR PLAN INSPECTIONS. ROCKFORD CAPITAL LEASING TO MAKE MONTHLY FLOOR PLAN INSPECTIONS.

**CURTAILMENT POLICY:** AFTER SIX (6) MONTHS, STARTING WITH THE SEVENTH (7TH) MONTH, A 10% REDUCTION ON THE INITIAL VEHICLE AMOUNT FLOORED IS DUE MONTHLY UNTIL THE TWELFTH (12TH) MONTH, AT WHICH TIME THE VEHICLE IS TO BE PAID IN FULL.

**OTHER REQUIREMENTS:**                                                    [initials] SW 4/11
FLOOR PLAN AMOUNT OF VEHICLE SHALL NOT EXCEED THE ADVERTISED RETAIL PRICE.

FLOORED VEHICLES SHALL NOT BE OLDER THAN SEVEN (7) YEARS FROM THE CURRENT YEAR.

THE ADVANCE VALUE IS LIMITED TO CURRENT BLACK BOOK (CLEAN) WHOLESALE PRICE.

PAYOFF OF SOLD VEHICLES SHALL BE RECEIVED NO LATER THAN THREE DAYS AFTER SALE DATE.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against any Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.

**Joint and Several Liability.** All obligations of Borrower under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower. This means that each Borrower signing below is responsible for all obligations in this Agreement. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this

**BUSINESS LOAN AGREEMENT**
**(Continued)**

Loan No: 141440103B                                                                                     Page 5

Agreement.

No Waiver by Lender. Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

Notices. Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Unless otherwise provided or required by law, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

Severability. If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any person or circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other person or circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

Subsidiaries and Affiliates of Borrower. To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

Successors and Assigns. All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

Survival of Representations and Warranties. Borrower understands and agrees that in extending Loan Advances, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the extension of Loan Advances and delivery to Lender of the Related Documents, shall be continuing in nature, shall be deemed made and redated by Borrower at the time each Loan Advance is made, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

Time is of the Essence. Time is of the essence in the performance of this Agreement.

Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in effect on the date of this Agreement:

Advance. The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

Agreement. The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

Borrower. The word "Borrower" means ROCKFORD CAPITAL LEASING, INC.; and SANDY HOLLOW AUTO CENTER, INC. and includes all co-signers and co-makers signing the Note.

Collateral. The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

Environmental Laws. The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

Event of Default. The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

GAAP. The word "GAAP" means generally accepted accounting principles.

Grantor. The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

Guarantor. The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

Guaranty. The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

Hazardous Substances. The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under the Agreement or under any of the Related Documents.

Lender. The word "Lender" means RIVERSIDE COMMUNITY BANK, its successors and assigns.

Loan. The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

Note. The word "Note" means the Note executed by ROCKFORD CAPITAL LEASING, INC.; and SANDY HOLLOW AUTO CENTER, INC. in the principal amount of $600,000.00 dated April 4, 2006, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

Permitted Liens. The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not

## BUSINESS LOAN AGREEMENT
### (Continued)

yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (B) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED APRIL 4, 2006.

BORROWER:

ROCKFORD CAPITAL LEASING, INC.

By: _____
LEONARD J IAPASSO, PRESIDENT of ROCKFORD
CAPITAL LEASING, INC.

SANDY HOLLOW AUTO CENTER, INC.

By: _____
GARY A JUDD, PRESIDENT of SANDY HOLLOW
AUTO CENTER, INC.

By: _____
RHONDA J JUDD, SECRETARY of SANDY HOLLOW
AUTO CENTER, INC.

LENDER:

RIVERSIDE COMMUNITY BANK

By: _____
Authorized Signer

LaserPro, Ver. 5.31.00.005  Copr. Harland Financial Solutions, Inc. 1997, 2006. All Rights Reserved.  - IL  Z:\CFI\LPL\C40.FC  TR-24461  PR-48

| VEHICLE DESCRIPTION | VIN | AMOUNT FLOORED | DATE SOLD |
|---|---|---|---|
| 2000 Chevy Monte Carlo | 198801 | $7,600 | 04/24/06 |
| 1999 Dodge Ram | 183090 | $8,365 | 04/18/06 |
| 2001 Honda Civic | 044947 | $8,100 | 04/21/06 |
| 2000 Mitsubishi Eclipse | 140024 | $8,115 | 04/15/06 |
| 2000 Kia Sportage | 642762 | $4,740 | 04/29/06 |
| 2001 Chevy Monte Carlo | 255502 | $8,765 | 04/18/06 |
| 2002 Volkswagon Beetle | 401685 | $9,925 | * |
| 2003 Jeep Liberty | 567043 | $15,000 | 03/06/06 |
| 2000 Jeep Grand Cherokee | 253204 | $8,475 | 04/13/06 |

* Police Book indicates returned to GRAA for no title - no date given.


EXHIBIT
11

*Riverside*

## FLOOR PLAN ADVANCE NOTE

Group

Sandy Hollow Auto Center
909 Sandy Hollow Rd
Rockford, IL 61109

7500                                    Rockford, Illinois     4/13/06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
the sum of $ *Seven thousand five hundred* dollars
$ 7500 ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    2000
Make    Chev        Silver
Model   Monte Carlo
VIN     2G1WX12K6Y9198801

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of the Master Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

*[signature]*

**EXHIBIT**

**12**

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
1956 Sandy Hollow Rd
Rockford, IL 61109

$8265. —

Rockford, Illinois    2/2/06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the principal sum of $ _Eight thousand two sixty five_ dollars ($ _8265_ ) upon the sale of the collateral listed below or 120 days from the date hereof.

1999
Dodge
Ram   Blue
3B7HC1 2 4 6 K G J S 3090

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of the Master Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

<u>FLOOR PLAN ADVANCE NOTE</u>

Sandy Hollow Auto Center
4956 Sandy Hollow Rd
Rockford, IL 61109

8000                                    Rockford, Illinois    2/17/06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, the principal sum of $ __Eight  thousand__                                              dollars
$ __8000__                ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    __2001__
Make    __Honda__  Bus
Model    __Civic__
VIN    __1 H G E M 2 1 9 X $ 1 L 0 4 4 9 4 7__

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc. the terms of which are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By: _R. Swd_

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
4646 Sandy Hollow Rd
Rockford, IL 61109

8015                                   Rockford, Illinois      2/17

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing
the sum of $ Eight thousand fifteen                              Dollars
8015 )  upon the sale of the collateral listed below or 120 days from the date hereof.

Year  2000      Black
Make  M.t.
Model  Eclipse
V.I.N.  4A3AC54H9YE140024

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms
of a certain Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

By _____

## FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
7699 Sandy Hollow Rd
Rockford, IL 61109

~~$2000~~ 4640                    Rockford, Illinois    4/7/06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc. the principal sum of $ Forty Six Forty ————————— dollars $4640. ———— upon the sale of the collateral listed below or 120 days from the date hereof

Year    2000
Make    Kia
Model   Sportage
VIN     KNDJA72BDY5642762

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of the Master Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc., the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By  R - S——

FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
4406 Sandy Hollow Rd
Rockford, IL 61109

**8665**          Rockford, Illinois     **4/7/06**

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
the sum of $ _Eight Thousand six sixty five_ dollars
( **8665** ) upon the sale of the collateral listed below or 120 days from the date hereof

Year    **2001**
Make    **Chevy**
Model    **Monte Carlo** Black
VIN    **2G1W X1GK6192655O2**

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the terms of a Demand Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc. the terms of which are incorporated herein by reference

SANDY HOLLOW AUTO CENTER

By _R. S._

RCL

## FLOOR PLAN ADVANCE NOTE

Sandy Hollow Auto Center
3614 Sandy Hollow Rd
Rockford, IL 61109

8375                              Rockford, Illinois    4/7/06

FOR VALUE RECEIVED, the undersigned promises to pay to the order of Rockford Capital Leasing, Inc.
the sum of $ Eight thousand three hundredseven                    dollars
($ 8375          ) upon the sale of the collateral listed below or 120 days from the date hereof.

Year    2000
Make    Jeep
Model   Grand Cherokee
VIN     1J4GW58N9yC055204

The undersigned grants a security interest therein to Rockford Capital Leasing, Inc. in accordance with the
Master Lease Note and Security Agreement between the undersigned and Rockford Capital Leasing, Inc. the terms of which
are incorporated herein by reference.

SANDY HOLLOW AUTO CENTER

R. Sudd



## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
2000 Monte Carlo 2G1WX12K6Y9288801 ("vehicle") has been sold by SH on
April 24, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By:
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President


TITLE @ RIVERSIDE
SOLD ON 4/24/06
    - RONDA WAS ASKED ON 1/3 WHERE
    WAS THE CAR? SHE STATED
    IT WAS SOLD.
    - ON 4/30/06 I WAS TOLD IT WAS
    AT THE DETAIL SHOP

**EXHIBIT**
**14**

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
<u>99 Ram 30TH C 12V 6XC 183090</u> ("vehicle") has been sold by SH on
<u>April 18</u>, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this <u>15 TH</u> day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____

Its: _____
    PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

TITLE @ RIVERSIDE
SOLD ON 4/18/06
ON 4/30 I WAS TOLD IT WAS AT
THE AUCTION.
ON 5/3 I WAS TOLD BY RONDA THE
CAR WAS SOLD

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
01 Honda Civic. 1HGEM 219V1L049947 ("vehicle") has been sold by SH on
April 21      , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President


TITLE @ RIVERSIDE

SOLD ON 4/21/06
- ON 4/30/06 I WAS TOLD IT WAS AT   BY RONDA
  THE AUCTION.
- RONDA WAS ASKED ON 5/3 WHERE
  THE CAR WAS ? SHE STATED IT WAS
  SOLD

**VEHICLE TITLE AGREEMENT**

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
2000 Eclipse  4A3AC84L9VE140024  ("vehicle") has been sold by SH on
April 25          , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this _15TH_ day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
_PRESIDENT_
Its:

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

- TITLE @ RIVERSIDE
- SOLD 4/15/06
    - RONDA WAS ASKED ON 5/3, WHERE
      WAS THE FUNDING. SHE SAID SHE
      WOULD LOOK INTO. MAYBE NOT
      FUNDED

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
2000 Kia Sportage KNDJA723845612762 ("vehicle") has been sold by SH on
April 29, _____, 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President


TITLE @ RIVERSIDE
SOLD 4/29/06
    - RONDA WAS ASKED ON 5/5 WHERE
      WAS THE FUNDING, SHE SAID SHE
      WOULD LOOK INTO, MAYBE NOT
      FUNDED

## VEHICLE TITLE AGREEMENT

Sandy Hollow Auto center, Inc. an Illinois corporation, hereinafter "SH", states that
Olmonte Carlo 2G1WX15K619255502 ("vehicle") has been sold by SH on
April 18 , 2006. Rockford Capital Leasing, Inc., hereinafter "RCL", had a
security interest in the vehicle under the Motor Vehicle Dealer Financing Agreement,
Sandy Hollow Auto Center, Inc. #CL004B and the Promissory Note between SH, Gary
Judd, Rhonda Judd and RCL dated January 1, 2004. As a result of the financing, RCL
retained the original certificate of title for the vehicle pending sale. SH has requested that
RCL release the title to the vehicle, since SH sold the vehicle as set forth above. Without
waiver of any rights and without payment in full for the vehicle, RCL has agreed to
release the certificate of title to SH, so that SH can have a new title issued to the vehicle's
buyer. RCL shall tender the title to SH upon execution of this Agreement.

Dated this 15TH day of June, 2006

Sandy Hollow Auto Center, Inc.

By: _____
Its: PRESIDENT

Rockford Capital Leasing, Inc.

By: Leonard J. LaPasso
Its: President

TITLE @ RIVERSIDE
SOLD ON 4/18/06
— ON 4/30/06 I WAS TOLD CAR
   WAS ON DEMO, (WITH CUSTOMER
   WHO INTENDED) TO PURCHASE)

# 2.

# Answer to Adversary Complaint

# (Docket Entry Number 5)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| GARY A. JUDD and RHONDA J. JUDD, | CASE NO.: 06-71118 |
| Debtors, | ADVERSARY NO.: 06 A 96116 |
| ROCKFORD CAPITAL LEASING, INC. an Illinois Corporation | |
| Plaintiff, | |
| v. | |
| GARY A. JUDD and RHONDA J. JUDD, | |
| Defendants | |

### ANSWER TO COMPLAINT TO DETERMINE DISCHARGEABILITY

Now come the Defendants, Gary A. Judd and Rhonda J. Judd, by and through their attorneys, Schlueter Ecklund, and for their Answer to the Plaintiff's Complaint to Determine Dischargeability, state:

#### GENERAL ALLEGATIONS

1 - 9.  The allegations contained in paragraphs 1 though 9 are admitted.

10.  The Defendants admit the allegations of paragraph 10, except that they deny that funds were provided to the Judds and that RFS was "entitled to the proceeds when the vehicle was sold".

11.  The allegations of paragraph 11 are denied.

12.  The allegations of paragraph 12 are admitted.

### COUNT I
(Section 523(a)(4))

13.  The Defendants hereby restate their above responses to paragraphs 1 through 12 of the Complaint.

14.   The Defendants admit that the Plaintiff began extending floor plan financing to the Sandy Hollow in the amount of $300,000.00, but deny that such financing was, in all respects, "the same" as that provided by RFS.

15-17. The allegations of paragraphs 15 through 17 are admitted.

18.   The allegations of paragraph 18 are denied.

19-20. The allegations of paragraph 19 through 20 are admitted.

21.   The allegations of paragraph 21 are denied.

22.   The allegation of paragraph 22 are admitted, except that the Defendants deny they they, individually, were a party to such Modification.

23.   The allegations of paragraph 23 are admitted.

24.   The Defendants assert that the Supplemental Agreement speaks for itself, but otherwise deny the allegations of paragraph 24.

25.   The allegations of paragraph 25 are denied.

26-27. The allegations of paragraph 26 and 27 are admitted, except that the financing was extended to, and vehicles were sold by Sandy Hollow and not by the Judds.

28.   The allegations of paragraph 28 are admitted, except that no Floor Plan Advance Note was signed or attached with respect to the 2001 Suburban and the 2002 Suzuki XL7 shown on Exhibit 5.

29.   The allegations of paragraph 29 are admitted, except that the funds were advanced only to Sandy Hollow, and not to the Judds.

30-31. The allegations of paragraphs 30 through 31 are admitted.

32-38 The allegations of paragraphs 32 through 28 are denied.

39.   The allegations of paragraph 39 are admitted, except that the Defendants deny that any vehicles were "out of trust" or that any vehicles were sold by the Judds.

40.   The allegations of paragraph 40 are admitted, except that the Defendants deny that any vehicles were "out of trust".

41.   The allegations of paragraph 41 are admitted, except that the Defendants deny that any vehicles were "out of trust".

42-50. The allegations of paragraphs 42 through 50 are denied.

**Affirmative Defense**

The Defendants assert the Plaintiff, throughout its course of dealing with Sandy Hollow, at all times allowed Sandy Hollow to deposit the proceeds of vehicle sales into its general operating account and to use the sale proceeds to pay normal business expenses, without segregation of funds in any way.

WHEREFORE, the Defendants pray that the court dismiss Count I of the Plaintiff's Complaint.

**COUNT II**
(Section 523(a)(6))

51. The Defendants hereby restate their above responses to the allegations contained in paragraphs 1 through 41 of the Complaint.

52-56. The allegations of paragraphs 52 through 56 are denied.

**Affirmative Defense**

The Defendants assert the Plaintiff, throughout its course of dealing with Sandy Hollow, at all times allowed Sandy Hollow to deposit the proceeds of vehicle sales into its general operating account and to use the sale proceeds to pay normal business expenses, without segregation of funds in any way.

WHEREFORE, the Defendants pray that the court dismiss Count II of the Plaintiff's Complaint.

**COUNT III**
(Section 523(a)(4))

57. The Defendants hereby restate their above responses to the allegations contained in paragraphs 1 through 15 of the Complaint.

58. The allegations of paragraph 58 are admitted, except that the Defendants deny that the financing was provided to the Judds.

59. The allegations of paragraph 59 are admitted.

60. The allegations of paragraph 60 are admitted.

61. The allegations of paragraph 61 are denied.

62-63. The allegations of paragraphs 62 through 63 are admitted.

64. The allegations of paragraph 64 are denied.

65.     The Defendants assert that the Supplemental Agreement speaks for itself, but otherwise deny the allegations of paragraph 65.

66.     The allegations of paragraph 66 are denied.

67.     The allegations of paragraph 67 are admitted, except that the Defendants deny that the financing was provided to the Judds.

68.     The allegations of paragraph 68 are admitted.

69.     The allegations of paragraph 69 are denied.

70.     The allegations of paragraph 70 are denied.

71.     The allegations of paragraph 71 are denied.

72.     The allegations of paragraph 72 are admitted, except that the Defendants deny that any vehicles were "out of trust".

73.     The allegations of paragraph 73 are admitted, except that the Defendants deny that any vehicles were sold by the Judds and deny that any vehicles were "out of trust".

74.     The Defendants admit that additional Floor Plan Advance Notes were executed by Sandy Hollow, but otherwise deny the allegations of paragraph 74.

75.     The allegations of paragraph 75 are admitted, except that the Defendants deny that any funds were advanced to the Judds.

76.     The allegations of paragraph 76 are admitted, except that the Defendants deny that the Judds sold any of the vehicles.

77-78.  The allegations of paragraphs 77 through 78 are denied.

79.     The allegations of paragraph 79 are admitted, except that the Defendants deny that any vehicles were "out of trust" or that any vehicles were sold by the Judds.

80.     The allegations of paragraph 80 are admitted, except that the Defendants deny that any vehicles were "out of trust".

81.     The allegations of paragraph 81 are admitted, except that the Defendants deny that any vehicles were "out of trust".

82-90.  The allegations of paragraph 82 through 90 are denied.

### Affirmative Defense

The Defendants assert the Plaintiff, throughout its course of dealing with Sandy Hollow, at all times allowed Sandy Hollow to deposit the proceeds of vehicle sales into its general operating account and to use the sale proceeds to pay normal business expenses, without segregation of funds in any way.

WHEREFORE, the Defendants pray that the court dismiss Count III of the Plaintiff's Complaint.

### Count IV
### (Section 523(a)(6))

91.   The Defendants hereby restate their above responses to the allegations contained in paragraphs 57 through 90 of the Complaint.

92-96. The allegations of paragraphs 92 through 96 are denied.

### Affirmative Defense

The Defendants assert the Plaintiff, throughout its course of dealing with Sandy Hollow, at all times allowed Sandy Hollow to deposit the proceeds of vehicle sales into its general operating account and to use the sale proceeds to pay normal business expenses, without segregation of funds in any way.

WHEREFORE, the Defendants pray that the court dismiss Count IV of the Plaintiff's Complaint.

Respectfully Submitted,

SCHLUETER ECKLUND

By: _____/s/_____
          David L. Davitt

David L. Davitt (#3436)
Schlueter Ecklund
4023 Charles Street
Rockford, IL 61108
815-229-5333

**PROOF OF SERVICE**

The undersigned certifies that, on January 8, 2007, all parties entitled to notice received such notice electronically, through the office of the Clerk of the Court.

/s/ David L. Davitt

# 3.

# Response to Answer

# and

# Affirmative Defenses

# (Docket Entry Number 8)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | IN BANKRUPTCY |
| | ) | CHAPTER 7 |
| Debtors, | ) | |
| _____ | ) | CASE NO. 06 B 71118 |
| | ) | |
| ROCKFORD CAPITAL LEASING, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ADVERSARY CASE NO. 06 A 96116 |
| vs. | ) | |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO AFFIRMATIVE DEFENSE

NOW COMES the Plaintiff, ROCKFORD CAPITAL LEASING, INC., an Illinois

corporation, hereinafter "RCL", by and through its attorneys, Barrick, Switzer, Long, Balsley &

Van Evera, and as its Response to the Affirmative Defense filed by the Defendants, GARY A.

JUDD and RHONDA J. JUDD, hereinafter "JUDDS", states as follows:

### AFFIRMATIVE DEFENSE
### (Counts I, II, III, IV)

The Defendants assert the Plaintiff, throughout its course of dealing with Sandy Hollow,
at all times allowed Sandy Hollow to deposit the proceeds of vehicle sales into its general
operating account and to use the sale proceeds to pay normal business expenses, without
segregation of funds in any way.

**RESPONSE:** RCL states that JUDDS were required under the floor plan financing

documents to tender the vehicle sale proceeds within three (3) to five (5) days of the sale. RCL

admits that the floor plan financing documents did not require segregation of sale proceeds, but

denies all other remaining allegations contained in the Affirmative Defense pled with respect to

Count I, Count II, Count III and Count IV to the Complaint to Determine Dischargeability.

Dated:  22nd day of February, 2007

ROCKFORD CAPITAL LEASING, INC.,
an Illinois corporation,
Plaintiff,

BY:  __/s/ Gregory A. Biegel_____
GREGORY A. BIEGEL
Attorney for Plaintiff

Gregory A. Biegel
BARRICK, SWITZER, LONG,
 BALSLEY & VAN EVERA
6833 Stalter Drive, First Floor
Rockford, IL  61108
Telephone:  (815) 962-6611

**PROOF OF SERVICE**

I **HEREBY CERTIFY** that on February 22, 2007, all parties entitled to notice received such notice electronically, through the office of the Clerk of the Court.

By: ___/s/ Gregory A. Biegel_____
        GREGORY A. BIEGEL