CASE NO. 08 C 50175

IN THE

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

WESTERN DIVISION

| | | |
|---|---|---|
| ROCKFORD CAPITAL LEASING, INC. | ) | Appeal from the United States |
| | ) | Bankruptcy Court Northern District |
| Plaintiff/Appellant, | ) | of Illinois – Western Division |
| | ) | Honorable Manuel Barbosa |
| | ) | Bankruptcy Case No. 06 A 96116 |
| | ) | |
| vs. | ) | CASE NO. 08 C 50175 |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | HONORABLE FREDERICK J. KAPALA |
| | ) | |
| Defendants/Appellees. | ) | |

**BRIEF AND ARGUMENT OF PLAINTIFF/APPELLANT**

GREGORY A. BIEGEL
**BARRICK, SWITZER, LONG,**
 **BALSLEY & VAN EVERA**
Attorneys at Law
6833 Stalter Drive
Rockford, Illinois  61108
(815) 962-6611

COUNSEL FOR PLAINTIFF/APPELLANT

# TABLE OF CONTENTS

TABLE OF CASES & AUTHORITIES ........................................................ Page 3

I.   STATEMENT OF THE BASIS OF APPELLATE JURISDICTION ..................... Page 4

II.  ISSUES PRESENTED & STANDARD OF REVIEW ......................................... Page 5

III. STATEMENT OF THE CASE ............................................................ Page 6

   A. NATURE OF THE CASE ............................................................ Page 6

   B. COURSE OF PROCEEDINGS ...................................................... Page 6

   C. DISPOSITION OF CASE............................................................ Page 6

   D. STATEMENT OF FACTS ........................................................... Page 7

IV.  ARGUMENT ............................................................................. Page 21

   A.  THE BANKRUPTCY COURT ERRED IN DETERMINING THAT
       THE FLOOR PLAN FINANCING DEBT OF APPELLEES (JUDDS)
       TO APPELLANT (RCL) WAS DISCHARGEABLE UNDER
       USC SECTION 523(a)(6) ......................................................... Page 21

   B.  THE BANKRUPTCY COURT ERRED IN DETERMINING THAT
       THE USE OF FLOOR PLAN ADVANCE FUNDS BY APPELLEES
       (JUDDS) DID NOT CONSTITUTE EMBEZZLEMENT OR LARCENY
       UNDER 11 USC SECTION 523(a)(4) ......................................... Page 34

V.   CONCLUSION............................................................................ Page 37

APPENDIX..................................................................................... Page A-1

## TABLE OF CASES & AUTHORITIES

In re Basel-Johnson, 366 B.R. 831, 850 (Bk. N.D. Ill.2007)....................................Pages 31, 32

In re Cox, 243 B.R. 713, 719 (Bk. N.D. Ill. 2000) ..............................................Page 25

In re Farbman, 244 B.R. 135, 142 (Bk. N.D. Ill. 2000) ..........................................Pages 30, 31

In re Fox, 370 B.R. 104 (6th Cir. BAP 2007).....................................................Page 28

In re Hermes, 340 B.R. 369 (Bk. C.D. Ill. 2006).................................................Pages 34, 35

In re Higginbotham, 117 B.R. 211 (Bk. E. D. Va 1990)..........................................Pages 29, 30

Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 90 (1998)...................Page 21

In re Monroe, 304 B.R. 349, 359 (Bk. N.D. Ill. 2004) ..........................................Pages 34, 35

In re Park, 314 B.R. 378 (Bk. N.D. Ill. 2004) ...................................................Page 30

In re Paul, 266 B.R. 686, 696 (Bk. N. D. Ill. 2001) ...........................................Pages 22, 23

In re Romano, 385 B.R. 12, 30 (Bk. Mass. 2008) ..............................................Page 22

In re Scarpello, 272 B.R. 691, 704 (Bk. N.D. Ill. 2002) ......................................Page 21

In re Shaffer, 305 B.R. 771 (Bk. D.S.C. 2004) ................................................Pages 29, 30

In re Smith, 143 B.R. 284 (Bk. M.D. Ga 1992)..................................................Page 29

In re Weber, 892 F2d. 534 (7th Cir. 1989) ...................................................Page 36

**I.**

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this matter as an appeal from a final Order of the United States Bankruptcy Court, Northern District of Illinois, Western Division entered July 16, 2008, pursuant to 28 USC Section 158(a)(1).

**II.**

**ISSUES PRESENTED AND STANDARD OF REVIEW**

**ISSUES PRESENTED:**

1.      Whether the Bankruptcy Court erred in determining that the floor plan financing debt of the Appellees (Judds) to Appellant (RCL) was dischargeable under 11 USC Section 523(a)(6).

2.      Whether the Bankruptcy Court erred in determining that the use of floor plan advance funds by Appellees (Judds) did not constitute embezzlement or larceny under 11 USC Section 523(a)(4).

**THE STANDARD OF REVIEW:**

1.      The Bankruptcy Court's factual determinations are reviewed for clear error.  The Bankruptcy Court's applications of the law are reviewed *de novo.*

III.

**STATEMENT OF THE CASE**

**A.    NATURE OF THE CASE**

This is an appeal from a Final Order of the United States Bankruptcy Court, Northern District of Illinois, Western Division, entered on July 16, 2008 finding the debt owed to Appellant, ROCKFORD CAPITAL LEASING, INC., by Appellees, GARY A. JUDD and RHONDA J. JUDD, to be dischargeable under 11 USC Section 523(a)(4) and (a)(6).

**B.    COURSE OF PROCEEDINGS**

On June 27, 2006, Gary A. Judd and Rhonda J. Judd, hereinafter collectively "Judds", and individually "G. Judd" and "R. Judd", filed a Voluntary Petition under Chapter 7, Title 11 of the United States Bankruptcy Code.   On October 30, 2006, Rockford Capital Leasing, Inc., hereinafter "RCL", filed a Complaint to Determine Dischargeability pursuant to 11 USC Section 523(a)(4) and (a)(6) claiming that the floor plan financing indebtedness of the Judds to RCL was non-dischargeable.   Judds answered the Complaint and denied the material allegations therein. The Bankruptcy Court tried the case on April 3, 2008 and April 8, 2008.   At the conclusion of testimony, RCL moved the Court to permit the amendment of the Complaint to conform to the testimony and evidence submitted.   After the trial, the parties submitted proposed Findings of Fact and Conclusions of Law.   On July 16, 2008, the Bankruptcy Court entered a written Order ruling in favor of Judds and against RCL holding that the Judds' indebtedness to RCL was dischargeable under 11 USC Section 523(a)(4) and (a)(6).   The Order also granted RLC's Motion to Amend the Complaint to conform to the trial testimony and evidence.

**C.    DISPOSITION OF CASE:**

A Judgment Order was entered by the Bankruptcy Court on July 16, 208 denying the relief sought by Appellant, RCL, in the Complaint and ruling in favor of the Appellees, Judds.

**D.  STATEMENT OF FACTS**

1.    **Floor Plan Financing Loan Documentation**

G. Judd and R. Judd operated a used car dealership at 3909 Sandy Hollow Road,

Rockford, Illinois, known as "Sandy Hollow Auto Center".  In order to obtain used vehicles for

their inventory, G. Judd and R. Judd had to obtain financing to floor the vehicles at their lot,

which is typically referred to as "floor plan financing".  (Trial Transcript April 3, 2008 (LaPasso),

Page 13, lines 9-21).  G. Judd and R. Judd obtained floor plan financing from RCL pursuant to a

Promissory Note dated July 1, 2002 in the original principal amount of $300,000.00 and the

Motor Vehicle Dealer Financing Agreement, Sandy Hollow Auto Center, Inc. No. CL004B

(Supplemental Agreement), hereinafter "Motor Vehicle Agreement" dated July 1, 2002.

(Exhibits 1 and 3).[1]  The Judds executed another Promissory Note dated January 1, 2004 in the

original principal amount of $300,000.00 and secured by the Motor Vehicle Agreement for the

use of floor plan financing at Sandy Hollow Auto Center.  (Exhibit 2).  The Judds executed the

Promissory Notes in their individual and corporate capacity.  (Exhibits 1 and 2; Trial Transcript

April 3, 2008 (LaPasso), Page 14, lines 11-15).

Under a floor plan financing arrangement, RCL would provide the funding used by G.

Judd and R. Judd to purchase their used vehicle inventory.  (Trial Transcript April 3, 2008,

(LaPasso), Page 13, lines 9-21).  The procedures dictating the floor plan financing relationship

were set forth in the Motor Vehicle Agreement.  (Trial Transcript April 3, 2008, (LaPasso), Page

15, lines 5-13).  The Motor Vehicle Agreement was specifically incorporated into the Promissory

Notes pursuant to the Multiple Advance paragraph contained on Page 1 of the Promissory Note

and the reference to the "Supplemental Agreement".  (Exhibits 1 and 2).  The Motor Vehicle

Agreement states in Paragraph 3(b):

---

[1] At trial, RCL utilized an Exhibit Book containing Exhibits 1-50.  The original Exhibit Book was tendered
to the Bankruptcy Court.  Upon appeal in this case, an Exhibit Book was tendered to the Clerk of the
Bankruptcy Court to be included in the record.  The Exhibit Book was designated as item #5 in the
Designation of Items to be Included in the Record on Appeal, but was not scanned due to its voluminous
nature.  All reference to "Exhibits" is to the Exhibit Book and the numbers as they appear in the book.

Upon the sale of an item of Inventory, we shall deliver to you all proceeds from said sale item, which proceeds shall not be less than the Advance Value or cost as shown on the actual Inventory List.  The proceeds shall be delivered to you within (5) days of the date of sale.  (Exhibit 3).

R. Judd and G. Judd each understood the requirement in the Motor Vehicle Agreement that sale proceeds had to be tendered within five (5) days of sale.  (Trial Transcript April 3, 2008 (G. Judd), Page 184, lines 7-21).  R. Judd specifically testified that "I knew that every Friday I had to go in and pay the vehicles."  (Trial Transcript April 8, 2008, Page 234, lines 1-2).  R. Judd and G. Judd were not told by anyone at RCL that the payment of sale proceeds was due at any time other than as stated in the Motor Vehicle Agreement.  (Trial Transcript April 3, 2008 (R. Judd), Page 194, lines 16-18; Trial Transcript April 8, 2008 (R. Judd), Page 247, line 24, Page 248, lines 1-14; Trial Transcript April 3, 2008 (G. Judd), Page 123, lines 1-4, Page 185, lines 13-24, Page 186, lines 1-8; Trial Transcript April 3, 2008 (LaPasso), Page 96, lines 21-24, Page 97, lines 1-10).  Pursuant to Paragraph 1 of the Motor Vehicle Agreement, Judds granted RCL a purchase money security in each motor vehicle financed and in all proceeds generated therefrom.  (Exhibit 3).

In April 2006, RCL, Sandy Hollow Auto Center and the Judds executed loan documentation with Riverside Bank to consolidate and obtain additional floor plan financing for Sandy Hollow Auto Center.  (Exhibits 6 and 7).  The Riverside Bank floor plan financing was to be $600,000.00.  (Exhibit 6).  With respect to the Riverside Bank financing, the Judds executed a Promissory Note and Business Loan Agreement with Riverside Bank.  (Exhibits 6 and 7).  (Trial Transcript April 3, 2008 (Belmont), Page 106, lines 9-22).  The Judds executed the Riverside Bank loan documents on behalf of Sandy Hollow Auto Center.  (Exhibits 6 and 7).  The Business Loan Agreement set forth specific terms and conditions regarding the loan relationship, including terms and conditions regarding what would happen in the event that a floored motor vehicle were sold.  (Exhibit 7; Trial Transcript April 3, 2008 (Belmont), Page 108, lines 7-22).  Specifically, the "Other Requirement" section of the Business Loan Agreement

contained on page 4 stated that: "The payoff of sold vehicles shall be no later than three (3) days after sale date." (Exhibit 7). Tom Belmont of Riverside Bank testified that the timeframe for payment of the vehicles was one of the items covered at the April 4, 2006 signing and no questions were raised. (Trial Transcript April 3, 2008 (Belmont), Page 109, lines 9-18). The Judds executed the Business Loan Agreement in their corporate capacity and specifically initialed changes on page 4 of the Business Loan Agreement. (Exhibit 7; Trial Transcript April 3, 2008 (G. Judd), Page 145, lines 22-24, Page 146, lines 1-9, Page 147, lines 19-24, Page 148, line 1). Len LaPasso executed the Riverside Bank loan documents on behalf of RCL. (Exhibits 6 and 7).

During the entire floor plan financing relationship between RCL and the Judds, RCL did not have readily available funds to lend Judds for the floor plan financing and had to borrow the funds from financial institutions. (Trial Transcript April 3, 2008 (LaPasso), Page 20, lines 16-24, Page 21, lines 1-16). RCL borrowed funds from Associated Bank, Riverside Bank and Stillman Valley Bank to fund the floor plan financing. (Trial Transcript April 3, 2008 (LaPasso), Page 20, lines 16-24, Page 21, lines 1-24, Page 22, lines 1-2). The Judds had knowledge that RCL borrowed the funds from various financial institutions in order to fund the floor plan financing. (Trial Transcript April 3, 2008 (R. Judd), Page 220, lines 9-24, Page 221, lines 1-8; Trial Transcript April 3, 2008 (G. Judd), Page 159, lines 1-12; Trial Transcript April 3, 2008 (LaPasso), Page 22, lines 19-24, Page 23, line 1).

**2.    Procedure Utilized by Judds to Floor Plan Vehicles**

As part of the floor plan financing, Judds would purchase vehicles from various auto auctions. (Trial Transcript April 3, 2008 (LaPasso), Page 13, lines 11-21; Exhibit 40). Following the procedure for obtaining floor plan funds, the Judds would advise RCL of the motor vehicles it intended to purchase and request that those motor vehicles be floor planned. (Trial Transcript April 3, 2008 (G. Judd), Page 127, lines 2-10; Trial Transcript April 3, 2008 (LaPasso), Page 13,

lines 9-21).  RCL required that Sandy Hollow Auto Center execute a Floor Plan Advance Note

for each motor vehicle it intended to floor plan.  (Trial Transcript April 3, 2008 (LaPasso), Page

13, lines 14-16, Page 18, lines 4-7; Exhibits 9-34, 36 and 37, first page of each exhibit).  The

Floor Plan Advance Note set forth the amount funded by RCL and the identity of the vehicle

being funded.  (Trial Transcript April 3, 2008 (LaPasso), Page 19, lines 12-19).  The Floor Plan

Advance Notes were executed by R. Judd.  (Exhibits 9-33, 36-37; Trial Transcript April 3, 2008

(R. Judd), Page 195, lines 7-9).  Pursuant to the floor plan procedure adopted by RCL and

Sandy Hollow Auto Center, RCL would advance funds for the purchase of the motor vehicle

after the Judds executed a Floor Plan Advance Note. The amount advanced was the purchase

price of the vehicle, plus $100.00 as provided for in the Motor Vehicle Agreement.  (Trial

Transcript April 3, 2008 (G. Judd), Page 134, lines 7-22).  Each Floor Plan Advance Note stated

that payment was due on the sale of the vehicle and that Sandy Hollow Auto Center granted

RCL a security interest in the vehicle pursuant to the Promissory Note between RCL and Sandy

Hollow Auto Center.  (Exhibits 3, 9-34, 36, 37; Trial Transcript April 3, 2008 (LaPasso), Page 13,

lines 11-21).  RCL would cut a single check for all vehicles floored and tender the check to R.

Judd in exchange for the Floor Plan Advance Notes.  (Trial Transcript April 8, 2008 (R. Judd),

Page 245, lines 16-21).

In addition, Sandy Hollow Auto Center also had the obligation of providing the Certificate

of Title for each vehicle to RCL.  (Trial Transcript April 3, 2008 (LaPasso), Page 13, lines 16-18,

Page 22, lines 7-10).  The Certificates of Title were held by either RCL or, in the event that

Riverside Bank was involved in the floor plan financing, at Riverside Bank.  (Trial Transcript

April 3, 2008 (LaPasso), Page 21, lines 23-24, Page 22, lines 3-6; Trial Transcript April 3, 2008

(R. Judd), Page 223, lines 11-15).  The Certificates of Title remained in the possession of RCL

or Riverside until payment for the vehicle was received.  (Trial Transcript April 3, 2008

(LaPasso), Page 21, lines 16-24, Page 22, lines 1-21).  Once the vehicle was floored, Sandy

Hollow Auto Center would attempt to sell the vehicle. (Trial Transcript April 3, 2008 (G. Judd), Page 127, lines 2-18).

**3.    Sale of Vehicles by Sandy Hollow Auto Center**

With respect to each vehicle, Sandy Hollow Auto Center would prepare a "sales jacket" or "deal jacket" which would include, among other things, a buyer's order and invoice. (Exhibits 9-36; Trial Transcript April 3, 2008 (G. Judd), Page 128, lines 2-12). G. Judd was responsible for preparing the Buyer's Invoice when a vehicle was sold. (Trial Transcript April 3, 2008 (G. Judd), Page 128, lines 13-19). G. Judd also was responsible for preparing a Recap Sheet with respect to each sale, which identified sales price, cost of vehicle, and net profit to Sandy Hollow Auto Center. (Trial Transcript April 3, 2008 (G. Judd), Page 128, lines 23-24, Page 129, lines 1-20). The Recap Sheet was also the way in which the sold vehicle was accounted for in the Sandy Hollow Auto Center system. (Exhibits 9-35, 36 and 37; Trial Transcript April 3, 2008 (G. Judd), Page 128, lines 23-24, Page 129, lines 1-5, lines 18-20). G. Judd arranged for customer financing as part of his job duties. (Trial Transcript April 3, 2008 (G. Judd), Page 129, lines 21-24, Page 130, lines 1-5). G. Judd testified that the deal jackets remained on G. Judd's desk until the vehicle was funded. G. Judd had knowledge of the receipt of vehicle funding. (Trial Transcript April 3, 2008 (G. Judd), Page 130, lines 22-24, Page 131, lines 1-4).

As part of the process of selling a vehicle, Sandy Hollow Auto Center maintained a Police Book that detailed the receipt of all vehicles for inventory and the sale of all vehicles. (Trial Transcript April 3, 2008 (G. Judd), Page 135, lines 19-24, Page 136, lines 1-14). The Police Book reflected the VIN number, date of acquisition, source of acquisition, price, date of sale, sale price and to whom vehicle was sold. (Exhibit 8.1; Trial Transcript April 3, 2008 (G. Judd), Page 135, lines 22-24, Page 136, lines 1-24). G. Judd testified that he maintained the Police Book. (Exhibit 8.1; Trial Transcript April 3, 2008 (G. Judd), Page 137, lines 16-20).[2]

_____

[2] In the Evidence Book used at trial, Exhibit 8 reflected the last six pages of the Sandy Hollow Auto

At the time of sale, Sandy Hollow Auto Center had to pay a commission to its employees and had to pay sales taxes. (Exhibit 46; Trial Transcript April 3, 2008 (G. Judd), Page 131, lines 1-11). Sales taxes were paid using the services of Action License. (Exhibit 40; Trial Transcript April 3, 2008 (G. Judd), Page 131, lines 1-11, 13-24). Sandy Hollow Auto Center also had the responsibility of getting the Certificate of Title transferred to the new owner. (Trial Transcript April 3, 2008 (G. Judd), Page 133, lines 12-16).

**4.      Floor Plan Checks**

During the floor plan financing process, RCL would perform floor plan checks to verify that all of the vehicles financed by RCL were present on the Sandy Hollow Auto Center lot. (Trial Transcript April 3, 2008 (LaPasso), Page 26, lines 14-24, Page 27, lines 1-14). In the case that Riverside Bank was also involved in the financing, Tom Belmont testified that Riverside Bank would conduct its own floor plan check. (Trial Transcript April 3, 2008 (Belmont), Page 110, lines 20-24, Page 111, lines 1-15). The floor plan checks by RCL were conducted by either Len LaPasso or Toni Masingill. (Trial Transcript April 3, 2008 (G. Judd), Page 144, lines 22-24, Page 145, lines 1-2). In the event of questions regarding the location of a vehicle not on the Sandy Hollow Auto Center lot, RCL would ask R. Judd or G. Judd. Mr. LaPasso testified that R. Judd was the one that usually advised RCL of the location of a missing vehicle. (Trial Transcript April 3, 2008 (LaPasso), Page 28, lines 23-24, Page 29, lines 1-5). RCL maintained checklists for the results of its floor plan checks. (Exhibits 38, 39).

**5.      Failure of R. Judd and G. Judd to Tender Sale Proceeds for Vehicles Sold Prior to March 30, 2006**

From October 1, 2005 through March 30, 2006, Sandy Hollow Auto Center and Judds sold eighteen (18) vehicles floored by RCL for which they failed to turn over the sale proceeds to RCL. (Exhibits 9, 11-16, 18-27, 36, 38). On March 30, 2006, LaPasso visited Sandy Hollow

Center Police Book. The Judds brought the original Police Book to trial and it was marked as Exhibit 8.1.

Auto Center with the intention of performing a floor plan check. (Trial Transcript April 3, 2008 (LaPasso), Page 30, lines 11-13). G. Judd met LaPasso and advised him that vehicles floor planned by RCL had been sold and that Sandy Hollow Auto Center and the Judds had failed to tender the sale proceeds to RCL. (Trial Transcript April 3, 2008 (LaPasso), Page 30, lines 13-14; Trial Transcript April 3, 2008 (G. Judd), Page 153, lines 1-19). LaPasso deemed the situation to be "out of trust" because Sandy Hollow Auto Center and the Judds had failed to tender the sale proceeds upon sale of the vehicles. (Trial Transcript April 3, 2008 (LaPasso), Page 30, lines 11-20, Page 31, lines 1-6; Page 153, lines 1-19). The term "out of trust" is the term used in the industry to describe the failure to turn over funds from the sale of floored vehicles. (Trial Transcript April 3, 2008 (LaPasso) Page 30, lines 1-6). On March 31, 2006, RCL conducted a floor plan check at Sandy Hollow Auto Center and identified eighteen (18) vehicles that were missing. (Exhibit 38; Trial Transcript April 3, 2008 (LaPasso), Page 31, lines 7-24, Page 32, lines 1-24). The missing vehicles were identified as follows:

| Car Name | VIN ID | Amount Floored | Date Sold |
|---|---|---|---|
| 2000 Grand Caravan | 867918 | $5,825 | 03/18/06 |
| 2002 Suburban | 263039 | $17,810 | 01/20/06 |
| 1997 Ram | 170230 | $5,000 | 01/31/06 |
| 2002 Astro | 124316 | $6,725 | 02/03/06 |
| 1997 Ford F-150 | B32392 | $5,860 | 03/17/06 |
| 2002 Mazda | M04190 | $8,375 | 02/03/06 |
| 2001 Dakota | 310644 | $10,870 | 02/13/06 |
| 2002 Suburban | 166835 | $16,775 | 02/14/06 |
| 1999 Windstar | A49487 | $5,600 | 02/21/06 |
| 2000 Impala | 137184 | $6,100 | 02/27/06 |
| 1998 Explorer | B79569 | $5,025 | 03/04/06 |
| 2003 Ram | 153073 | $13,100 | 12/17/05 |
| 2001 Rodeo | 348928 | $7,765 | 11/29/05 |
| 1999 Tahoe | 223170 | $7,765 | 03/14/06 |
| 2002 Buick Rendezvous | 505261 | $11,375 | 10/01/05 |
| 1999 Ford F-150 | B56068 | $9,600 | 10/17/05 |
| 2001 Suburban | 237695 | $14,235 | 03/30/06 |
| 2003 Jeep Liberty | 567043 | $15,000 | 03/06/06 |

Exhibit 39; Trial Transcript April 3, 2008 (LaPasso), Page 32, lines 12-24. Prior to March 30,

---

The parties believe the Bankruptcy Court is still in possession of the original Police Book, Exhibit 8.1.

2006, RCL had not experienced problems with the floor plan financing at Sandy Hollow Auto Center.  (Trial Transcript April 3, 2008 (LaPasso), Page 30, lines 5-14, Page 67, lines 8-14).

Mr. LaPasso requested that Judds verify the results of his floor plan check and the identity of the missing vehicles.  (Exhibit 38).  R. Judd verified the floor plan check worksheet on April 3, 2006 and confirmed the missing vehicles by placing her initials on the floor plan check sheet.  (Exhibit 38; Trial Transcript April 3, 2008 (LaPasso), Page 34, lines 5-13; (G. Judd) Page 154, lines 19-24, Page 155, liens 1-3).  Judds admitted the vehicles had been sold and that the proceeds had not been tendered to RCL.  (Exhibit 38; Trial Transcript April 3, 2008 (G. Judd), Page 153, lines 15-19, Page 155, lines 15-24; Trial Transcript April 3, 2008 (R. Judd), Page 206, lines 19-24).

All of the vehicles that had been sold by Sandy Hollow Auto Center and Judds prior to March 30, 2006 had been pursuant to floor plan financing dollars that RCL had borrowed from Associated Bank and subject to only the floor plan check of RCL. (Trial Transcript April 3, 2008 (LaPasso), Page 32, lines 23-24, Page 33, lines 1-5).  The Judds had not requested the Certificates of Title for the vehicles that had been sold prior to March 30, 2006 and which were out of trust.  (Trial Transcript April 3, 2008 (LaPasso), Page 32, lines 23-24, Page 33, lines 1-5; and the Vehicle Title Agreements in Exhibits 9, 11-16, 18-27, and 36).  G. Judd was aware of the financial problems of Sandy Hollow Auto Center in early 2006, but did not bring the out of trust situation to the attention of RCL until the end of March 2006.  (Trial Transcript April 3, 2008 (G. Judd), Page 174, lines 22-24, Page 175, lines 1-6).  R. Judd testified that she did not start keeping the sale proceeds from said vehicles until late 2005 and early 2006.  (Trial Transcript April 8, 2008 (R. Judd), Page 249, lines 11-16).

**6.    Failure of R. Judd and G. Judd to Tender Sale Proceeds for Vehicles Sold After March 31, 2006**

After March 30, 2006, Sandy Hollow Auto Center and the Judds continued to sell vehicles that had been floor planned with RCL and/or Riverside Bank and failed to turn over the

sale proceeds.  (Trial Transcript April 3, 2008 (LaPasso), Page 54, lines 11-16; Page 113, lines

11-21; Page 184, line 24, Page 185, lines 1-12).  On March 30, 2006, Sandy Hollow Auto

Center and Judds sold a 2001 Chevy Suburban, VIN ID 237695, but failed to tender the sale

proceeds to RCL, which proceeds were received on April 5, 2006.  (Exhibits 27, 40; Trial

Transcript April 3, 2008 (R. Judd), Page 218, lines 15-24, Page 219, lines 1-15).  After March

30, 2006, Sandy Hollow Auto Center and the Judds sold the following vehicles floor planned by

RCL and/or Riverside Bank and failed to tender the sale proceeds to RCL:

| CAR NAME | VIN ID | Amount Floored | DATE SOLD |
|---|---|---|---|
| 1998 Caravan | 787667 | $4,755 | 04/01/06 |
| 2001 Bravada | 163077 | $10,600 | 04/19/06 |
| 2002 Suzuki XL7 | 129848 | $10,575 | 04/19/06 |
| 2000 Chevy Monte Carlo | 198801 | $7,600 | 04/24/06 |
| 1999 Dodge Ram | 183090 | $8,365 | 04/18/06 |
| 2001 Honda Civic | 044947 | $8,100 | 04/21/06 |
| 2000 Mitsubishi Eclipse | 140024 | $8,115 | 04/15/06 |
| 2000 Kia Sportage | 642762 | $4,740 | 04/29/06 |
| 2001 Chevy Monte Carlo | 255502 | $8,765 | 04/18/06 |
| 2000 Jeep Grand Cherokee | 253204 | $8,475 | 04/13/06 |

(Exhibits 10, 17, 28-35, 37).  At trial, Mr. LaPasso testified he increased the frequency of the

floor plan checks after March 30, 2006 and was doing them weekly.  (Trial Transcript April 3,

2008 (LaPasso), Page 35, lines 9-18).  He also indicated that he was talking with the Judds

regarding the vehicle payments.  Id.

        The Judds continued to sell cars after March 30, 2006 and continued to request floor

plan advance funds.  (Exhibits 10, 17, 28-34, 35-37).  Problems continued to occur with the

turnover of the sold vehicle proceeds.  (Exhibit 39). In addition, other irregularities were

revealed.

        RCL floor planned a 2002 VW Beetle with VIN ID 401685 in the amount of $9,925.00 on

or about January 13, 2006.  The Police Book indicates that the VW Beetle was returned to

Greater Rockford Auto Auction ("GRAA") for no title.  (Exhibit 8.1, four pages from the back of

the book, line 15; Trial Transcript April 3, 2008 (G. Judd), Page 138, lines 9-24).  Sandy Hollow

Auto Center and the Judds failed to pay RCL back for the $9,925.00 when the VW Beetle was

returned to GRAA.  (Trial Transcript April 3, 2008 (G. Judd), Page 140, lines 19-21).  Some time

after the VW Beetle had been returned to the auction, R. Judd tendered a check dated April 28,

2006 (Check No. 14858) to RCL, but requested RCL hold the check.  (Exhibit 50; Trial

Transcript April 3, 2008 (LaPasso), Page 43, lines 5-14; Trial Transcript April 3, 2008 (R. Judd),

Page 204, lines 8-16).  In its Inventory Sheet of 5/3/06, RCL listed the VW Beetle as sold

because it had received Check No. 14858.  (Exhibit 39).  No funds were available for Check No.

14858 and it bounced.  (Trial Transcript April 3, 2008 (LaPasso), Page 43, lines 5-11).  No one

told RCL that the VW Beetle was never sold and had previously been returned to the GRAA.

(Trial Transcript April 3, 2008 (LaPasso), Page 44, lines 11-14; Page 140, lines 7-21).

**7.     Judds Requested a Floor Plan Advance on April 24, 2006 and Failed to Purchase Vehicles**

On or about April 24, 2006, R. Judd requested that RCL advance $32,800.00 for the

purchase of four (4) vehicles:  2001 Jeep Grand Cherokee, 1998 Cadillac Catera, 2004 Pontiac

Grand Am and 1999 Chevy Tahoe from the GRAA.  (Trial Transcript April 3, 2008 (LaPasso),

Page 46, lines 3-24, Page 47, lines 1-19; Trial Transcript April 3, 2008 (R. Judd), Page 201,

lines 18-24, Page 202, lines 1-18).  RCL obtained the $32,800.00 from Riverside Bank and

provided the funds to Sandy Hollow Auto Center to floor the four (4) vehicles.  (Trial Transcript

April 3, 2008 (LaPasso), Page 47, lines 1-4; Page 201, lines 18-24).  Even though R. Judd

received $32,800.00 from RCL to pay the auto auction for the four vehicles, R. Judd tendered a

NSF check to GRAA for the four (4) vehicles.  (Trial Transcript April 3, 2008 (LaPasso), Page

47, lines 7-13; Trial Transcript April 8, 2008 (R. Judd), Page 255, lines 10-12).  R. Judd knew

that she was required to use the floor plan advance funds from RCL to purchase the four (4)

vehicles.  (Trial Transcript April 8, 2008 (R. Judd), Page 245, lines 22-24, Page 246, lines 1-23).

 R. Judd utilized the floor plan advance funds to pay:  MBNA and Advanta credit cards; $300.00

to Jason Judd and $1,000.00 to G. Judd; taxes to Illinois Department of Revenue $1,004.85 and

Department of Security $1,023.09.  (Exhibit 40, page 20).  RCL was required to pay Riverside

Bank $32,800.00 for the floor plan advance for which no vehicles existed as collateral.  (Trial

Transcript April 3, 2008 (LaPasso), Page 50, lines 19-24, Page 51, line 1; Trial Transcript April

3, 2008 (Belmont), Page 111, lines 22-24, Page 112, lines 1-2).

**8.     Judds Provided False Information Regarding Sale of Various Vehicles After March
        30, 2006**

From March 30, 2006 to May 3, 2006, RCL performed weekly floor plan financing checks

at Sandy Hollow Auto Center.  (Trial Transcript April 3, 2008 (LaPasso), Page 35, lines 9-18).

RCL performed a floor plan check on May 3, 2006 and identified five (5) vehicles that were

alleged to be either at auction, on demo or at a detail shop.  These vehicles included:  2000

Chevy Monte Carlo (198801); 1999 Dodge Ram (183090); 2001 Honda Civic (044947); 2000

Mitsubishi Eclipse (140024); and 2001 Chevy Monte Carlo (255502).  (Exhibit 39; Trial

Transcript April 3, 2008 (LaPasso), Page 47, lines 20-24, Page 48, lines 1-24).  RCL was told

the alleged location of the vehicles by R. Judd.  (Trial Transcript April 3, 2008 (LaPasso), Page

48, lines 2-10, Page 49, line 24, Page 50, lines 1-8).  The information was false in that all five

(5) vehicles had already been sold and Sandy Hollow Auto Center had received settlement

proceeds.  (Exhibits 29-32, 34, 40). The sale proceeds for the 2000 Monte Carlo were received

on April 25, 2006. (Exhibits 29, 40). The 1999 Dodge Ram proceeds were received on April 19,

2006. (Exhibits 30,40). The 2001 Honda Civic proceeds were received on April 25, 2006.

(Exhibits 31, 40). The 2000 Mitsubishi Eclipse proceeds were also received on April 25, 2006.

(Exhibits 32, 40).  With respect to the sale of the 2001 Chevy Monte Carlo (255502), Sandy

Hollow Auto Center received no value, but rather an even up trade of a Chevy Blazer.  (Exhibit

34).

On April 17, 2006, Sandy Hollow sold a 2000 Jeep Grand Cherokee (253204) for an

even up trade of a 2002 Buick LeSabre.  No funds were generated from the sale.  (Exhibit 37;

Trial Transcript April 3, 2008 (G. Judd), Page 141, lines 8-21).  Sandy Hollow Auto Center turned around and floored the 2002 Buick LeSabre with RCL on April 14, 2006.  (Exhibit 39; Trial Transcript April 3, 2008 (G. Judd), Page 141, lines 19-24).  The Judds received an additional $10,600.00 from RCL for flooring the Buick LeSabre.  (Exhibit 39).  Sandy Hollow Auto Center did not advise RCL that the 2000 Jeep Grand Cherokee had been sold in exchange for the 2002 Buick LeSabre and that no funds were available to pay off the 2000 Jeep Grand Cherokee.  (Trial Transcript April 3, 2008 (G. Judd), Page 141, lines 19-24).

On or about April 19, 2006, Sandy Hollow Auto Center sold a 2002 Suzuki XL7 that RCL had floored.  (Exhibit 28).  As part of the sale, Sandy Hollow Auto Center took a trade-in for a 1996 Ford Windstar, which was alleged to have a value of $2,850.00 pursuant to the Buyer's Order and Invoice.  (Exhibit 28).  Pursuant to the Police Book, the Ford Windstar was sold to R. Judd for $500.00 on April 27, 2006. (Exhibit 8.1, last page line 4).  In their bankruptcy petition, Judds listed the Ford Windstar as an asset with a value of $1500.00. (Judd Bankruptcy Petition in Case # 06-71118, hereinafter "Judd Petition", Appendix 1, Page A-9).

**9.      Judd Used the Sale Proceeds of the Vehicles for Their Personal Benefit**

R. Judd testified that as part of her job duties she handled the books and records for Sandy Hollow Auto Center, which included the checkbook.  (Trial Transcript April 3, 2008 (R. Judd), Page 190, lines 13-20).  R. Judd input all of the entries in the computer generated check register and made the decision as to what designation would be placed in the memo line. (Exhibit 40; Trial Transcript April 3, 2008 (R. Judd), Page 198, lines 7-16).

The Judd Petition lists Irwin Home Equity as a secured creditor with a lien on the Judd residence. (Appendix 1, Judd Petition Schedule D, Page A-11).  The Judd Petition lists credit card debt to:  Advanta; American Express; Bank of America; Capital One; Chase; MBNA; and Wells Fargo. (Appendix 1, Judd Petition Schedule E, Page A-12 to A-19).  The Judd Petition Schedule H lists no codebtors and Schedule B shows no funds due and owing from any other

entity. (Appendix 1, Judd Petition Schedules B, Page A-8 and H, Page A-22).

From November 2005 through May 1, 2006, R. Judd utilized the Sandy Hollow Auto Center checking account on thirty-seven (37) different occasions to make payments totaling $15,190.82 for credit cards listed on their personal bankruptcy petition.  (Exhibit 40, Page 1, 3, 4, 8, 9, 11, 12, 14-20).  Judds made payments to Irwin Home Equity four (4) times for a total of $5,012.54.  (Exhibit 40, Pages 1, 10, 14; Exhibit 41).

Judds operated an auto rental business known as Sandy Hollow Auto Rentals and/or Sensible Auto Rentals.  (Trial Transcript April 3, 2008 (R. Judd), Page 200, lines 1-3, 23-24, Page 201, lines 1-6).  From January 28, 2006 to March 6, 2006, R. Judd paid her own company four (4) payments totaling $16,235.00.  (Exhibit 40, Check Nos. 14568, 14625, 14668 and 14716).

R. Judd did not deposit vehicle sale proceeds into the Sandy Hollow Auto Center Operating account after April 25, 2006, even though vehicles continued to be sold through April 29, 2006.  (Exhibits 33, 40).  R. Judd deposited $32,100.00 into the Sandy Hollow Auto Rentals account at AMCORE on May 1, 2006 and transferred it to the payroll account on May 3, 2006. Neither the Sandy Hollow Auto Rentals account nor the payroll account normally handled deposits in this large amount.  (Trial Transcript April 3, 2008 (R. Judd), Page 209, lines 16-24; Page 210, lines 1-16; Exhibit 43).

10.    **Certificate of Title Problems**

Under the normal operation of the floor plan financing arrangement, RCL would provide the titles to the vehicles sold upon payment of the Floor Plan Advance Note.  (Trial Transcript April 3, 2008 (LaPasso), Page 21, lines 22-24, Page 22, lines 1-17). When the Judds sold the vehicles and did not tender the sales proceeds to RCL, the Judds did not receive the titles. (Trial Transcript April 3, 2008, Page 56, Lines 18-24, Page 57, Lines 1-16; Exhibits 9-34, 36-37).  The Judds failed to transfer the Certificates of Title to the 27 vehicles sold for which they

had not tendered sales proceeds to RCL until G. Judd requested that the titles be turned over sometime after the May 9, 2006 meetings.  (Trial Transcript April 3, 2008 (G. Judd), Page 166, Lines 16-24, Page 167, Lines 1-7).  A Vehicle Title Agreement was prepared by counsel for RCL to facilitate the transfers of title to G. Judd.  (Trial Transcript April 3, 2008 (LaPasso), Page 56, Lines 18-24, Page 57, Lines 1-16).  Riverside Bank authorized the execution of the Vehicle Title Agreement for the titles that it was holding.  (Trial Transcript April 3, 2008 (Belmont), Page 114, Lines 7-24).  The Vehicle Title Agreement identified the sale of the vehicle and the fact that RCL had not been paid at the time of sale.  (Exhibits 9-34, 36-37).

**11.     RCL Injured by the Actions of Rhonda Judd and Gary Judd**

Judds participated in the sale of twenty-eight (28) vehicles for which they retained the full amount of the sale proceeds and did not pay RCL for the amounts due under the Floor Plan Advance Notes.  (Trial Transcript April 3, 2008 (LaPasso), Page 63, lines 8-24, Page 64, lines 1-18).  RCL was required to pay either Associated Bank, Riverside Bank or Stillman Valley Bank for the funds advanced for the twenty-eight (28) vehicles sold by Sandy Hollow Auto Center and which proceeds were not tendered by Judds to RCL.  (Trial Transcript April 3, 2008 (LaPasso), Page 54, lines 11-24, Page 55, lines 1-6, Page 64, line 24, Page 65, lines 1-12; Page 115, lines 1-23).  RCL was required to pay Riverside Bank for the VW Beetle floored by Sandy Hollow Auto Center and returned to the Greater Rockford Auto Auction when Sandy Hollow Auto Center and the Judds failed to return the Floor Plan Advance Note funds to RCL.  (Trial Transcript April 3, 2008 (LaPasso), Page 65, Trial Transcript April 3, 2008 (Belmont), lines 1-12; Page 115, lines 1-23).  Mr. LaPasso testified that the Judd's actions in retaining the sale proceeds from the twenty-eight (28) vehicles and the floor plan advance proceeds for the VW Beetle resulted in a loss to RCL in the amount of $262,820.00.  (Trial Transcript April 3, 2008 (LaPasso), Page 63, lines 8-24, Page 64, lines 1-18).  Mr. LaPasso also testified that the Judd's actions in retaining the floor plan advance proceeds of $32,800.00 for four (4) vehicles on April

24, 2006 and failing to return said advance proceeds to RCL resulted in a loss of an additional $32,800.00. (Trial Transcript April 3, 2008 (LaPasso), Page 50, lines 18-24, Page 51, lines 1-11). The total loss which RCL incurred as a result of the actions of R. Judd and G. Judd was $295,620.00. (Trial Transcript April 3, 2008 (LaPasso), Page 43, lines 17-19, Page 54, lines 21-24, Page 55, lines 1-4).

**IV.**

**ARGUMENT**

**A.** **The Bankruptcy Court Erred in Determining that the Floor Plan Financing Debt of Appellees (Judds) to Appellant (RCL) was Dischargeable Under 11 USC Section 523(a)(6)**

Section 523(a)(6) of the United States Bankruptcy Code permits the bankruptcy court to deny discharge to a debtor for a debt that is a willful and malicious injury to another entity or the property of another entity. 11 USC Section 523(a)(6). In order for RCL to prevail on its non-dischargeability claim against the Judds, RCL had to demonstrate that:

- G. Judd and R. Judd intended to and caused an injury to RCL;

- the actions of G. Judd and R. Judd were willful; and

- the actions of G. Judd and R. Judd were malicious.

In re Scarpello, 272 B.R. 691, 704 (Bk. N.D. Ill. 2002).

**1.** **Willfulness Requirement of Section 523(a)(6)**

The analysis of Section 523(a)(6) was clarified by the United States Supreme Court in Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974, 140 L. Ed. 90 (1998) with its determination that the word "willful" modified the word "injury". Hence, this Court must determine whether injury to RCL was a willful injury. A negligent or reckless action by the Judds will not be sufficient. Scarpello @ 704. RCL is required to establish that Judds subjectively intended to harm it or that the Judds knew that the specific harm to RCL was substantially certain to take place. In re Paul, 266 B.R. 686, 696 (Bk. N.D. Ill. 2001). The Paul case involved a debtor that

had numerous overdrafts covered by the creditor.  Id. @ 695.  In analyzing the willfulness issue, the Paul Court determined that:

> Willful injury may also be established indirectly by evidence of both the debtor's knowledge of the creditor's… rights and the debtor's knowledge that the conduct will cause a particularized harm.  (citations omitted)  Id. at 696.

Although the Paul case was presented to the court as a motion to dismiss, the court did conclude if the creditor can identify that the debtor participated in a scheme to induce creditor to honor overdrafts, it could meet the willfulness prong of Section 523(a)(6).  Other courts have weighed in on the analysis of the willful requirement.  In In re Romano, the Massachusetts Bankruptcy Court relied upon the following:

> When determining whether debtor's conduct was willful, "[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that debtor must have actually known when taking the injury – producing action.  (citations omitted)  In re Romano, 385 B.R. 12, 30 (Bk. Mass. 2008).

In applying the willful analysis to this case, there is little doubt that R. Judd and G. Judd converted the sale proceeds of twenty-eight (28) vehicles in an intentional act and converted the floor advance proceeds of five (5) vehicles in an intentional act.    The Judds admit the vehicles were sold and admit they received the proceeds and floor plan advance funds.  (Trial Transcript April 3, 2008 (G. Judd), Page 153, lines 15-19 Page 155, lines 15-24, Page 157, lines 9-12; Trial Transcript April 8, 2008 (R. Judd), Page 254, lines 13-20).  During her testimony R. Judd admitted she received the proceeds from the vehicles sold and could have turned those proceeds over to RCL.  However, she stated that she chose not to.  (Trial Transcript April 8, 2008 (R. Judd), Page 219, lines 9-11, Page 254, lines 13-20).  To establish the element of willfulness, one only has to look at the methods utilized by the Judds for conversion of the proceeds and the deception which they employed. There is a considerable amount of circumstantial evidence that substantiates the fact that the Judds' actions constituted a willful injury to RCL.

**a.    Sale of Vehicles Prior to March 30, 2006**

For the period from October 1, 2005 to March 30, 2006, Judds converted sale proceeds for only those cars that RCL had financed via Associated Bank.  This was because RCL was the only party conducting floor plan checks on those vehicles.   As Mr. LaPasso and Mr. Belmont testified at trial, Riverside Bank, one of the other providers of funds to RCL, conducted a separate floor plan check.  R. Judd and G. Judd exploited the single floor plan check to convert the sale proceeds of eighteen (18) vehicles between October 1, 2005 and March 30, 2006.  Such exploitation should establish the willfulness of the Judd's action using the analysis of the Paul case.  Paul @ 697.

R. Judd and G. Judd both testified they knew that RCL had borrowed dollars from financial institutions in order to provide the floor plan financing.  By selling the vehicles in which RCL possessed a purchase money security interest and then keeping the proceeds generated from the sale, R. Judd and G. Judd knew that RCL would have no source to repay the borrowed dollars.  Both  the Judds and RCL shared the "source of repayment".  If R. Judd and G. Judd kept the sale proceeds, RCL had no source of repayment.    There was no doubt R. Judd and G. Judd knew the harm that RCL would suffer if the sale proceeds were not available. It is this subjective knowledge of RCL'S certain injury that establishes the willful element with respect to the first eighteen (18) vehicles sold out of trust.

**b.      Sale of Vehicles After March 30, 2006**

The willfulness argument also exists for the vehicles sold after April 1, 2006, floored solely through the use of funds from Riverside Bank and sold by Sandy Hollow Auto Center. The intent to harm RCL in this time period is even clearer.  RCL is a co-borrower with Sandy Hollow Auto Center and had the same repayment requirements when the vehicle was sold. That is, RCL was required to tender payment to Riverside within three (3) days of the sale of a vehicle.  (Trial Transcript April 3, 2008 (LaPasso), Page 25, line 24, Page 26, lines 1-8).  R. Judd and G. Judd both testified they knew and understood this fact, as well.  During her direct

examination at trial, R. Judd provided the following testimony:

> Q.  Now, with respect to the Riverside documents from April of 2006.  You understood that Rockford Capital Leasing was also a borrower on those documents, right?
>
> A.  Yes, I did.
>
> Q.  And in the event that those funds that were lent by Riverside Community Bank were not made back, Rockford Capital Leasing would be obligated?
>
> A.  Correct.
>
> Q.  There was no document [doubt] in your mind about that?
>
> A.  No.  They made it very clear that if either one of us backed out of our loan the other one would be responsible.
>
> Q.  And you understood when the payments from the floored vehicles were not tendered back that they would be responsible for paying for them?
>
> A.  I did.

(Trial Transcript April 3, 2008 (R. Judd), Page 221, lines 3-20).  Hence, when the floored vehicles were sold and the sale proceeds not tendered, RCL felt the immediate injury and loss for being in default on the loan documentation.  A default caused solely by the actions of R. Judd and G. Judd.

Further evidence of this is provided by the four (4) vehicles that R. Judd requested to floor on April 24, 2006.  RCL obtained the funds from Riverside Bank and tendered the funds to R. Judd, G. Judd and Sandy Hollow Auto Center for the purchase of the vehicles.  R. Judd and G. Judd accepted those funds and they were deposited in the Sandy Hollow Auto Center bank account (Exhibit 40, Page 20).  R. Judd tendered an NSF check to the GRAA and was unable to secure the vehicles or the purchase money security interest in the vehicles.  Upon finding out there was no collateral to secure the $32,800.00, Riverside Bank made immediate demand upon RCL for payment.  (Trial Transcript April 3, 2008 (LaPasso), Page 50, line 19-24, Page 51, line 1).  RCL paid.  Again, R. Judd and G. Judd knew and understood that RCL was a co-borrower and would be responsible for their retention and spending of the floor plan advance on

items other than the four (4) vehicles.

When reviewing the actions of the Judds, especially with respect to the vehicles floored which were never received or available for sale, the actions taken by Judds destroyed any potential security interest that RCL should have had in those vehicles.  A similar situation was confronted by the Cox court in In re Cox, 243 B.R. 713, 719 (Bk. N.D. Ill. 2000).  The Cox court concluded that a debtor who intentionally destroyed a security interest in a car constituted a willful act under 523(a)(6).  This is exactly what R. Judd and G. Judd have done with respect to the twenty-eight (28) vehicles sold and the five (5) vehicles floored, but never available for sale. Both R. Judd and G. Judd knew that RCL had a security interest in the vehicles. Each of them knew when the vehicles were sold. Each of them failed to turn over the sale proceeds or return the floor plan advance proceeds, even though they knew the collateral was no longer available to RCL to pay the balances due to Associated Bank or Riverside Bank. The security interest of RCL had been destroyed and this Court, like the Court in Cox, should deem this to be a willful and malicious injury.

**c.    Analysis of Bankruptcy Court Failed to Address the Changing Schemes of the Judds**

The Bankruptcy Court states "the Defendants had pursued this way of operating their business for, perhaps as much as 10 years."  (Judgment Order, Page 3, Docket Entry 30). Nowhere in its Order does the Bankruptcy Court set forth the facts to define the "way of operating".

Further, there is the testimony of Mr. LaPasso which directly contradicts the same "way of operating" conclusion that allegedly permitted the Judds not to pay for the vehicles.  At trial, Mr. LaPasso provided the following testimony:

Q.    And there is no restrictions in the agreement, is there?

A.    No.

Q.    Now, with respect to the sale proceeds, what was your expectation would be

done once the vehicle was sold?

A.    Once the vehicle was sold, our expectations were that within three days or five days, depending on which floor plan it was, the proceeds would be paid according to the amount that was on the specific car, the advanced note.

Q.    The floor plan advance note?

A.    That's correct.

Q.    That note would be paid off?

A.    That's correct.

Q.    But that – let me strike that.  That was your expectation as to what would be done with the proceeds?

A.    Yes, based on the documents require a certain amount of integrity.

Q.    Did you ever indicate to the Judds that they could use the sale proceeds for something other than paying off the floor plan advance notes?

A.    Absolutely not.

Q.    Did you indicate to the Judds that they could pay business expenses from the sale proceeds?

A.    Absolutely not.

Q.    Did you ever indicate to them whether those sale proceeds could be used for the payment of personal expenses?

A.    Absolutely not.

Q.    Did they ever ask you if they could make any of those payments?

A.    No.

(Trial Transcript April 3, 2008 (LaPasso), Page 96, lines 1-24, Page 97, lines 1-10).

The problem with the Bankruptcy Court's analysis is that it fails to recognize and address the changes that occurred in the relationship between RCL and the Judds in late 2005 and early 2006.  The actions of the Judds were not the same as they had been in the first part of the floor plan financing relationship.  As R. Judd testified, she began retaining sale proceeds to pay her bills.  (Trial Transcript April 8, 2008 (R. Judd), Page 249, lines 11-16).  There was no testimony

presented or written evidence submitted that during the floor plan financing relationship prior to

October 2005 Judds had sold vehicles and never paid for them.

The Court determined with respect to Count IV the Judds did not personally benefit from

their actions of retaining the sale proceeds and floor plan advance proceeds.  This conclusion is

not reconcilable with the Judds use of the funds to pay for debts for which they were personally

liable, including: their second mortgage; payment of credit cards listed as personal obligations

on their Bankruptcy Petition; and payments to a sister corporation.  The evidence set forth in the

bank statements (Exhibit 41), the check register (Exhibit 40) and the Judd Petition (Appendix 1)

show a real personal benefit being derived by the Judds from the use of the proceeds.  Further,

the Judds made sure the taxes were paid with respect to the operation of the dealership and the

sale of the vehicles to avoid additional personal liability.  No where in the evidence or the

testimony is there any proof the Judds were looking out for anyone but themselves.

At the end of its analysis on Count II, the Court states "the fact that Gary Judd himself

took the initiative to inform the Plaintiff that matters had reached the point where harm may have

become inevitable".  (Judgment Order, Page 3, Docket Entry 30).  The Bankruptcy Court does

not set forth the timeframe for that comment.  If the Bankruptcy Court is referring to March 30,

2006, the "confession" is self-serving at best.  Mr. LaPasso testifies he went to Sandy Hollow

Auto Center to perform a floor plan check.  (Trial Transcript April 3, 2008 (LaPasso), Page 30,

lines 10-14).  G. Judd does nothing more than confess to what Mr. LaPasso will soon discover

as the result of his floor plan check.  What conclusion does this illustrate?  It certainly does not

suggest no intent to harm.

Further, what about the Judds activities after March 30, 2006?  Nowhere in the

Judgment Order does the Bankruptcy Court recognize the differences in activities engaged in by

the Judds before and after March 30, 2006.  Once the Judds had been discovered to have

retained proceeds from the vehicles financed through the Associated Bank funds and subject to

a single floor plan check, did they stop?  No.  Instead, the Judds became more aggressive in their scheme to retain sale proceeds.  When a vehicle was sold and the proceeds not tendered, R. Judd lied to RCL and Riverside Bank about the location of the vehicle.  (Exhibit 39).  If the retention of the sale proceeds was merely business as usual as the Bankruptcy Court seems to conclude, then why lie?  Further, if this was the normal operating procedure, why did G. Judd not attempt to secure the Certificates of Title for vehicles sold until June 2006?

The answer is that this was not the normal floor plan procedure.  R. Judd wanted to keep retaining sale proceeds for as long as she could.  Her deceptive actions escalated with the double funding of the Cherokee/LeSabre and culminated with the April 24, 2006 advance of $32,800.00 for vehicles that were never purchased.  The Bankruptcy Court does not address the specifics of these actions.  In addition, the Bankruptcy Court never addresses the $32,100.00 that R. Judd diverted from the Sandy Hollow Auto Center operating account on May 1, 2006 to the payroll account.  The Bankruptcy Court analysis of the Judds fails to state how it is possible that these actions represented a 10 year pattern of business.  This was not a pattern of prior behavior and certainly not a pattern of behavior that was approved by RCL.

In its willful and malicious analysis, the Bankruptcy Court places substantial reliance on the case of In re Fox, 370 B.R. 104 (6th Cir. BAP 2007).  This case is factually distinguishable from the Judds' actions.  In Fox, the debtor was a debt collector retained by creditor to collect third party obligations.  Debtor failed to tender proceeds back to creditor and used collected funds to repay corporate obligations.  Fox @ 119.  In Fox, the debtor's documents required segregation of accounts, which debtor failed to do.  The floor plan financing documentation in this case made no segregation requirement.  The requirement was to remit the funds within five days of selling a vehicle.  The testimony was that R. Judd paid every Friday.  As stated earlier, this is not a question of the Judds paying a couple of days late; the issue is the Judds never paying at all.  The Judds followed the procedures for obtaining the floor plan advance with the

single exception that they failed to pay for 29 vehicles between October 2005 and April 2006.

There is no way that RCL could have acquiesced to the use of the sale proceeds from vehicles

sold after March 30, 2006 when RCL did not know the vehicles had been sold and R. Judd lied

about the sale and location of the vehicles.

**d.    The Bankruptcy Court Committed Further Err by Failing to Consider Floor Plan Financing Cases in its Analysis of Willful and Malicious Injury.**

In its Brief Findings of Fact and Conclusions of Law, RCL provided the Court with

several cases that dealt directly with floor plan financing and dischargeability under 11 USC

Section 523(a)(6).  (Brief Findings of Fact and Conclusions of Law, Docket Entry 28).  There is

no reference to those cases in the Judgment Order.  (Judgment Order, Docket Entry 30).

Of the cases cited outside of this jurisdiction, the most relevant is In re Shaffer, 305 B.R.

771 (Bk. D.S.C. 2004).  The Shaffer Court was presented with a wholesale auto seller and

involved several sets of vehicle sales.  Id. @ 773-775.  The court concluded that:

> Debtor understood that withholding the $69,700 in proceeds from the sale of Group Two
> Vehicles would prejudice Internet Automotive's ownership intent…  In this case, it is
> clear that Debtor converted Internet Automotive's proceeds intentionally and in 'knowing
> disregard' of Internet Automotive's rights without just cause or excuse. Thus, the Court
> finds that Debtor caused Internet Automotive a malicious injury by withholding and
> converting the proceeds produced from his sale of Group Two Vehicles.  Id. @ 777-778.

Additional floor plan financing cases are In re Higginbotham, 117 B.R. 211, (Bk. E.D. Va

1990) and In re Smith, 143 B.R. 284 (Bk. M.D. Ga 1992).  In Smith, the bankruptcy court found

the out of trust situation to be non-dischargeable.  Like the Judds, Smith had been experiencing

financial difficulties and had a specific time constriction regarding the turnover of sale proceeds.

 Smith @ 291.  The Smith court concluded the failure to tender those sale proceeds did create a

willful and malicious injury.  Id.  @ 292.

In Higginbotham, the debtor floor planned vehicles and failed to repay sale proceeds.

The court determined the debtor's behavior in using sale proceeds for personal uses and failing

to turn over the sale proceeds constituted sufficient grounds to deny discharge.  Higginbotham

@ 216.

Additionally, there are a few floor plan cases which occurred in this jurisdiction: In re Park, 314 B.R. 378 (Bk. N.D. Ill. 2004) and In re Farbman, 244 B.R. 135 (Bk. N.D. Ill. 2000). In Farbman, a single vehicle was at issue and the debtor failed to tender the sale proceeds to the creditor. Id. @ 138-139. Although it was a motion to dismiss case, the court did acknowledge that a willful injury could result from this type of transaction. Id. @ 140-141. The court in Park, also reviewing the case at the motion stage, dealt with a dealership engaged in floor plan financing. The Park court acknowledged that:

> …a dealer sells a car 'out of trust' when he sells it and fails to remit the sale proceeds to his lender under the floor plan financing agreement. (citations omitted) Park @ 382.

Although the Park court found the complaint lacking of factual allegations, it did recognize the viability of a non-dischargeability complaint under Section 523(a)(6) for these types of case referring the rulings in Shaffer and Higginbotham. Id. @ 383.

Based on the intentional acts of R. Judd and G. Judd to retain the sale proceeds and use the floor plan advance proceeds in a manner that they knew would cause a particularized harm to RCL, the testimony and the evidence establish the existence of a willful injury.

**2.      Malicious Requirement of Section 523(a)(6)**

To establish that the actions of the Judds meet the malicious requirement of Section 523(a)(6), RCL must demonstrate:

- the act of the Judds in retaining the sale proceeds or advance funds was wrongful;

- the retention of the sale proceeds or advance funds was done intentionally by G. Judd and R. Judd;

- the retention of the sale proceeds and advance funds caused an injury to RCL; and

- the actions of G. Judd and R. Judd were done without just cause or excuse.

In re Basel-Johnson, 366 B.R. 831, 850 (Bk. N.D. Ill. 2007).

Bankruptcy courts have consistently recognized maliciousness does not require a

finding that the debtor acted with ill will or a specific intent to do harm.  Farbman @ 142.  The Basel-Johnson court also concluded that: "An act is 'malicious' if it is taken 'in conscious disregard of one's duties'".  Basel-Johnson @ 850.

The Bankruptcy Court erred in its determination that the acts of the Judds were not malicious.  There should be no doubt that the actions of the Judds with respect to the retention of the sale proceeds and the use of the floor plan advance funds was wrongful.  The acts were contrary to the loan documents dictating the floor plan financing relationship between the parties.  The Judds admit that no one told them the three (3) and five (5) day rules regarding sale proceeds did not apply.  Mr. Belmont testified that the three (3) day payment period was addressed at the April 4, 2006 document signing.  (Trial Transcript April 3, 2008 (Belmont), Page 109, lines 9-18).  Why would Mr. Belmont include it in the Business Loan Agreement and bring it up at the closing if he did not intend to enforce it?  No reasonable individual would conclude that the actions of the Judds were not wrongful.

Further, the testimony seemed very clear that the retention of the sale proceeds and use of floor plan advance funds was intentional.  R. Judd had no problem testifying that she made the decision to retain the funds and use them as she determined.  (Trial Transcript April 3, 2008 (R. Judd), Page 219, lines 9-11).  This clearly was an intentional act on her part. G. Judd knew of the vehicle advances and took no action to return the funds to RCL.

With respect to the last element of the Basel-Johnson analysis, there is no doubt the written evidence and the testimony clearly established that the use of the advance funds and the sale proceeds by Judds caused extreme injury and hardship to RCL.  RCL is responsible for paying $295,620.00 back to Associated Bank and Riverside Bank because Judd kept and used the funds.  This included $262,820.00 for the vehicles sold and the proceeds retained by Judds and the $32,800.00 of advance fund proceeds from April 24, 2006.  RCL would not have used its own funds to pay Associated Bank and/or Riverside Bank if the Judds had merely returned

the advance proceeds when they did not receive title or the sale proceeds within three to five days of selling a vehicle.

The key to the maliciousness argument is whether the actions of R. Judd and G. Judd were without cause or excuse or in conscious disregard for their duties. In re Basel-Johnson @ 850. As has been stated numerous times in the testimony and in this argument, R. Judd and G. Judd had a duty under the Motor Vehicle Agreement and the Business Loan Agreement to turn over proceeds of the sale of a vehicle within five (5) days or three (3) days of sale, depending on the document. The failure to turn over any proceeds should certainly be deemed a conscious disregard of that duty.

It is no excuse that the Judds used the funds to pay bills. This was not the purpose of the funds and directly contradicted the intent of the floor plan financing documents. The Court should reject their position because it clearly is a conscious disregard for their duty to pay RCL the sale proceeds under the loan documents. R. Judd and G. Judd were looking out for themselves. The bills they paid were bills for which they were personally liable. All of the thirty-seven (37) credit card payments totaling $15,190.82 were for cards listed on their personal bankruptcy petition. The four payments ($5012.54) to Irwin Home Equity protected their personal residence. The Judds claimed this was a corporate debt, but failed to identify any indebtedness due to them from Sandy Hollow Auto Center on the personal bankruptcy petition. (Judd Petition, Appendix 1, Schedule B, Page A-8). Further, they submitted no written evidence of the corporate borrowing.

The self dealing without just cause or excuse is also present in the payments to companies they owned. R. Judd testified that Sensible Auto Rentals was a company she ran and owned. In their time of alleged financial hardship when RCL was not being paid, R. Judd found a way to pay Sensible Auto Rentals on four (4) different occasions the sums of $16,235.00.

Further, after R. Judd and G. Judd accepted $32,800.00 from RCL to purchase four (4)

vehicles, but failed to secure the collateral, payments were made to G. Judd and Jason Judd.

As well, R. Judd also "purchased" a 1996 Ford Windstar for $500.00 when it had a listed value

on the Buyer Invoice of $2,850.00.   (Exhibit 28).   Further, it has a listed value on the Judd's

bankruptcy petition of $1,500.00.  (Judd Petition, Appendix 1).   From the value set forth on the

Judd Petition, it does not appear that Sandy Hollow Auto Center received full value for the Ford

Windstar.   This was a trade-in on a RCL floored vehicle for which RCL received <u>nothing</u>.

Finally, the Court must consider the diversion of funds on May 1, 2006. The sum of

$32,100.00 is placed into the Sandy Hollow Auto Rentals account (Exhibit 44).  G. Judd even

testified that that amount would be highly unusual for that account.   It is subsequently

transferred not to the operating account of Sandy Hollow Auto Center, but rather to the

payroll/tax account.  Certainly, for a business that ceased operations on May 3, 2006, it would

seem unlikely that it would have payroll requiring $32,100.00.  Further adding to the mystery is

that no sale proceeds were deposited into the Sandy Hollow operating account after May 25,

2006.

R. Judd testified she made the $32,100.00 deposit.  She was the only one at Sandy

Hollow Auto Center that performed the banking duties.  Such diversion of funds is without just

cause or excuse at a time when there are twenty-nine (29) vehicles sold by Sandy Hollow Auto

Center for which RCL has not been paid and when RCL has just paid $32,800.00 for vehicles

for which it has no collateral.

The Bankruptcy Court fixates on the deposit of sale proceeds in the operating account

and seems willing to overlook all of the other actions of the Judds.  The failure to focus on:  1)

the calculated retention of only Associated Bank sale proceeds prior to March 30, 2006; 2) the

calculated scheme to hide the location of vehicles sold after March 30, 2006 to cover up the

retention of proceeds; 3) the failure to request certificates of title for sold vehicles; and 4) the

retention of floor plan advance funds when no collateral exists were all facts that demonstrated

the willful and malicious injury to RCL that should not have been discharged.  The failure of the

Bankruptcy Court to apply these facts constitutes err and requires the reversal of the

Bankruptcy Court's decision on Counts II and IV of the Complaint.

**B.    The Bankruptcy Court Erred in Determining that the Use of Floor Plan Advance Funds by Appellees (Judds) Did Not Constitute Embezzlement or Larceny Under 11 USC Section 523(a)(4)**

In the Complaint, Counts I and III alleged causes of action for violation of 11 USC

Section 523(a)(4) addressing all of the vehicles sold out of trust and characterizing it as

embezzlement.  (Complaint, Docket Entry 1).  At the evidentiary hearing and in its written

closing argument, RCL focused the embezzlement/larceny analyses on three separate events:

1) April 24, 2006 funding of four (4) vehicles for $32,800.00; 2) VW Beetle returned to auto

auction; and 3) Cherokee/LeSabre double dip floor plan funding.  (Brief Findings of Fact and

Conclusions of Law regarding non-dischargeability for Rockford Capital Leasing, Docket Entry

28).[3]  The Judgment Order of the Bankruptcy Court did not specifically address these specific

incidents in its analyses.  (Judgment Order, Docket Entry 30).  This failure constitutes error.

The analysis of embezzlement and/or larceny under 11 USC Section 523(a)(4) requires

that RCL demonstrate:

1)      R. Judd and G. Judd appropriated the subject funds for their benefit; and

2)      R. Judd and G. Judd did so with fraudulent intent or deceit.

In re Monroe, 304 B.R. 349, 359 (N.D. Ill. 2004).  Further, the analysis focuses on the use of

the appropriated funds for other than that for which it was entrusted to the debtor.  In re Hermes,

340 B.R. 369, 374 (Bk. C.D. Ill. 2006).

On the other hand, larceny requires that R. Judd and G. Judd took property of RCL, the

---

[3] At the close of evidence, counsel for RCL moved to amend the pleadings to conform to the evidence. (Trial Transcript April 8, 2008, Page 270, lines 22-24, Page 271, lines 1-8).  The Bankruptcy Court permitted the parties to address this matter in the closing briefs.  The motion was granted in the Judgment

property's rightful owner, with the fraudulent intent to convert that property to their own use. Monroe @ 359.  The issue between the two centers around whether or not the property was owned by RCL.

In the floor plan financing relationship, RCL is the owner of the funds used to purchase the vehicles.  RCL "lends" the funds to Sandy Hollow Auto Center, R. Judd and G. Judd for the sole purpose of purchasing the vehicle.  The failure of R. Judd and G. Judd to use the funds to purchase the vehicle would constitute a conversion for their own benefit.

In this case there are at least three (3) instances where funds lent by RCL were wrongfully appropriated by the Judds.  The most glaring incident of larceny occurred on April 24, 2006 when R. Judd and G. Judd obtained $32,800.00 for the purchase of four (4) vehicles from the GRAA.  RCL'S funds were never used to purchase those vehicles.  R. Judd used those funds to pay other bills.  There is no doubt from looking at the check register for Sandy Hollow Auto Center (Exhibit 40) that R. Judd knew she had a negative balance in her account of $115,624.02 when she attempted to pay for the four (4) vehicles.  (Exhibit 40, Pages 19-20). Rather than tendering the RCL check directly to the auto auction to insure the purchase of the vehicles, she deposited it in her account.  Her self-proclaimed goal was to pay her bills.  (Trial Transcript April 8, 2008 (R. Judd), Page 249, lines 15-16).  R. Judd needed money and she gladly took the funds of RCL to get it.  The actions by R. Judd clearly demonstrate the type of behavior that rises to the level of fraudulent intent necessary for larceny.

For example, in Monroe, the court reviewed a situation where deposits were at issue. The court determined that the retention of the deposits did not constitute larceny because the conduct of the debtor conformed to the agreements between the parties.  Id. @ 359.  The actions of R. Judd and G. Judd with respect to the $32,800 are well outside the agreements of the parties.  There is nothing in the agreements or past practices of the parties that the Judds

---

Order.

can argue permitted them to keep floor plan advance funds without providing the collateral.

The second instance involves the 2002 VW Beetle.  RCL lent $9,825.00 for the purchase of that vehicle.  R. Judd and G. Judd failed to secure good title and never consummated the purchase.  They also did not return to RCL the $9,825.00.  Rather, they utilized the funds for the benefit of operating their company, which paid their second mortgage, credit card bills, personal draws and payments to related companies.

The Bankruptcy Court chooses to lump all of the vehicle transactions together and look at what occurred during the entire ten year relationship between Judds and RCL.  Such analysis is misplaced.  The fact that RCL was willing to accept weekly Friday visits from R. Judd to pay off vehicles is not an acquiescence for the Judds to steal the floor plan advance proceeds on six (6) vehicles.  There was no evidence submitted that RCL gave funds to the Judds and Sandy Hollow to be used for whatever purpose the Judds wanted.  The Floor Plan Financing loan documents submitted as evidence clearly state that the funds were given with the specific purpose of purchasing inventory for sale.  (Exhibit 3).  The retention of the floor plan advances is clearly outside of the documentation and the prior operating procedure of the parties.

In its analysis, the Bankruptcy Court relies heavily on the 7th Circuit decision in In re Weber, 892 F2d. 534 (7th Cir. 1989).  In Weber, the Court dealt with a creditor that is factually distinguishable from RCL.  The creditor was alleged to have "tacitly assented" to the embezzlement for its own tax benefits.  Id. @ 537.  RCL received no benefit from providing Judds floor plan advance funds with nothing in return.  After April 4, 2006, RCL was directly liable to Riverside under the floor plan documents. If no collateral existed for the advances, there was no source of payment.  RCL had to repay the funds directly to Riverside, which as Tom Belmont testified, RCL did.  (Trial Transcript April 3, 2008 (Belmont), Page 115, lines 1-21).

Further, this is not a situation of knowledgeable acquiescence as the Bankruptcy Court attempts to suggest in its Judgment Order. RCL never gave permission and never acted in a

manner to suggest that the Judds could use the floor plan advance proceeds for a purpose other than buying vehicles to be added to inventory. The <u>Weber</u> analysis does not fit the facts as presented in this case.

These three incidents cannot be characterized as negligent or reckless. R. Judd set out on a pattern of deception to keep RCL and Riverside Bank off her trail while she kept the floor plan advance proceeds. The record is clear that she misrepresented the VW Beetle had been sold and not that it had been returned to the auto auction. RCL only received its information on locations of vehicles missing from the lot from R. Judd. (Trial Transcript April 3, 2008 (LaPasso), Page 48, lines 2-10; Page 49, line 24; and Page 50, lines 1-8). Where is the evidence that RCL acquiesced to the use of floor plan advance funds for anything other than the purchase of vehicles being financed? The Bankruptcy Court's failure to recognize that no evidence exists to justify the Judd's retention of the floor plan advance funds constitutes reversible error. As such, the floor plan advance funds relating to the $32,800.00, the VW Beetle and the Jeep Grand Cherokee should be deemed non-dischargeable pursuant to 11 USC Section 523(a)(4).

**V.**

**<u>CONCLUSION</u>**

The trial testimony and written exhibits provide this Court with clear evidence that the Bankruptcy Court committed reversible error in determining that the floor plan financing debt of R. Judd and G. Judd to RCL was dischargeable. RCL respectfully requests that this Court reverse the decision of the Bankruptcy Court and determine that the use of sale proceeds by R. Judd and G. Judd for the 27 vehicles identified in the evidence constituted a willful and malicious injury under 11 USC Section 523(a)(6) and deny discharge of this indebtedness. Further, that this Court reverse the decision of the Bankruptcy Court and determine that the use of the floor plan advance funds of $32,800.00, the VW Beetle and the Jeep Grand Cherokee

constituted larceny which is non-dischargeable under 11 USC Section 523(a)(4).

ROCKFORD CAPITAL LEASING, INC., an Illinois corporation, Plaintiff/Appellant

BY:    /s/ Gregory A. Biegel
        GREGORY A. BIEGEL
        Attorney for Plaintiff/Appellant

Gregory A. Biegel
BARRICK, SWITZER, LONG,
  BALSLEY & VAN EVERA
6833 Stalter Drive, First Floor
Rockford, IL  61108
Telephone:  (815) 962-6611

F:\jbombard\GAB\RCL\Sandy Hollow Auto Center\Appeal\BRIEF.doc

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | | |
|---|---|---|
| ROCKFORD CAPITAL LEASING, INC. | ) | Appeal from the United States |
| | ) | Bankruptcy Court Northern District |
| Plaintiff/Appellant, | ) | of Illinois – Western Division |
| | ) | Honorable Manuel Barbosa |
| | ) | Bankruptcy Case No. 06 A 96116 |
| | ) | |
| vs. | ) | CASE NO. 08 C 50175 |
| | ) | |
| GARY A. JUDD and RHONDA J. JUDD, | ) | HONORABLE FREDERICK J. KAPALA |
| | ) | |
| Defendants/Appellees. | ) | |

## NOTICE OF ELECTRONIC FILING

TO:    David L. Davitt
       Schlueter Ecklund
       4023 Charles Street
       Rockford, IL  61108

I HEREBY CERTIFY that on the 28th day of August, 2008, the undersigned electronically filed the foregoing **Brief and Argument of Plaintiff/Appellant** with the United States District Court for the Northern District of Illinois, Western Division, using the CM/ECF system, and that I have served all CM/ECF Registered Participants as reflected on the Notice of Electronic Filing.

_____/s/ GREGORY A. BIEGEL_____
Attorney for Plaintiff/Appellant

Gregory A. Biegel
**BARRICK, SWITZER, LONG,**
   **BALSLEY & VAN EVERA**
Attorneys at Law
6833 Stalter Drive, First Floor
Rockford, Illinois  61108
(815) 962-6611

## PROOF OF SERVICE

The undersigned, being first duly sworn on oath deposes and states that the above-stated document was served electronically using the CM/ECF system upon each person addressed therein on the 28th day of August, 2008.

_____/s/ Julie A. Bombard_____

(Official Form 1) (10/05)

| United States Bankruptcy Court<br>Northern District of Illinois | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Judd, Gary A** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**Judd, Rhonda J** |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>xxx-xx-**8370** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>xxx-xx-**1202** |
| Street Address of Debtor (No. & Street, City, and State):<br>**5445 Silverthorn Court**<br>**Rockford, IL**                    ZIP Code **61107** | Street Address of Joint Debtor (No. & Street, City, and State):<br>**5445 Silverthorn Court**<br>**Rockford, IL**                    ZIP Code **61107** |
| County of Residence or of the Principal Place of Business:<br>**Winnebago** | County of Residence or of the Principal Place of Business:<br>**Winnebago** |
| Mailing Address of Debtor (if different from street address):<br>                              ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br>                              ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above):    **3909 Sandy Hollow Road**<br>**Rockford, IL 61109** | |

| Type of Debtor (Form of Organization)<br>(Check one box) | Nature of Business<br>(Check all applicable boxes.) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ■ Individual (includes Joint Debtors)<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and provide the information requested below.)<br>State type of entity: | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Nonprofit Organization qualified under 26 U.S.C. § 501(c)(3) | ☐ Chapter 7   ☐ Chapter 11   ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9   ☐ Chapter 12   ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>              ☐ Chapter 13 |
| | | **Nature of Debts** (Check one box)<br>☐ Consumer/Non-Business   ■ Business |

| Filing Fee (Check one box) | Chapter 11 Debtors |
|---|---|
| ■ Full Filing Fee attached<br>☐ Filing Fee to be paid in installments (Applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br>☐ Filing Fee waiver requested (Applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts owed to non-insiders or affiliates are less than $2 million. |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>■ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1000-<br>5,000 | 5001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ | ☐ |

Estimated Debts

| $0 to<br>$50,000 | $50,001 to<br>$100,000 | $100,001 to<br>$500,000 | $500,001 to<br>$1 million | $1,000,001 to<br>$10 million | $10,000,001 to<br>$50 million | $50,000,001 to<br>$100 million | More than<br>$100 million |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ■ | ☐ | ☐ | ☐ |

**A-1**

(Official Form 1) (10/05)                                                          FORM B1, Page 2

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **Judd, Gary A** |
| | **Judd, Rhonda J** |

| **Prior Bankruptcy Case Filed Within Last 8 Years** (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed: **- None -** | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br>I further certify that I delivered to the debtor the notice required by §342(b) of the Bankruptcy Code.<br><br>**X** _____<br>Signature of Attorney for Debtor(s)          Date |

| **Exhibit C** | **Certification Concerning Debt Counseling by Individual/Joint Debtor(s)** |
|---|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br><br>☐ Yes, and Exhibit C is attached and made a part of this petition.<br><br>■ No. | ■ I/we have received approved budget and credit counseling during the 180-day period preceding the filing of this petition.<br><br>☐ I/we request a waiver of the requirement to obtain budget and credit counseling prior to filing based on exigent circumstances. (Must attach certification describing.) |

| **Information Regarding the Debtor (Check the Applicable Boxes)** |
|---|
| **Venue** (Check any applicable box)<br><br>■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.<br><br>☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Statement by a Debtor Who Resides as a Tenant of Residential Property**<br>*Check all applicable boxes.* |
|---|
| ☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)<br><br>_____<br>(Name of landlord that obtained judgment)<br><br><br>_____<br>(Address of landlord)<br><br><br>☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and<br><br>☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition. |

**A-2**

(Official Form 1) (10/05)                                                        FORM B1, Page 3

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **Judd, Gary A**<br>**Judd, Rhonda J** |

**Signatures**

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by §342(b) of the Bankruptcy Code.<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition. | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only one box.)<br>☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by §1515 of title 11 are attached.<br>☐ Pursuant to §1511 of title 11, United States Code, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>**X** _____<br>Signature of Foreign Representative<br><br>_____<br>Printed Name of Foreign Representative |
| **X** /s/ Gary A Judd<br>Signature of Debtor Gary A Judd<br><br>**X** /s/ Rhonda J Judd<br>Signature of Joint Debtor Rhonda J Judd<br><br>_____<br>Telephone Number (If not represented by attorney)<br><br>**June 27, 2006**<br>Date | |

| **Signature of Attorney** | **Signature of Non-Attorney Bankruptcy Petition Preparer** |
|---|---|
| **X** /s/ David L. Davitt<br>Signature of Attorney for Debtor(s)<br><br>**David L. Davitt**<br>Printed Name of Attorney for Debtor(s)<br><br>**Schlueter Ecklund**<br>Firm Name<br><br>**4023 Charles Street**<br>**Rockford, IL 61108**<br><br>_____<br>Address<br><br>Email: ddavitt@rockriverlaw.com<br>**815 229-5333 Fax: 815 229-0733**<br>Telephone Number<br><br>**June 27, 2006**<br>Date | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.<br><br>_____<br>Printed Name and title, if any, of Bankruptcy Petition Preparer<br><br>_____<br>Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)<br><br>_____<br>Address<br><br>**X** _____<br><br>_____<br>Date<br><br>Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose social security number is provided above.<br><br>Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.* |

| **Signature of Debtor (Corporation/Partnership)** | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>**X** _____<br>Signature of Authorized Individual<br><br>_____<br>Printed Name of Authorized Individual<br><br>_____<br>Title of Authorized Individual<br><br>_____<br>Date | |

**A-3**

Form 6-Summary
(10/05)

## United States Bankruptcy Court
### Northern District of Illinois

In re   Gary A Judd,
        Rhonda J Judd

Case No. _____

_____
                              Debtors

Chapter_____7_____

## SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets.  Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities."

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | AMOUNTS SCHEDULED | | |
|---|---|---|---|---|---|
| | | | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 340,000.00 | | |
| B - Personal Property | Yes | 3 | 15,667.00 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 338,950.76 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 8 | | 717,487.07 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 2,161.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 1 | | | 4,041.66 |
| Total Number of Sheets of ALL Schedules | | 19 | | | |
| | | Total Assets | 355,667.00 | | |
| | | Total Liabilities | | 1,056,437.83 | |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

A-4

Form 6-Summ2
(10/05)

# United States Bankruptcy Court
### Northern District of Illinois

In re  Gary A Judd,
       Rhonda J Judd

Case No. _____

                                        Debtors

Chapter _____7_____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES (28 U.S.C. § 159)
### [Individual Debtors Only]

Summarize the following types of liabilities, as reported in the Schedules, and total them.

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | 0.00 |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) | 0.00 |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | 0.00 |
| Student Loan Obligations (from Schedule F) | 0.00 |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | 0.00 |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | 0.00 |
| TOTAL | 0.00 |

**The foregoing information is for statistical purposes only under 28 U.S.C § 159.**

Form B6A
(10/05)

In re     **Gary A Judd,**
        **Rhonda J Judd**                                                         Case No. _____

                          Debtors

## SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **5445 Silverthorn Court, Rockford, IL** | **Fee Simple** | **J** | **340,000.00** | **338,950.76** |

|  |  |  |
|---|---|---|
| Sub-Total > | 340,000.00 | (Total of this page) |
| Total > | 340,000.00 |  |

(Report also on Summary of Schedules)

<u>  0  </u>  continuation sheets attached to the Schedule of Real Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**A-6**

Best Case Bankruptcy

Form B6B
(10/05)

In re    **Gary A Judd,**                                        Case No. _____
         **Rhonda J Judd**
                            _____
                             Debtors

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." In providing the information requested in this schedule, do not include the name or address of a minor child. Simply state "a minor child."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Amcore Checking | J | 100.00 |
| | | Savings -- First Northern Credit Union | J | 20.00 |
| | | Alpine Bank Checking | J | 10.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | | Misc Household Goods & Furnishings | J | 1,500.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | Misc Wearing Apparel | J | 1,000.00 |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >           2,630.00
(Total of this page)

_2_   continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**A-7**

Best Case Bankruptcy

Form B6B
(10/05)

In re    **Gary A Judd,**                                        Case No. _____
         **Rhonda J Judd,**
_____
                         Debtors

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | | Husband's IRA | H | 630.00 |
| | | Wife's IRA | W | 2,064.00 |
| | | Husband's 401K Plan | H | 8,841.00 |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | | Stock in Sandy Hollow Auto Center, Inc. (Closed Business) | J | 1.00 |
| | | Stock in Sandy Hollow Auto Rentals, Inc. (Closed Business) | J | 1.00 |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | X | | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A – Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >          **11,537.00**
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**A-8**

Best Case Bankruptcy

Form B6B
(6/03)

In re   **Gary A Judd,**
        **Rhonda J Judd**                                          Case No. _____

_____
                    Debtors

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1996 Ford Windstar Van | J | 1,500.00 |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  |  |
|---|---|
| Sub-Total > | 1,500.00 |
| (Total of this page) | |
| Total > | 15,667.00 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Form B6C
(10/05)

In re    Gary A Judd,                                                Case No. _____
         Rhonda J Judd

Debtors

## SCHEDULE C. PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds
$125,000.

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Amcore Checking | 735 ILCS 5/12-1001(b) | 100.00 | 100.00 |
| Savings -- First Northern Credit Union | 735 ILCS 5/12-1001(b) | 20.00 | 20.00 |
| Alpine Bank Checking | 735 ILCS 5/12-1001(b) | 10.00 | 10.00 |
| **Household Goods and Furnishings** | | | |
| Misc Household Goods & Furnishings | 735 ILCS 5/12-1001(b) | 1,500.00 | 1,500.00 |
| **Wearing Apparel** | | | |
| Misc Wearing Apparel | 735 ILCS 5/12-1001(a) | 1,000.00 | 1,000.00 |
| **Interests in IRA, ERISA, Keogh, or Other Pension or Profit Sharing Plans** | | | |
| Husband's IRA | 735 ILCS 5/12-704 | 1,400.00 | 630.00 |
| Wife's IRA | 735 ILCS 5/12-704 | 2,500.00 | 2,064.00 |
| Husband's 401K Plan | 735 ILCS 5/12-704 | 8,841.00 | 8,841.00 |
| **Automobiles, Trucks, Trailers, and Other Vehicles** | | | |
| 1996 Ford Windstar Van | 735 ILCS 5/12-1001(c) | 1,500.00 | 1,500.00 |

__0__   continuation sheets attached to Schedule of Property Claimed as Exempt

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6D
(10/05)

In re    **Gary A Judd,**
       **Rhonda J Judd,**                      Case No. _____

                       Debtors

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | 5445 Silverthorn Court, Rockford, IL | | | | | |
| **Dubuque Bank** **1398 Central Avenue** **Dubuque, IA 52004** | | J | | | | | | |
| | | | Value $          340,000.00 | | | | 229,866.00 | 0.00 |
| Account No. | | | 5445 Silverthorn Court, Rockford, IL | | | | | |
| **Irwin Home Equity** **12677 Alcosta Blvd. Ste 500** **San Ramon, CA 94583-4427** | | J | | | | | | |
| | | | Value $          340,000.00 | | | | 97,755.00 | 0.00 |
| Account No. | | | 5445 Silverthorn Court, Rockford, IL | | | | | |
| **Winnebago County Treasurer** **404 Elm Street, Room 205** **P.O. Box 1216** **Rockford, IL 61105** | | J | | | | | | |
| | | | Value $          340,000.00 | | | | 11,329.76 | 0.00 |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

   0    continuation sheets attached

                                   Subtotal      | 338,950.76 |
                           (Total of this page)

                                     Total      | 338,950.76 |
          (Report on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                            Best Case Bankruptcy

Form B6E
(10/05)

In re    **Gary A Judd,**                                                    Case No. _____
         **Rhonda J Judd**

                                            Debtors

## SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C.§112; Fed.R.Bankr.P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community". If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. If applicable, also report this total on the Means Test form.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Domestic support obligations**
Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**
Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**
Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,000* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(4).

☐ **Contributions to employee benefit plans**
Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**
Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**
Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

☐ **Taxes and certain other debts owed to governmental units**
Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**
Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**
Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\* Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

_____**0**_____ continuation sheets attached

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

**A-12**

Form B6F
(10/05)

In re   **Gary A Judd,**
        **Rhonda J Judd**                                    Case No. _____

                                                    Debtors

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. §112, Fed.R.Bankr.P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| **Advanta** <br> **P.O. Box 30715** <br> **Salt Lake City, UT 84130** | | J | | | | | 19,000.00 |
| Account No. | | | | | | | |
| **Affiliated Car Rental** <br> **105 Highway 36** <br> **Eatontown, NJ 07724** | | J | | | | | 680.00 |
| Account No. | | | | | | | |
| **Amcore Bank** <br> **1210 S. Alpine Road** <br> **Rockford, IL 61108** | | J | | | | | 3,500.00 |
| Account No. | | | | | | | |
| **Amcore Bank** <br> **1210 S. Alpine Road** <br> **Rockford, IL 61108** | | J | | | | | 31,167.00 |
| _7_   continuation sheets attached | | | Subtotal <br> (Total of this page) | | | | 54,347.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**A-13**

S/N 35010-060614   Best Case Bankruptcy

Form B6F - Cont
(10/05)

In re    **Gary A Judd,**                                    Case No. _____
         **Rhonda J Judd**
_____
                        Debtors

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| American Express P.O. Box 650448 Dallas, TX 75265-0448 | | J | | | | | 266.66 |
| Account No. | | | | | | | |
| American Express Blue P.O. Box 7863 Ft. Lauderdale, FL 33336 | | J | | | | | 9,201.00 |
| Account No. | | | | | | | |
| Bank of America P.O. Box 2463 Spokane, WA 99210 | | J | | | | | 25,000.00 |
| Account No. | | | | | | | |
| Benefical P.O. Box 788 Elmhurst, IL 60126 | | J | | | | | 7,000.00 |
| Account No. | | | | | | | |
| Capital One P.O. Box 790217 Saint Louis, MO 63179-0217 | | J | | | | | 41,422.00 |

Sheet no. _1_ of _7_ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          82,889.66

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                **A-14**                Best Case Bankruptcy

Form B6F - Cont.
(10/95)

In re  **Gary A Judd,**
　　　　**Rhonda J Judd**　　　　　　　　　　　　　　　　　　Case No. _____
　　　　　　　　　　　　　　　　　　　　　Debtors
**SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS**
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Chase P.O. Box 94010 Palatine, IL 60094 | | J | | | | | 6,476.00 |
| Account No. | | | | | | | |
| Citi Bank P.O. Box 688915 Des Moines, IA 50368-8915 | | J | | | | | 4,116.82 |
| Account No. | | | Business Premises Lease | | | | |
| D.M. Clark 5937 Sandy Hollow Road Rockford, IL 61109 | | J | | | | | 13,400.00 |
| Account No. | | | | | | | |
| Doug Farnham 635 Chapin Court Rockford, IL 61107 | | J | | | | | 433.00 |
| Account No. | | | | | | | |
| First Northern Credit Union 230 W. Monroe Suite 2850 Chicago, IL 60606 | | J | | | | | 4,671.00 |

Sheet no. __2__ of __7__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | Subtotal (Total of this page) | 29,096.82 |
|---|---|---|

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**A-15**

Best Case Bankruptcy

Form B6F - Cont
(10/05)

In re   **Gary A Judd,**
        **Rhonda J Judd**                                    Case No. _____
                                    _____
                                         Debtors

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| Forever Green P.O. Box 2653 Loves Park, IL 61111 | | J | | | | | 54.00 |
| Account No. | | | | | | | |
| Geoffrey Carter 1915 Bruner Rockford, IL 61109 | | J | | | | | 1,499.00 |
| Account No. | | | | | | | |
| Greater Rockford Auto Auction 5837 Sandy Hollow Road Rockford, IL 61109 | | J | | | | | 8,475.00 |
| Account No. | | | | | | | |
| Greg Johnson 13133 Mitchell Shirland, IL 61079 | | J | | | | | 1,399.00 |
| Account No. | | | | | | | |
| Jose Marquez 3341 Dallas Circle Rockford, IL 61109 | | J | | | | | 1,699.00 |

Sheet no. __3__ of __7__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)          13,126.00

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037          Best Case Bankruptcy

Form B6F - Cont
(09/00)

In re   **Gary A Judd,**
        **Rhonda J Judd**                                    Case No. _____

_____
                        Debtors

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| **Len Crafters** P.O. Box 981127 El Paso, TX 79998 | | J | | | | | 460.00 |
| Account No. | | | | | | | |
| **MBNA** P.O. Box 15469 Wilmington, DE 19886 | | J | | | | | 10,280.00 |
| Account No. | | | | | | | |
| **MBNA** P.O. Box 15469 Wilmington, DE 19886 | | J | | | | | 29,240.25 |
| Account No. | | | | | | | |
| **Michelle Sciabaras** 406 S. 6th St. Kirkland, IL 60146 | | J | | | | | 495.00 |
| Account No. | | | | | | | |
| **National City** 4661 E. Main Street Columbus, OH 43251 | | J | | | | | 7,134.00 |

Sheet no. __4__ of __7__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                          47,609.25

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

**A-17**

Form B6F - Cont.
(10/05)

In re    Gary A Judd,
         Rhonda J Judd,                                    Case No. _____

                              Debtors
## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | HWC | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| **Account No.** | | | | | | | |
| Patricia Rodriquez 2999 Bluffside Rockford, IL 61109 | | J | | | | | 1,499.00 |
| **Account No.** | | | | | | | |
| Phillips 66 P.O. Box 689061 Des Moines, IA 50368 | | J | | | | | 2,435.34 |
| **Account No.** | | | Personal Guarantee of Loans to Rockford Capital Leasing | | | | |
| Riverside Community Bank 68 E. Perryville Blvd Rockford, IL 61114 | | J | | X | X | | 200,000.00 |
| **Account No.** | | | Loan Guarantee | | | | |
| Rock River Bank 2470 Eastrock Dr. Rockford, IL 61108 | | J | | X | X | | 22,000.00 |
| **Account No.** | | | Deficiency Balance owed on Operating Loan to Sandy Hollow Auto Center, Inc. | | | | |
| Rockford Capital Leasing 4249 East State St. Rockford, IL 61108 | | J | | X | X | | 200,000.00 |

Sheet no. __5__ of __7__ sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)                                       425,934.34

Form B6F - Cont.
(10/05)

In re   Gary A Judd,                                              Case No. _____
        Rhonda J Judd,
        _____
                        Debtors

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | Possible Guaranty of Business Debt | | | | |
| Rockford Register Star<br>P.O. Box 439<br>Rockford, IL 61105 | | J | | X | X | X | 7,840.00 |
| Account No. | | | | | | | |
| Sams Club<br>P.O. Box 530970<br>Atlanta, GA 30353 | | J | | | | | 539.00 |
| Account No. | | | | | | | |
| Sprint<br>P.O. Box 219554<br>Kansas City, MO 64121-9554 | | J | | | | | 100.00 |
| Account No. | | | | | | | |
| Stillman Valley Bank<br>101 E. Main<br>Stillman Valley, IL 61084 | | J | | | | | 32,635.00 |
| Account No. | | | | | | | |
| Wells Fargo<br>P.O. Box 54349<br>Los Angeles, CA 90054 | | J | | | | | 22,700.00 |

Sheet no. __6__ of __7__ sheets attached to Schedule of                                    Subtotal          63,814.00
Creditors Holding Unsecured Nonpriority Claims                                         (Total of this page)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

**A-19**

Form B6F - Cont.
(10/05)

In re   Gary A Judd,
        Rhonda J Judd                                          Case No. _____
                                        Debtors

## SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W | J C | | | | | |
| Account No. | | | | | | | | | |
| **Wilma Tanata** **1420 Minns Drive** **Machesney Park, IL 61115** | | J | | | | | | | 670.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No | | | | | | | | | |
| | | | | | | | | | |

Sheet no.  7  of  7   sheets attached to Schedule of
Creditors Holding Unsecured Nonpriority Claims

| | Subtotal (Total of this page) | 670.00 |
|---|---|---|
| | Total (Report on Summary of Schedules) | 717,487.07 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

A-20

Form B6G
(10/05)

In re　　**Gary A Judd,**
　　　　　**Rhonda J Judd**　　　　　　　　　　　　　　　　Case No. _____

　　　　　　　　　　　　　　　　　　　Debtors

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| | |

　　　**0**　　continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

**A-21**

Best Case Bankruptcy

Form B6H
(10/05)

In re    **Gary A Judd,**                                    Case No. _____
         **Rhonda J Judd**

                                         Debtors

## SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112, Fed. Bankr. P. 1007(m).

■   Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
| --- | --- |
| | |

   0    continuation sheets attached to Schedule of Codebtors

Form B6I
(10/85)

In re  Gary A Judd
       Rhonda J Judd
_____     Case No. _____
                    Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by a married debtor in a chapter 7, 11, 12, or 13 case whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| Married | RELATIONSHIP: Daughter | AGE: 22 |
| | Son | 24 |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | | |
| Name of Employer | Unemployed | Unemployed |
| How long employed | | |
| Address of Employer | | |

INCOME: (Estimate of average monthly income)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Current monthly gross wages, salary, and commissions (Prorate if not paid monthly.) | $ | 0.00 | $ | 0.00 |
| 2. Estimate monthly overtime | $ | 0.00 | $ | 0.00 |
| 3. SUBTOTAL | $ | 0.00 | $ | 0.00 |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | 0.00 | $ | 0.00 |
| b. Insurance | $ | 0.00 | $ | 0.00 |
| c. Union dues | $ | 0.00 | $ | 0.00 |
| d. Other (Specify): _____ | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | 0.00 |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 0.00 | $ | 0.00 |
| 7. Regular income from operation of business or profession or farm. (Attach detailed statement) | $ | 0.00 | $ | 0.00 |
| 8. Income from real property | $ | 0.00 | $ | 0.00 |
| 9. Interest and dividends | $ | 0.00 | $ | 0.00 |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | 0.00 | $ | 0.00 |
| 11. Social security or other government assistance (Specify): Unemployment Compensation _____ | $ | 1,360.00 | $ | 801.00 |
| | $ | 0.00 | $ | 0.00 |
| 12. Pension or retirement income | $ | 0.00 | $ | 0.00 |
| 13. Other monthly income (Specify): _____ | $ | 0.00 | $ | 0.00 |
| | $ | 0.00 | $ | 0.00 |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 1,360.00 | $ | 801.00 |
| 15. TOTAL MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 1,360.00 | $ | 801.00 |

16. TOTAL COMBINED MONTHLY INCOME:     $ _____2,161.00     (Report also on Summary of Schedules)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

**A-23**

Form B6J
(10/05)

In re **Gary A Judd**
**Rhonda J Judd** _____     Case No. _____
                              Debtor(s)

## SCHEDULE J. CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

Complete this schedule by estimating the average monthly expenses of the debtor and the debtor's family.  Pro rate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate.

☐  Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate schedule of expenditures labeled "Spouse."

| | | |
|---|---|---:|
| 1. Rent or home mortgage payment (include lot rented for mobile home) | | $ 1,400.00 |
| a. Are real estate taxes included? | Yes ___  No _X_ | |
| b. Is property insurance included? | Yes ___  No _X_ | |
| 2. Utilities:     a. Electricity and heating fuel | | $ 250.00 |
|              b. Water and sewer | | $ 50.00 |
|              c. Telephone | | $ 100.00 |
|              d. Other _____ | | $ 0.00 |
| 3. Home maintenance (repairs and upkeep) | | $ 100.00 |
| 4. Food | | $ 450.00 |
| 5. Clothing | | $ 100.00 |
| 6. Laundry and dry cleaning | | $ 25.00 |
| 7. Medical and dental expenses | | $ 50.00 |
| 8. Transportation (not including car payments) | | $ 300.00 |
| 9. Recreation, clubs and entertainment, newspapers, magazines, etc. | | $ 75.00 |
| 10. Charitable contributions | | $ 0.00 |
| 11. Insurance (not deducted from wages or included in home mortgage payments) | | |
|              a. Homeowner's or renter's | | $ 75.00 |
|              b. Life | | $ 100.00 |
|              c. Health | | $ 0.00 |
|              d. Auto | | $ 50.00 |
|              e. Other | | $ 0.00 |
| 12. Taxes (not deducted from wages or included in home mortgage payments) | | |
|     (Specify)   **Real Estate Tax** | | $ 916.66 |
| 13. Installment payments: (In chapter 11, 12 and 13 cases, do not list payments to be included in the plan.) | | |
|              a. Auto | | $ 0.00 |
|              b. Other _____ | | $ 0.00 |
|              c. Other _____ | | $ 0.00 |
|              d. Other _____ | | $ 0.00 |
| 14. Alimony, maintenance, and support paid to others | | $ 0.00 |
| 15. Payments for support of additional dependents not living at your home | | $ 0.00 |
| 16. Regular expenses from operation of business, profession, or farm (attach detailed statement) | | $ 0.00 |
| 17. Other _____ | | $ 0.00 |
|     Other _____ | | $ 0.00 |
| 18. TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | | $ 4,041.66 |

19. Describe any increase or decrease in expenditures reasonably anticipated to occur within the year following the filing of this document:

20. STATEMENT OF MONTHLY NET INCOME

| | | |
|---|---|---:|
| a. | Total monthly income from Line 16 of Schedule I | $ 2,161.00 |
| b. | Total monthly expenses from Line 18 above | $ 4,041.66 |
| c. | Monthly net income (a. minus b.) | $ -1,880.66 |

**A-24**

Official Form 6-Decl.
(10/05)

# United States Bankruptcy Court
## Northern District of Illinois

In re    Gary A Judd
       Rhonda J Judd                           Case No. _____
                                   Debtor(s)        Chapter    **7**

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

      I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __ 21 __ sheets *[total shown on summary page plus 2]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date   **June 27, 2006**            Signature    **/s/ Gary A Judd**
                                               **Gary A Judd**
                                               Debtor

Date   **June 27, 2006**            Signature    **/s/ Rhonda J Judd**
                                               **Rhonda J Judd**
                                               Joint Debtor

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

Software Copyright (c) 1996-2003 Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                          Best Case Bankruptcy

Official Form 7
(10/05)

# United States Bankruptcy Court
## Northern District of Illinois

In re  Gary A Judd
       Rhonda J Judd
                                    Debtor(s)

Case No. _____
Chapter        7

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

## DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $33,000.00 | 2004 Wages |
| $41,452.00 | 2005 Wages |
| $-10,881.00 | 2004 Business Loss |
| $-2,166.00 | 2005 Business Loss |
| $17,000.00 | 2006 Wages YTD |

**A-26**

2

**2. Income other than from employment or operation of business**

None
■

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

**3. Payments to creditors**

None
■

*Complete a. or b., as appropriate, and c.*

a.    *Individual or joint debtor(s) with primarily consumer debts.* List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
■

b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,000. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|

None
■

c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
■

a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None
■

b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

3

**5. Repossessions, foreclosures and returns**

None
■
List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**6. Assignments and receiverships**

None
■
a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
| --- | --- | --- |

None
■
b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- | --- |

**7. Gifts**

None
■
List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
| --- | --- | --- | --- |

**8. Losses**

None
■
List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

**9. Payments related to debt counseling or bankruptcy**

None
☐
List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Schlueter Ecklund** **4023 Charles Street** **Rockford, IL 61108** | | **$2,000.00 plus filing fee** |

4

**10. Other transfers**

None
■    a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None
■    b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None
☐    List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| U Haul Credit Union | Saving Account | $1,400.00 -- Closed approx May 29, 2006 |
| Rock River Bank 2470 Eastrock Dr. Rockford, IL 61108 | Savings Account | $400.00 -- Closed Approx May 31, 2006 |

**12. Safe deposit boxes**

None
■    List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None
■    List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within 90 **days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None
■    List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

5

**15. Prior address of debtor**

None ■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

ADDRESS                          NAME USED                          DATES OF OCCUPANCY

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

None ■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

SITE NAME AND ADDRESS          NAME AND ADDRESS OF          DATE OF          ENVIRONMENTAL
                               GOVERNMENTAL UNIT             NOTICE           LAW

None ■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

SITE NAME AND ADDRESS          NAME AND ADDRESS OF          DATE OF          ENVIRONMENTAL
                               GOVERNMENTAL UNIT             NOTICE           LAW

None ■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NAME AND ADDRESS OF
GOVERNMENTAL UNIT                   DOCKET NUMBER                   STATUS OR DISPOSITION

**A-30**

6

**18 . Nature, location and name of business**

None
☐

a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| **Sandy Hollow Auto Center, Inc.** | 36-4138186 | **3909 Sandy Hollow road Rockford, IL 61109** | **Used Car Sales** | **Began March 1997 -- Ended April, 2006** |
| **Sandy Hollow Auto Rentals, Inc.** | | **Sandy Hollow Road Rockford, IL 61109** | **Auto Rental** | **Beginning December 2000 -- Closed April, 2006** |

None
■

b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

NAME                                        ADDRESS

---

### DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date  **June 27, 2006**                 Signature   **/s/ Gary A Judd**
                                                     **Gary A Judd**
                                                     Debtor

Date  **June 27, 2006**                 Signature   **/s/ Rhonda J Judd**
                                                     **Rhonda J Judd**
                                                     Joint Debtor

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

Form 8
(10/05)

## United States Bankruptcy Court
### Northern District of Illinois

In re   Gary A Judd
        Rhonda J Judd
_____   Case No. _____
                Debtor(s)    Chapter    7

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

- ■    I have filed a schedule of assets and liabilities which includes debts secured by property of the estate.
- ☐    I have filed a schedule of executory contracts and unexpired leases which includes personal property subject to an unexpired lease.
- ■    I intend to do the following with respect to property of the estate which secures those debts or is subject to a lease:

| Description of Secured Property | Creditor's Name | Property will be Surrendered | Property is claimed as exempt | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) |
|---|---|---|---|---|---|
| 5445 Silverthorn Court, Rockford, IL | Dubuque Bank | X | | | |
| 5445 Silverthorn Court, Rockford, IL | Irwin Home Equity | X | | | |

| Description of Leased Property | Lessor's Name | Lease will be assumed pursuant to 11 U.S.C. § 362(B)(1)(A) |
|---|---|---|
| -NONE- | | |

Date   **June 27, 2006**_____   Signature   **/s/ Gary A Judd**_____
                                                    **Gary A Judd**
                                                    Debtor

Date   **June 27, 2006**_____   Signature   **/s/ Rhonda J Judd**_____
                                                    **Rhonda J Judd**
                                                    Joint Debtor

**A-32**

# United States Bankruptcy Court
## Northern District of Illinois

In re    Gary A Judd     Case No. _____

      Rhonda J Judd

                     Debtor(s)     Chapter    7

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | | |
|---|---|---|
| For legal services, I have agreed to accept | $ | 2,000.00 |
| Prior to the filing of this statement I have received | $ | 2,000.00 |
| Balance Due | $ | 0.00 |

2. The source of the compensation paid to me was:

    ■ Debtor     ☐ Other (specify):

3. The source of compensation to be paid to me is:

    ■ Debtor     ☐ Other (specify):

4.    ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

    ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;
   b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required;
   c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   d. [Other provisions as needed]

6. By agreement with the debtor(s), the above-disclosed fee does not include the following service:
   **Representation of the debtors in any dischargeability actions, judicial lien avoidances, relief from stay actions or any adversary proceeding, contested matter or Rule 2004 Exam.**

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated:    June 27, 2006                    /s/ David L. Davitt

                                          David L. Davitt
                                          Schlueter Ecklund
                                          4023 Charles Street
                                          Rockford, IL 61108
                                          815 229-5333  Fax: 815 229-0733
                                          ddavitt@rockriverlaw.com

B 201 (04/09/06)

UNITED STATES BANKRUPTCY COURT
**NORTHERN DISTRICT OF ILLINOIS**

**NOTICE TO INDIVIDUAL CONSUMER DEBTOR UNDER § 342(b)
OF THE BANKRUPTCY CODE**

In accordance with § 342(b) of the Bankruptcy Code, this notice: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case. You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

**1. Services Available from Credit Counseling Agencies**

With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file for bankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis. The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies.

In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge. The clerk also has a list of approved financial management instructional courses.

**2. The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors**

**Chapter 7: Liquidation ($245 filing fee, $39 administrative fee, $15 trustee surcharge: Total Fee $299)**
    1. Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss your case under § 707(b) of the Code. It is up to the court to decide whether the case should be dismissed.
    2. Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.
    3. The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.
    4. Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $39 administrative fee: Total fee $274)**
    1. Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts in installments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollar amounts set forth in the Bankruptcy Code.
    2. Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.
    3. After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**A-34**

B 201 (04/09/06)

### Chapter 11: Reorganization ($1000 filing fee, $39 administrative fee: Total fee $1039)
Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

### Chapter 12: Family Farmer or Fisherman ($200 filing fee, $39 administrative fee: Total fee $239)
Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

### 3. Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

### Certificate of Attorney
I hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

| | | |
|---|---|---|
| David L. Davitt | X  /s/ David L. Davitt | June 27, 2006 |
| Printed Name of Attorney | Signature of Attorney | Date |

Address:
**4023 Charles Street**
**Rockford, IL 61108**
**815 229-5333**

### Certificate of Debtor
I (We), the debtor(s), affirm that I (we) have received and read this notice.

Gary A Judd
**Rhonda J Judd**

| | | |
|---|---|---|
| Printed Name of Debtor | X  /s/ Gary A Judd | June 27, 2006 |
| | Signature of Debtor | Date |
| Case No. (if known) _____ | X  /s/ Rhonda J Judd | June 27, 2006 |
| | Signature of Joint Debtor (if any) | Date |

**United States Bankruptcy Court**
**Northern District of Illinois**

In re   Gary A Judd
     Rhonda J Judd                                 Case No. _____
                                    Debtor(s)      Chapter    7

**VERIFICATION OF CREDITOR MATRIX**

Number of Creditors: _____   37

The above-named Debtor(s) hereby verifies that the list of creditors is true and correct to the best of my (our) knowledge.

Date:   **June 27, 2006**                  **/s/ Gary A Judd**
                                         **Gary A Judd**
                                         Signature of Debtor

Date:   **June 27, 2006**                      **/s/ Rhonda J Judd**
                                         **Rhonda J Judd**
                                         Signature of Debtor

Advanta
P.O. Box 30715
Salt Lake City, UT 84130

Affiliated Car Rental
105 Highway 36
Eatontown, NJ 07724

Amcore Bank
1210 S. Alpine Road
Rockford, IL 61108

American Express
P.O. Box 650448
Dallas, TX 75265-0448

American Express Blue
P.O. Box 7863
Ft. Lauderdale, FL 33336

Bank of America
P.O. Box 2463
Spokane, WA 99210

Benefical
P.O. Box 788
Elmhurst, IL 60126

Capital One
P.O. Box 790217
Saint Louis, MO 63179-0217

Chase
P.O. Box 94010
Palatine, IL 60094

Citi Bank
P.O. Box 688915
Des Moines, IA 50368-8915

D.M. Clark
5937 Sandy Hollow Road
Rockford, IL 61109

Doug Farnham
635 Chapin Court
Rockford, IL 61107


Dubuque Bank
1398 Central Avenue
Dubuque, IA 52004


First Northern Credit Union
230 W. Monroe
Suite 2850
Chicago, IL 60606


Forever Green
P.O. Box 2653
Loves Park, IL 61111


GE Money Bank
P.O. Box 981127
El Paso, TX 79998


Geoffrey Carter
1915 Bruner
Rockford, IL 61109


Greater Rockford Auto Auction
5937 Sandy Hollow Road
Rockford, IL 61109


Greg Johnson
13133 Mitchell
Shirland, IL 61079


Irwin Home Equity
12677 Alcosta Blvd. Ste 500
San Ramon, CA 94583-4427


Jose Marquez
3341 Dallas Circle
Rockford, IL 61109


Len Crafters
P.O. Box 981127
El Paso, TX 79998

MBNA
P.O. Box 15469
Wilmington, DE 19886

Michelle Sciabaras
406 S. 6th St.
Kirkland, IL 60146

National City
4661 E. Main Street
Columbus, OH 43251

Patricia Rodriquez
2909 Bluffside
Rockford, IL 61109

Phillips 66
P.O. Box 689061
Des Moines, IA 50368

Riverside Community Bank
68 E. Perryville Blvd
Rockford, IL 61114

Rock River Bank
2470 Eastrock Dr.
Rockford, IL 61108

Rockford Capital Leasing
4249 East State St.
Rockford, IL 61108

Rockford Register Star
P.O. Box 439
Rockford, IL 61105

Sams Club
P.O. Box 530970
Atlanta, GA 30353

Sprint
P.O. Box 219554
Kansas City, MO 64121-9554

```
Stillman Valley Bank
101 E. Main
Stillman Valley, IL 61084


Wells Fargo
P.O. Box 54349
Los Angeles, CA 90054


Wilma Tanata
1420 Minns Drive
Machesney Park, IL 61115


Winnebago County Treasurer
404 Elm Street, Room 205
P.O. Box 1216
Rockford, IL 61105
```